1   Gail E. Cohen (093210), gcohen@barwol.com
    Edwin A. Oster (072169), eoster@barwol.com
2   Jason C. Love (228881), jlove@barwol.com
    BARGER & WOLEN LLP
3   633 West Fifth Street, 47th Floor
    Los Angeles, California 90071
4   Telephone: (213) 680-2800
    Facsimile: (213) 614-7399
5
    Attorneys for Defendant
6   American Home Assurance Company

7

8              UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10

11  ALTMAN SPECIALTY PLANTS,          )   CASE NO.: SACV08-00972 JVS (PJWx)
    INC.,                             )
12                                    )
              Plaintiff,              )
13                                    )   DEFENDANT AMERICAN HOME
         vs.                          )   ASSURANCE COMPANY'S
14                                    )   NOTICE OF REMOVAL
    AMERICAN HOME ASSURANCE           )
15  COMPANY, and DOES 1 through 50,   )   [Filed concurrently with Request for
    inclusive,                        )   Judicial Notice]
16                                    )
              Defendants.             )   [28 U.S.C. §§ 1332, 1441(b), 1446]
17                                    )
                                      )
18                                    )
                                      )
19                                    )   Complaint Filed: February 14, 2008
                                      )
20  _____   )

21

22

23

24

25

26

27

28

BARGER & WOLEN LLP
633 W. FIFTH ST.
FORTY-SEVENTH FLOOR
LOS ANGELES, CA 90071
(213) 680-2800

j:\office2\29073\102\08pleadings\notice of removal - fed court.doc

**TO THE CLERK OF THE ABOVE-ENTITLED COURT:**

**PLEASE TAKE NOTICE THAT** Defendant American Home Assurance Company ("American Home") hereby removes to this Court the action commenced on February 14, 2008 in the Superior Court of the State of California, County of Orange, entitled *Altman Specialty Plants, Inc. v. American Home Assurance Company, and Does 1-50,* Case No. 00102696.

## TIMELINESS

1.    American Home was served with the summons and a copy of the state court complaint in this action on July 29, 2008. This removal is therefore timely. *See* 28 U.S.C. § 1446(b). True and correct copies of the complaint, summons, and all other documents served on American Home in this action are attached as Exhibit "A."

## JOINDER

2.    Other than American Home, no other non-fictitious defendants have been named or served with summons and the complaint in this action. As such, no joinder is necessary. 28 U.S.C. § 1441(a). *See also Salveson v. Western Bankcard Assn.,* 731 F.2d 1423, 1429 (9th Cir. 1984) (finding non-served defendants need not be joined by the removing defendant)

## PETITION TO COMPEL ARBITRATION AND INTENT TO FILE A MOTION TO DISMISS OR STAY THESE PROCEEDINGS

3.    On August 25, 2008, following service of the state court summons and complaint in this action, American Home filed a Petition to Compel Arbitration of this action in the United States District Court, Southern District of New York. The Petition was filed pursuant to the terms of an arbitration clause contained in various

1 Insurance Program Agreements entered into by Altman. These Agreements expressly
2 govern all disputes arising out of Altman's workers' compensation insurance policies
3 issued by American Home, including the issues raised by Altman in this action. Of
4 note, the arbitration clause in those Agreements specifically provides that "any action
5 or proceeding concerning arbitrability, including motions to compel or to stay
6 arbitration, may be brought only in a court . . . of competent jurisdiction in the City,
7 County, and State of New York".[1]

8     4.   On August 26, 2008, the New York District Court issued an Order to
9 Show Cause set for hearing on September 4, 2008 as to why the court should not
10 issue an order directing Altman to submit all disputes asserted in this action to
11 arbitration without delay.[2]

12     5.   Based upon the filing of the Petition to Compel Arbitration and the
13 issuance of the Order to Show Cause, American Home intends to file a Motion to
14 Dismiss, or, In the Alternative to Stay this action to allow the proceeding commenced
15 by American Home in New York to compel arbitration to proceed. *Grove Lumber &*
16 *Building Supply, Inc. v. Argonaut Ins. Co.*, 2008 U.S. Dist. LEXIS 51752 (C.D. Cal
17 July 7, 2008) ("[A] stay is appropriate" to permit a motion to compel arbitration in
18 another court to proceed.); *Ass'n of Irritated Residents v. Fred Schakel Dairy*, 460 F.
19 Supp. 2d 1185, 1193 (E.D. Cal. 2006) (same).

20

21 **JURISDICTION**

22     6.   This Court has original jurisdiction over this civil action under 28
23 U.S.C. § 1332. Further, it is an action which may be removed to this Court by
24 American Home pursuant to the provisions of 28 U.S.C. § 1441(b) as it is a civil

25

26 [1] A true and correct copy of the Petition to Compel Arbitration filed in the Southern District of New York is attached as Exhibit 3 to the Request for Judicial Notice filed concurrently herewith.

27 [2] A true and correct copy of the August 26, 2008 Order to Show Cause is attached as
28 Exhibit 3 to American Home's Request for Judicial Notice filed concurrently herewith.

1  action between a citizen of California and a citizen of New York, and the matter in
2  controversy exceeds $75,000, exclusive of interest and costs, as set forth more fully
3  below.

4

5  ## CITIZENSHIP OF PARTIES

6      7. A corporation is a citizen of its state of incorporation and the state in
7  which it has its principal place of business. A corporation has only one principal
8  place of business. *See* 28 U.S.C. section 1332(c)(1); *see also United Computer*
9  *Systems, Inc. v. AT&T Corp.*, 298 F.3d 756, 763 (9th Cir. 2002).

10

11  ### A.   Altman is a California Citizen

12      8. Plaintiff Altman Specialty Plants, Inc. ("Altman") is, and was at the
13  time of the filing of the subject state court action was, a citizen of California as it is
14  incorporated under the laws of California with its principal place of business in
15  California. (Complaint, ¶ 1.)

16

17  ### B.   American Home is a New York Citizen[3]

18      9. American Home is, and at the time of the filing of the subject state court
19  action was, a corporation incorporated under the laws of New York with its principal
20  place of business in New York, as discussed more fully below.

21      10. In the Ninth Circuit the principal place of business for a corporation is
22  determined for purposes of diversity jurisdiction based on the "total activities" or,

23

24  [3] The issue of American Home's New York citizenship was recently briefed by
American Home in response to an OSC re Remand issued in another case pending in
25  the Central District, *County of Ventura v. National Union Fire Insurance Company of*
*Pittsburgh, PA, et al.*, Case No. CV07-07156 DSF (FFMx). A true and correct copy
26  of American Home's brief and supporting declarations is attached to the Request for
Judicial Notice filed concurrently herewith as Exhibit 1. Of note, the district court in
27  that case concluded that American Home was a New York citizen and discharged the
Order to Show Cause on June 20, 2008. A true and correct copy of the Court's order
28  is attached to the Request for Judicial Notice as Exhibit 2.

1 | alternatively, the "nerve center test." *Tosco Corp. v. Communities for a Better*
2 | *Environment*, 236 F.3d 495 (9th Cir. 2001); *Indus. Tectonics, Inc. v. Aero Alloy*, 912
3 | F.2d 1090 (9th Cir. 1990). The "total activities" test is the first test to be applied.
4 | Under this test, a corporation's principal place of business is deemed to be in the state
5 | where the corporation's business activity is "significantly larger than any other state
6 | in which the corporation does business." *Tosco*, 263 F.3d at 500. Factors commonly
7 | used in determining whether "a given state contains a substantial predominance of
8 | corporate activity" under this test include the location of: (1) employees; (2) tangible
9 | property; (3) production activities; (4) sources of income; (5) sales; and (6)
10 | purchases. *Indus. Tectonics*, 912 F.2d at 1094; *Tosco*, 236 F.3d at 495. If no state
11 | meets the "total activities" test, courts then apply the "nerve center" test, which
12 | establishes the corporation's principal place of business at the location where its
13 | executive and administrative functions are performed. *Tosco*, 263 F.3d at 500; *Indus.*
14 | *Tectonics*, 912 F.2d at 1092. Under either test, American Home's principal place of
15 | business is New York.

16 |
17 |
18 |     **(1)**   **American Home's Business Operations Demonstrate That Its Principal Place of Business Under the "Total Activities" Test is New York**

19 |     11. American Home is a member company of American International
20 | Group, Inc.'s ("AIG") Commercial Insurance Group ("CIG").[4] AIG is a holding
21 | company for subsidiaries that serve commercial, institutional, and individual
22 | insurance customers through a worldwide property, casualty, and life insurance
23 | network. The network also provides retirement services, financial services, and asset
24 |
25 |
26 | ──────────
26 | [4] AIG's Commerical Insurance Group was formerly known as the Domestic Brokerage Group, or "DBG". The name was formally changed to "Commercial
27 | Insurance Group" or "CIG" on or about April 7, 2008. Because the briefing submitted by American Home in the *County of Ventura* matter was submitted prior
28 | to April 7, 2008, the entity that is now CIG is referred to in the *County of Ventura* briefing and supporting declarations as the "Domestic Brokerage Group," or "DBG."

1  management. The CIG is a group of AIG domestic insurers that comprise AIG's

2  domestic commercial property and casualty business segment. (Reda Decl., ¶¶ 3-5.)[5]

3       12. All CIG companies, including American Home, are supported by a

4  number of different CIG divisions. (Reda Decl., ¶ 5.) The headquarters of CIG is

5  New York City at the corporate offices of AIG. (*Id.* at ¶ 4.) In addition, CIG

6  employees are located in various geographical areas throughout the United States,

7  designated as zones. (*Id.* at ¶ 6.) These zones include the Greater New York,

8  Eastern, Central and Western Zones. (*Id.*) The Western Zone encompasses all West

9  Coast (including California) operations. (*Id.*) Support personnel for CIG member

10  companies are located in New York and in various regional offices throughout the

11  United States. (*Id.* at ¶ 7.) The responsibilities of these individuals are to support the

12  operations of CIG member companies. (*Id.*)

13

14            (a)   A Substantial Predominance of American Home's

15                  Employees, as well as CIG Employees Who Support

16                  American Home's Operations, are Located in New York

17       13. Almost all of American Home's officers and directors are located in

18  New York. (Lang Dec., ¶ 5.) American Home had 48 officers and directors as of

19  September 7, 2007. (*Id.*) Of that total, 40 officers and directors had their primary

20  office in New York, one had a primary office in New York and a secondary office in

21  New Jersey, two had offices in Ontario, Canada, and one had an office in

22  Pennsylvania. (*Id.*) No officer or director of American Home had an office in

23  California.

24       14. A substantial predominance of American Home employees are located

25  in New York and New Jersey. American Home had a total of 481 employees as of

26

27     [5] All citations are to the declarations attached to American Home's Response to the Court's Order to Show Case re Remand attached as Exhibit 1 to the Request for

28  Judicial Notice filed concurrently herewith.

1   September 7, 2007. (McKenna Dec., ¶ 3, (2), Ex. 2.)  The states where the highest

2   number of employees were located are New Jersey, which had 163 employees, and

3   New York, which had 139 employees.  (*Id.*)  By contrast, there were only 26

4   American Home employees located in California.  (*Id.*)

5       15.  Employees of AIG Domestic Claims, Inc. ("AIG Domestic Claims") are

6   responsible for processing the commercial claims made on American Home policies.

7   (*Id.* at ¶ 3, (3).)  The predominant location of these employees was, and is, New York.

8   As of September 4, 2007, New York had 918 AIG Domestic Claims employees,

9   followed by New Jersey with 808 employees and Georgia with 647 employees.  (*Id.*

10  at ¶3, (3), Ex. 3.)  California was a distant fourth with 423 employees, and very close

11  in numbers to Kansas, which had 411 AIG Domestic Claims employees.  (*Id.*)

12      16.  Employees of AIG Domestic Marketing, Inc. ("AIG Domestic

13  Marketing") are responsible for processing the claims of personal lines of insurance

14  issued by CIG member companies, including those of American Home.  (*Id.* at ¶ 3,

15  (4).)  The predominant location of these employees was, and is, New York.  As of

16  September 4, 2007, New York had 620 AIG Domestic Marketing employees,

17  followed by New Jersey with 441 employees.  (*Id.* at ¶3, (4), Ex. 4.)  California was a

18  distant third with 339 employees, and very close in numbers to Arizona, which had

19  318 AIG Domestic Marketing employees.  (*Id.*)

20      17.  The CIG Comptrollers department is responsible for all financial and

21  accounting work for CIG member companies.  (Reda Dec., ¶ 5; McKenna Dec., ¶ 3.)

22  New York was, and is, the predominant location for these employees.  (McKenna

23  Dec., ¶ 3, (5), Ex. 5.)  As of September 4, 2007, New York had 380 employees in the

24  CIG Comptrollers department, followed by New Jersey with 64 employees and New

25  Hampshire with 37 employees.  (*Id.*)  By contrast, California had no such employees.

26  (*Id.*)

27      18.  As of September 4, 2007, CIG had 108 employees who performed

28  human resources work for CIG member companies.  (McKenna Dec., ¶ 3, (6).)  The

1  majority of these employees – 58 – were located in New York. (McKenna Dec., ¶ 3,

2  (6), Ex. 6.) New Jersey had the second highest number of employees, with 11.

3  California had a total of eight employees. (*Id.*)

4

5              (b)      A Predominance of Premiums Written and Losses Paid

6                       under American Home Policies Does Not Occur in

7                       California

8         19.  Direct premium written by American Home in 2006 was as follows:

9              California        11.1%

10             Texas             6.4%

11             New York          6.0%

12             Florida           5.2%

13             Pennsylvania 3.3%

14  (Padron Dec., ¶3, Ex. 2; Grundy Decl., ¶ 2, Ex. 2). Moreover, direct premium written

15  by American Home in California for 2004 to 2006 averaged less than 12% of the total

16  amount of direct premium written by American Home. (*Id.*)[6]

17         20.  Direct losses paid by American Home in 2006 were as follows:

18             Texas             11.0%

19             New York          10.1%

20             California        7.6%

21             Florida           3.8%

22             Pennsylvania 3.7%

23  (Padron Dec., ¶3, Ex. 2; Grundy Decl., ¶ 2, Ex. 2).

24         21.  Further, California federal case law is clear that these figures should be

25  adjusted to reflect the differences in population between California and other states

26  _____

27  [6] Of note, the amount of premium written by American Home in California as of
    12/31/07 was deemed insufficient by the California Department of Insurance to
28  qualify American Home as a California commercially domiciled insurer. Request for
    Judicial Notice, ¶ 5, Exhibit 5.

1   for purposes of determining the location a corporation's principal place of business.

2   *See Albino v. Standard Ins. Co.*, 349 F.Supp.2d 1334, 1338 (C.D. Cal. 2004);

3   *Arellano v. Home Depot USA, Inc.*, 245 F.Supp.2d 1102, 1106-1108 (S.D.Cal. 2003).

4   When adjusted to reflect the differences in the various state populations, the per

5   capita direct premium written is as follows:

| | 2006 Population | 2006 Premiums | Per Capita |
|---|---|---|---|
| New York | 19,262,545 | 453,504,497 | 23.54 |
| California | 36,249,872 | 832,426,212 | 22.96 |
| Florida | 18,057,508 | 390,583,960 | 21.63 |
| Texas | 23,407,629 | 481,094,218 | 20.55 |
| Pennsylvania | 12,402,817 | 250,393,570 | 20.19 |

12   (Grundy Dec., ¶ 3, Ex. 4)  The per capita direct losses are as follows:

| | 2006 Population | 2006 Losses | Per Capita |
|---|---|---|---|
| New York | 19,262,545 | 322,662,051 | 16.75 |
| Texas | 23,407,629 | 353,130,249 | 15.09 |
| Pennsylvania | 12,402,817 | 117,484,083 | 9.47 |
| Florida | 18,057,508 | 123,035,729 | 6.81 |
| California | 36,249,872 | 241,853,784 | 6.67 |

19   (Grundy Dec., ¶ 3, Ex. 4.)

21         (c)    A Substantial Predominance of All Other Business

22                Activities of American Home are Centered in New York

23         22.  The underwriting activity on American Home's policies is divided into

24   two parts. (Reda Dec., ¶ 9; Guffin Dec., ¶ 5.)  Regional underwriters, including

25   underwriters in the West Coast Region (which includes California) have limited

26   authority to underwrite policies on the "paper" of various CIG companies, including

27   American Home.  (*Id.*)  However, underwriters in New York have much broader

28   authority with respect to such underwriting activity.  (*Id.*)  Approval of New York

1    underwriters is necessary for a regional underwriter to exceed the limits of authority
2    in underwriting a policy. (*Id.*) Further, New York underwriters underwrite, on their
3    own, larger policies for American Home which account for a substantial amount of
4    the business of American Home. (*Id.*) These policies include: (a) larger polices
5    issued to not for profit corporations; (b) all accounts of public companies insured for
6    risks of over $500,000,000; (c) all E&O policies; (d) more complex commercial
7    policies; (e) crime policies; (f) financial institution policies; (g) the underwriting of
8    unusual risks; and (h) policies where the underwriting staff in New York has a special
9    relationship with a broker or insured. (Guffin Dec., ¶ 5.) Thus, the clear center of
10   underwriting activity for American Home is in New York.

11       23. All actuarial work for American Home policies is performed by an
12   actuarial group for AIG that is separate from CIG. (Reda Dec., ¶ 12.) The bulk of
13   such work is performed in New York. (*Id.*) Only two employees of the group do
14   such work in California. (Guffin Dec., ¶ 10.)

15       24. Billing and collection of premiums on American Home policies is done
16   primarily out of Chicago and New York. (Guffm Dec., ¶ 7.) No such activity is
17   done in or through the West Coast Regional Offices located in California. (*Id.*)

18       25. All reinsurance activity of American Home, to the extent it is necessary,
19   is overseen by a reinsurance group affiliated with AIG. (Reda Dec., ¶ 11.) This
20   reinsurance group is separate from CIG and is located primarily in New York. (*Id.*)

21       26. The CIG Comptrollers department (whose employees are centered in
22   New York) controls all accounting and financial management and support activities
23   for CIG member companies, including American Home. (Reda Dec., ¶ 5.) By
24   contrast, the West Coast Regional Office maintains no bank accounts of any kind for
25   American Home. (Guffin Dec., ¶ 8.) The West Coast offices do not maintain
26   operating accounts for deposit of premiums or other monies, do not maintain any
27   investment accounts, and have no responsibility for managing any assets of any CIG

28

1 || member company. (*Id.*) Such management is performed exclusively out of New
2 || York. (*Id.*)

3 ||        27. The CIG Comptrollers department also handles payment of salary and
4 || expenses to American Home employees located throughout the United States.
5 || (Guffin Dec.,¶ 9.) Salaries of all CIG member company employees, including
6 || American Home employees, are paid out of corporate headquarters in New York.
7 || (Guffin Dec., ¶ 9.) Similarly, all expenses of individuals are submitted for
8 || reimbursement to CIG Comptrollers in New York and paid directly from that office
9 || to the appropriate individuals (rather than through the West Coast or other regional
10 || office). (*Id.*) Activities of the California offices are limited to simply submitting for
11 || reimbursement travel and entertainment expenses of employees and other expenses,
12 || such as rental payment for office space. (*Id.*)

13 ||        28. All internal legal work for American Home is performed out of New
14 || York. (Guffin Dec., ¶ 11; Reda Dec., ¶ 4.) No legal staff for these companies is
15 || located in California. (Guffin Dec., ¶ 11.)

16

17 ||          (d)   Conclusion

18 ||        29. An examination of the "total activities" -- in terms of business
19 || operations -- of American Home demonstrates that the substantial predominance of
20 || such activity occurs in New York. The vast majority of employees of American
21 || Home are located there as well as employees of CIG member companies who support
22 || American Home's activities. The percentage of premiums written and losses paid in
23 || New York is comparable to California and other states for the relevant period.
24 || Moreover, when population differences are considered, New York is the location
25 || where the most premiums are written and losses paid for American Home policies.
26 || All other business activities of American Home are clearly centered in New York.
27 || Thus, under the "total activities" test, the principal place of business of American
28 || Home is New York.

1
    **(2)   To the Extent There is No Substantial Predominance of**

2
           **Business Activity of American Home in Any State, the "Nerve**

3
           **Center" Test Establishes that the Principal Place of Business**

4
           **is New York**

5      30. To the extent there is no substantial predominance of business activity

6 in any one state, the "nerve center" test establishes that American Home's principal

7 place of business is New York as the executive and administrative functions of

8 American Home occur in New York. *Indus. Tectonics*, 912 F.2d at 1092. As set

9 forth above, the great majority of officers and directors are located in New York.

10 (Lang Decl., ¶ 5.) Further, all board meetings and elections of officers and directors

11 of American Home are held in New York. (Tuck Dec., ¶¶ 2-3.) Thus, New York is

12 clearly the headquarters and "nerve center" of American Home.

13

14
      **AMOUNT IN CONTROVERSY**

15      31. The amount in controversy in this action exceeds $75,000 (exclusive of

16 interest and costs).

17      32. The complaint seeks the recovery of at least $500,000 in damages from

18 American Home. (Complaint, ¶ 23.)

19      33. The complaint also seeks the recovery of an unspecified amount of

20 punitive damages. (Complaint, ¶ 33.) *See also Richmond v. Allstate Ins. Co.,* 897

21 F.Supp. 447, 450 (S.D. Cal. 1995) (punitive damages may be used in calculating

22 amount in controversy for purposes of removal).

23      34. The complaint also seeks the recovery of attorney's fees incurred by

24 Altman. (Complaint, ¶ 32.) Such damages are potentially recoverable in connection

25 with Altman's bad faith claim and may also be considered in calculating the amount

26 in controversy. *See Galt G/S v. JSS Scandinavia,* 142 F.3d 1150, 1155-56 (9th Cir.

27 1998).

28

BARGER & WOLEN LLP
633 W. FIFTH ST.
FORTY-SEVENTH FLOOR
LOS ANGELES, CA 90071
(213) 680-2800

-11-

1         35. Thus, the total amount in controversy easily exceeds $75,000.

2

3  Dated: August 2⁄, 2008               BARGER & WOLEN LLP

4

5                                By: _____

6                                   GAIL E. COHEN
                                 EDWIN A. OSTER

7                                   JASON C. LOVE
                                 Attorneys for Defendant American
                                 Home Assurance Company

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BARGER & WOLEN LLP
633 W. FIFTH ST.
FORTY-SEVENTH FLOOR
LOS ANGELES, CA 90071
(213) 680-2800

# EXHIBIT A

# SUMMONS
## *(CITACION JUDICIAL)*

SUM-100

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
AMERICAN HOME ASSURANCE COMPANY

and DOES 1 through 50, inclusive
**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTA DEMANDANDO EL DEMANDANTE):*
ALTMAN SPECIALTY PLANTS, INC.

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF ORANGE
CENTRAL JUSTICE CENTER

FEB 14 2008

ALAN SLATER, Clerk of the Court

BY: D DUNNING , DEPUTY

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol/) o poniéndose en contacto con la corte o el colegio de abogados locales.*

30-2008

| | |
|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):*<br>ORANGE COUNTY SUPERIOR COURT<br>700 Civic Center Drive West<br>same as above<br>Santa Ana, CA 92701<br>CENTRAL JUSTICE CENTER | CASE NUMBER:<br>*(Número del Caso)* 0 0 1 0 2 6 9 6 |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
NICHOLAS P. ROXBOROUGH, ESQ. (SBN 113540)   (818) 992-9999   (818) 992-9991
ROXBOROUGH, POMERANCE & NYE LLP
5820 Canoga Avenue, Suite 250
Woodland Hills, CA 91367

JUDGE KIRK H. NAKAMURA
DEPT. C56

ALAN SLATER

DATE:
*(Fecha)* FEB 14 2008

Clerk, by DANIELLE DUNNING , Deputy
*(Secretario)* *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☑ on behalf of *(specify):* American Home Assurance Company

   under: ☑ CCP 416.10 (corporation)     ☐ CCP 416.60 (minor)
           ☐ CCP 416.20 (defunct corporation)    ☐ CCP 416.70 (conservatee)
           ☐ CCP 416.40 (association or partnership)   ☐ CCP 416.90 (authorized person)
           ☐ other *(specify):*
4. ☑ by personal delivery on *(date):*

Page 1 of 1

[SEAL]

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. January 1, 2004]

SUMMONS

Legal
Solutions
Plus

Code of Civil Procedure §§ 412.20, 465

-13-

© COPY

Nicholas P. Roxborough, Esq. (SBN. 113540)
Erin M. LaBrache, Esq. (SBN 195655)
Anthony S. Khoury, Esq. (SBN 236326)
**ROXBOROUGH, POMERANCE & NYE LLP**
5820 Canoga Avenue, Suite 250
Woodland Hills, California 91367
Telephone: (818) 992-9999

Attorneys for Plaintiff,
ALTMAN SPECIALTY PLANTS, INC.

FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF ORANGE
CENTRAL JUSTICE CENTER

FEB 1 4 2008

ALAN SLATER, Clerk of the Court

BY  O. DUNNING  , DEPUTY

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF ORANGE, CENTRAL JUSTICE CENTER

30-2008

| ALTMAN SPECIALTY PLANTS, INC. | CASE NO.  00102696 |
|---|---|
| Plaintiff, | |
| vs. | **COMPLAINT FOR:** |
| AMERICAN HOME ASSURANCE COMPANY, and DOES 1 through 50, inclusive | 1. **BREACH OF CONTRACT;** |
| | 2. **TORTIOUS BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING;** |
| Defendants. | 3. **DECLARATORY RELIEF; AND** |
| | 4. **UNFAIR BUSINESS PRACTICES IN VIOLATION OF BUSINESS & PROFESSIONS CODE SECTION 17200, ET SEQ.** |

JUDGE KIRK H. NAKAMURA
DEPT. C56

Plaintiff ALTMAN SPECIALTY PLANTS, INC. alleges against defendants AMERICAN HOME ASSURANCE COMPANY and DOES 1 through 50, inclusive, as follows:

///

///

///

///

1
COMPLAINT

-14-

## GENERAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

1.     Plaintiff ALTMAN SPECIALTY PLANTS, INC., a California corporation., (hereinafter referred to as "ALTMAN") is, and at all times relevant to this action was, a corporation organized and existing under the laws of the State of California, and is, and at all times relevant to this action was, operating in the State of California, County of San Diego.

2.     ALTMAN is informed and believes and thereon alleges that, defendant, AMERICAN HOME ASSURANCE COMPANY (hereinafter referred to as "AMERICAN HOME") is a member company of American International Group, Inc. ("AIG"), is a New York corporation authorized to conduct and conducting business in the State of California. AMERICAN HOME is engaged in the business of writing workers' compensation insurance. AMERICAN HOME is a nationwide AIG corporation and has a substantial presence in California, subjecting it to the jurisdiction of the California courts.  Out of approximately 225 insurers that wrote workers' compensation insurance in California during 2003, AMERICAN HOME ranked as the 4th top seller with earned premium in excess of $278,985,476. AMERICAN HOME's California market share rose to 2nd out of 204 insurers by 2006, with earned premium in excess of $608,091,626.

3.     Furthermore, AIG has at least 90 different offices across California.  In fact, AMERICAN HOME managed and/or administered most, if not all, of the workers' compensation claims made under ALTMAN's workers' compensation insurance policies in its South Coast Metro office, located in Orange County, California.

4.     Based on the shear volume of premium written in California, and its noticeable physical presence, AMERICAN HOME has clearly availed itself to the jurisdiction of California.

5.     Except as otherwise alleged, ALTMAN is not currently aware of the true names and capacities of the Defendants designated herein as DOES 1 through 50, inclusive.  As such, ALTMAN will hereafter seek leave of court to amend this Complaint in order to allege the true names and capacities of each such Defendant when such information is ascertained.

6.     ALTMAN is informed and believes and thereon alleges that at all times herein mentioned AMERICAN HOME and DOES 1 through 50, inclusive (hereinafter jointly referred

1  to as "DEFENDANTS" unless specified otherwise), are each responsible in some manner for the
2  transactions, events and occurrences herein alleged and that damages herein alleged were
3  proximately caused thereby.

4      7.      ALTMAN is informed and believes and thereon alleges that at all times herein
5  mentioned, DEFENDANTS, and each of them, were the agents, joint venturers, trustees,
6  servants, partners, alter-egos, parent corporations, subsidiaries, affiliates, contractors, and/or
7  employees of each of the remaining DEFENDANTS, and that the acts and/or omissions herein
8  alleged were done by them, acting individually, through such capacity or through the scope of
9  their authority, and that said conduct was thereafter ratified by the remaining DEFENDANTS.

10      8.      ALTMAN is, among other things, a grower and wholesale nursery business
11  encompassing over 290 acres in three states. It supplies plant programs to large retailers with
12  point of purchase materials, merchandising and a large distribution system that covers the United
13  States. The cost of workers' compensation insurance is an extremely important component of
14  ALTMAN's business operations.

15      9.      ALTMAN procured four workers' compensation policies from DEFENDANTS.
16  The policy periods are as follows:

17          A.      January 1, 2003 to January 1, 2004 ("2003 Policy");

18          B.      January 1, 2004 to January 1, 2005 ("2004 Policy");

19          C.      January 1, 2005 to January 1, 2006; and ("2005 Policy");

20          D.      January 1, 2006 to January 1, 2007 ("2006 Policy").

21      10.     Attached hereto and incorporated herein by this reference are true and correct
22  copies of the 2003 Policy, 2004 Policy, 2005 Policy, and 2006 Policy as **Exhibits "A," "B,"**
23  **"C", and "D"** respectively. Except as otherwise alleged herein, the 2003 Policy, the 2004
24  Policy, the 2005 Policy, and the 2006 Policy are hereinafter collectively referred to as the "WC
25  Policies."

26      11.     The WC Policies covered workers' compensation claims made in California. The
27  2003 Policy required ALTMAN to pay a deductible on claims made under said policy up to the
28  first $250,000 for each person and per accident, and a program aggregate limit of $1,996,260.

1    The 2004 Policy required ALTMAN to pay a deductible on claims made under said policy up to

2    the first $500,000 for each person and per accident, and a program aggregate limit of $4,000,000.

3    The 2005 Policy required ALTMAN to pay a deductible on claims made under said policy up to

4    the first $500,000 for each person and per accident, and a program aggregate limit of $4,500,000.

5    The 2006 Policy required ALTMAN to pay a deductible on claims made under said policy up to

6    the first $500,000 for each person and per accident, and a program aggregate limit of $4,000,000.

7    These are what are known in the industry as "Large Deductible" policies.  Large Deductible

8    policies are potentially attractive to employers like ALTMAN because the premium paid to the

9    insurer is substantially less than with more traditional forms of insurance (*i.e.*, a guaranteed cost

10   program) in which the insurer pays all claims.

11          12.     Under ALTMAN's Large Deductible WC Policies, amounts paid on claims under

12   the deductible amount are paid by DEFENDANTS, but reimbursed by ALTMAN on a monthly

13   basis.  Any amounts paid on claims up to the deductible amount on the WC Policies, therefore,

14   are ALTMAN's money.  DEFENDANTS billed and continue to bill ALTMAN monthly for

15   these amounts.

16          13.     Additionally, in consideration for DEFENDANTS providing the insurance,

17   ALTMAN paid all premiums due for the WC Policies.  Furthermore, in order to obtain the WC

18   Policies, DEFENDANTS required that ALTMAN deliver a letter of credit in the amount of

19   $4,387,253 as of January 1, 2005 to purportedly cover ALTMAN's obligations under the WC

20   Policies.  The WC Policies and/or the parties' custom and practice provide that DEFENDANTS

21   would review the amount of the letter of credit at least annually to determine the reasonableness

22   of the letter of credit for all policies and all policy periods.  In addition, pursuant to the WC

23   Policies and/or the parties' custom and practice, DEFENDANTS agreed to make appropriate

24   adjustments to the letter of credit based on reasonable expected losses and loss adjustment

25   expenses.  ALTMAN is informed and believes and thereon alleges that the total outstanding

26   expected losses and loss adjustment expenses arising out of the WC Policies are less than

27   $1,300,000.  Yet, DEFENDANTS continue to require and hold in excess of $2,500,000 in a

28   letter of credit from ALTMAN.

1      14.    ALTMAN alleges that, unlike any other type of insurance policy, the reserves that

2 workers' compensation insurance carriers, such as DEFENDANTS, place on each individual

3 claim, the amount paid out under a claim, and the manner in which a carrier handles and

4 administers the claim, inexorably controls the amount ALTMAN is required to pay in premiums

5 to DEFENDANTS and other subsequent carriers.

6      15.    ALTMAN is informed and believes and thereon alleges that by virtue of the WC

7 Policies, DEFENDANTS stand in ALTMAN's shoes as its agent with regard to each claim made

8 under the WC Policies.  ALTMAN further alleges that a special relationship exists between an

9 insured and insurer akin to a fiduciary duty, and that implied in this relationship is a covenant

10 that neither party may act to deprive the other of the benefits of the contract.

11      16.    ALTMAN is informed and believes and thereon alleges that DEFENDANTS

12 mishandled, overpaid and over reserved claims made under ALTMAN's WC Policies in such a

13 way as to artificially increase ALTMAN's premiums it paid to DEFENDANTS in the manner

14 detailed herein.   Moreover, because of the nature of the Large Deductible policies, the

15 mishandling, overpayments, and over-reserving also directly caused monetary damages to

16 ALTMAN on a dollar for dollar basis.

17      17.    ALTMAN is informed and believes and thereon alleges that DEFENDANTS

18 failed and/or refused to properly comply with California Labor Code Section 3762, which

19 provides in relevant part as follows: "the insurer shall discuss all elements of the claims file that

20 affect the employer's premium with the employer, and shall supply copies of the documents that

21 affect the premium."

22      18.    As described herein, ALTMAN is informed and believes, and thereon alleges, that

23 DEFENDANTS breached the terms of the WC Policies.  The breaches include, but are not

24 limited to, the following:

25      A.    Failing and/or refusing to reasonably investigate the compensability and/or

26     nature and extent of claims;

27      B.    Failing and/or refusing to provide meaningful access to relevant medical

28     information;

1         C.     Failing to accurately and reasonably set reserves;

2         D.     Failing and/or refusing to provide a good faith defense on behalf of
3    ALTMAN on those claims where defenses existed and should have been pursued;

4         E.     Failing to reasonably manage and adjust claims;

5         F.     Failing and/or refusing to make appropriate adjustments to the letter of
6    credit;

7         19.     ALTMAN is informed and believes, and thereon alleges, that the breaches
8    referenced in the preceding paragraph are consistent with the California Department of
9    Insurance's audit findings of DEFENDANTS' performance during the relevant time period.

10        20.     ALTMAN is informed and believed and thereon alleges that South Coast Metro
11   office's handling and administration of workers' compensation claims has been the subject of
12   numerous complaints by brokers as well as other members of the insurance industry.

13        21.     ALTMAN is informed and believes, and thereon alleges, that the breaches
14   referenced in the paragraph 16 also constitute tortious breaches of the implied covenant of good
15   faith and fair dealing by DEFENDANTS.

16        22.     ALTMAN is informed and believes and thereon alleges that DEFENDANTS have
17   consistently created obstacles, including, but not limited to, the obstacles described in the
18   preceding paragraphs, in order to cover up their breaches, as well as their acts and/or omissions
19   which constitute their tortious breaches of the implied covenant of good faith and fair dealing.

20        23.     The DEFENDANTS' actions and/or inactions described above demonstrate
21   DEFENDANTS' pattern and practice of mishandling ALTMAN's claims, all to ALTMAN's
22   financial detriment and DEFENDANTS' profit. As a direct result of DEFENDANTS' improper
23   claims handling practices and/or DEFENDANTS' practice of over-paying and over-reserving
24   claims, ALTMAN has had to pay, and continues to have to pay, excessive amounts to
25   DEFENDANTS pursuant to the WC Policies and has had to furnish excessive amounts of
26   collateral, which has not been adjusted in a proper manner. ALTMAN is informed and believes
27   and thereon alleges that the amount of damages it has suffered and continues to suffer as a result
28   of the acts of DEFENDANTS as described above exceeds $500,000.

## FIRST CAUSE OF ACTION

**(Breach of Contract Against Defendants AMERICAN HOME and Does 1 through 50)**

24.    ALTMAN incorporates herein by this reference, as though fully set forth in this Cause of Action, each and every allegation contained in Paragraphs 1 through 23, inclusive, of this Complaint as if set forth herein in full.

25.    ALTMAN and DEFENDANTS entered into the 2003 WC Policy, 2004 WC Policy, 2005 WC Policy, and 2006 WC Policy (*see* **Exhibits "A", "B", "C", and "D"**) whereby ALTMAN agreed to purchase insurance covering workers' compensation.   In addition, DEFENDANTS agreed to administer said Policies consistent with claims handling instructions. DEFENDANTS breached the WC Policies by engaging in the behavior as described in this Complaint, including, but not limited to, mishandling claims made under the WC Policies, over-reserving claims made under the WC Policies, over paying on claims made under the WC Policies, failing to reasonably and timely investigate claims made under the WC Policies, failing to provide adequate legal counsel for purposes of defending ALTMAN against the claims, failing to communicate with ALTMAN before setting reserves, adjusting reserves, and/or settling claims, failing to comply with Labor Code Section 3762, and failing to properly adjust the letter of credit.

26.    ALTMAN has performed all terms of the WC Policies except for those whose performance has been excused by DEFENDANTS' conduct.

27.    As a proximate result of DEFENDANTS' breaches of the WC Policies, ALTMAN has suffered and continues to suffer losses in an amount within the jurisdictional limits of this Court.

## SECOND CAUSE OF ACTION

**(Tortious Breach of the Implied Covenant of Good Faith and Fair Dealing Against**

**Defendants AMERICAN HOME and Does 1 through 50)**

28.    ALTMAN incorporates herein by this reference, as though fully set forth in this Cause of Action, each and every allegation contained in Paragraphs 1 through 27, inclusive, of this Complaint as if set forth herein in full.

1     29.     The covenant of good faith and fair dealing is implied by law in every contract to

2 protect each party's right to receive the benefits of the contract. As a result of engaging in the

3 conduct set forth in this Complaint, DEFENDANTS have denied ALTMAN of the benefits of

4 the WC Policies, and thus, breached the implied covenant of good faith and fair dealing by

5 having engaged and continuing to engage in the following acts and/or omissions which are

6 implied obligations under the WC Policies:

7     A.     Failing and/or refusing to reasonably investigate the compensability and/or

8     nature and extent of claims;

9     B.     Failing and/or refusing to provide meaningful access to relevant medical

10     information;

11     C.     Failing to accurately and reasonably set reserves;

12     D.     Failing and/or refusing to provide a good faith defense on behalf of

13     ALTMAN on those claims where defenses existed and should have been pursued;

14     E.     Failing to reasonably manage and adjust claims;

15     F.     Failing and/or refusing to make appropriate adjustments to the letter of

16     credit;

17     30.     ALTMAN is informed and believes and thereon alleges that DEFENDANTS

18 mishandled, overpaid and over-reserved claims made under the WC Policies in such a way as to

19 artificially increase ALTMAN's financial obligations in the manner detailed above.

20     31.     ALTMAN is informed and believes and thereon alleges that DEFENDANTS have

21 committed further acts and/or omissions in violation of their duty of good faith and fair dealing.

22 These acts and/or omissions are presently unknown to ALTMAN and may be discovered by

23 ALTMAN during the course of this litigation.

24     32.     As a proximate result of DEFENDANTS' conduct, as set forth above, ALTMAN

25 has suffered general and special damages which include having to pay and being forced to pay

26 unnecessarily increased losses as well as increased amounts of collateral, and have also had to

27 incur expenses and costs to hire outside consultants, experts and attorneys to assist ALTMAN in

28 obtaining these benefits under the WC Policies.

33.   ALTMAN further alleges that the conduct of DEFENDANTS, as set forth above, was carried out in bad faith, was malicious, fraudulent, and oppressive, and evidences a complete disregard for ALTMAN's interests and an intent to injure, harass, vex and annoy ALTMAN. Under the circumstances described above, ALTMAN alleges that DEFENDANTS' conduct constitutes despicable conduct as defined in California Civil Code Section 3294 and established common law, thus entitling ALTMAN to recover punitive damages in an amount appropriate to punish or to set an example of DEFENDANTS, and each of them.   ALTMAN further alleges that DEFENDANTS at all times acted through their officers, directors and employees and that they had advance knowledge of the damage being caused to ALTMAN and that DEFENDANTS approved, ordered, instructed, supervised and controlled the conduct of their officers, directors and employees such as to constitute a ratification of the conduct of said officers, directors and employees.   Accordingly, pursuant to the doctrine of Respondeat Superior, DEFENDANTS are liable for punitive damages as prayed for herein.

### THIRD CAUSE OF ACTION

**(Declaratory Relief Against Defendants AMERICAN HOME and Does 1 through 50)**

34.   ALTMAN incorporates herein by this reference, as though fully set forth in this Cause of Action, each and every allegation contained in Paragraphs 1 through 33, inclusive, of this Complaint as if set forth herein in full.

35.   By reason of ALTMAN's allegations set forth in the preceding Paragraphs, particularly that the first $250,000 to $500,000 of each workers' compensation claim is paid by ALTMAN, a controversy has arisen and now exists between ALTMAN and DEFENDANTS. ALTMAN contends as follows:

A.   That pursuant to the nature and purpose for which the WC Policies were entered into, that AIG should have allowed ALTMAN to review and/or audit the administration of ALTMAN's workers' compensation claims so that ALTMAN could determine in order to determine the effect the handling, reserving and payment on those claim files had on amounts DEFENDANTS required ALTMAN to pay on the workers'

1  compensation claims that were administered by DEFENDANTS under the WC Policies,
2  and;

3        B.  That DEFENDANTS' current policy of limiting and/or restricting access
4  to the claims files violates Labor Code Section 3762 and the spirit and terms of the WC
5  Policies.

6      36.  ALTMAN is informed and believes and thereon alleges that DEFENDANTS
7  dispute the aforesaid contentions and contend to the contrary.

8      37.  A judicial declaration of the rights and duties of the parties relative to the WC
9  Policies is necessary to resolve this controversy and to guide the future conduct of the parties.

10  **FOURTH CAUSE OF ACTION**

11  **(Unfair Business Practices in Violation of Business & Professions Code Sections 17200**
12  **Et Seq. Against Defendants AMERICAN HOME and Does 1 through 50)**

13      38.  ALTMAN incorporates herein by this reference, as though fully set forth in this
14  Cause of Action, each and every allegation contained in Paragraphs 1 through 37, inclusive, of
15  this Complaint as if set forth herein in full.

16      39.  ALTMAN has standing to bring this action pursuant to Business and Professions
17  Code § 17204 as it has suffered an injury in fact and has lost money and/or property as a result of
18  DEFENDANTS' unfair business practices.

19      40.  ALTMAN is informed and believes and thereon alleges that DEFENDANTS have
20  engaged in unfair business practices, which include, but are not limited to, the acts and/or
21  omissions detailed in paragraphs 18, 20, 25 and 29 – 30 of this Complaint.

22      41.  In light of DEFENDANTS' unfair business practices in violation of the law,
23  ALTMAN, pursuant to Business and Professions Code §17203, seeks from this Court a
24  permanent injunction, enjoining DEFENDANTS from: limiting and/or restricting ALTMAN'S
25  right to review and/or audit its own claim files; refusing to provide ALMAN'S representatives
26  with copies and/or originals of ALTMAN'S own claim files; engaging in a worse-case scenario
27  reserving practice; and setting reserves in a manner contrary to California law.  ALTMAN also
28  requests that pursuant to Business & Professions Code §17203, this Court order restitution to

1  ALTMAN of all amounts ALTMAN had to pay and will have to pay in increased premiums due

2  to DEFENDANTS' unfair business practices.

3      Additionally, as part of the injunctive relief prayed for herein, this Court should also

4  require DEFENDANTS to disclose to every policyholder affected by DEFENDANTS' practices

5  of: limiting and/or restricting their insureds' right to review and/or audit the insured's own claim

6  files; refusing to provide their insureds with copies and/or originals of the insured's own claim

7  files; engaging in a worse-case scenario reserving practice; and setting reserves in a manner

8  contrary to California law.

9      **WHEREFORE**, ALTMAN prays for judgment against DEFENDANTS, and each of them,

10  as follows:

11                    **ON THE FIRST CAUSE OF ACTION**

12      1.      For general and special damages in a sum to be proven at trial with pre-judgment

13  and post-judgment interest thereon at the maximum rate permitted by law;

14                    **ON THE SECOND CAUSE OF ACTION**

15      2.      For general and special damages in a sum to be proven at trial with pre-judgment

16  and post-judgment interest thereon at the maximum rate permitted by law;

17      3.      For recovery of all attorneys' and consultants' fees, costs and expenses incurred to

18  pursue and obtain the benefits of the WC Policies;

19      4.      For punitive and exemplary damages in an amount appropriate to punish or set an

20  example of DEFENDANTS;

21                    **ON THE THIRD CAUSE OF ACTION**

22      5.      For a declaration adjudging that the items in dispute as set forth above are to be

23  determined in favor of ALTMAN;

24                    **ON THE FOURTH CAUSE OF ACTION**

25      6.      For equitable relief as determined by this Court, including but not limited to, a

26  permanent injunction restraining DEFENDANTS from engaging in the unlawful and unfair

27  business practices as pled in this Complaint, an order requiring DEFENDANTS to engage in

28  reserving practices in accordance with California law, restitution to ALTMAN, in the form of an

1   order requiring DEFENDANTS to reimburse all amounts overpaid by ALTMAN due to

2   DEFENDANTS' unfair business practices, and an order requiring DEFENDANTS to disclose to

3   every policyholder affected by DEFENDANTS' practices of limiting their insureds' ability to

4   audit the insureds' own claim files and artificially increasing reserves contrary to California law;

5        7.    For recovery of all costs and attorneys' fees pursuant to Code of Civil Procedure

6   Section 1021.5;

7   **ON ALL CAUSES OF ACTION**

8        8.    For all costs incurred by ALTMAN to date and to be incurred by ALTMAN

9   hereafter in connection with this action; and

10       9.    For such other and further relief as the court deems just and proper.

11  DATED: February 13, 2008    By:    ROXBOROUGH, POMERANCE & NYE LLP

12

13

14                  *Erin LaBrache*

15                  NICHOLAS P. ROXBOROUGH
                ERIN M. LaBRACHE

16                  ANTHONY KHOURY
                Attorneys for Plaintiff, ALTMAN SPECIALTY

17                  PLANTS, INC.

18

19

20

21

22

23

24

25

26

27

28

12

EXHIBIT



A

ISSUED BY THE STOCK INSURANCE COMPANY HEREIN CALLED THE COMPANY

AMERICAN HOME ASSURANCE COMPANY
13781

**AGENT NUMBER**
61342-0000

**POLICY NUMBER**
WC   124-14-96
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-00

INCORPORATED UNDER THE LAWS OF   NEW YORK

**ITEM 1.   NAMED INSURED:   MAILING ADDRESS   IDENTIFICATION NO.:**

ALTMAN SPECIALTY PLANTS, INC
3742 BLUE BIRD CANYON ROAD
VISTA, CA 92084-0000

Member Companies of
American International Group

**EXECUTIVE OFFICES:**
70 PINE STREET, NEW YORK, N.Y. 10270

SEE NAME AND ADDRESS SCHEDULE - WC990610

LD# 3376106          CA UI#:

**PRODUCERS NAME AND ADDRESS**

**WORKERS COMPENSATION AND EMPLOYERS
LIABILITY POLICY INFORMATION PAGE**

G S LEVINE INSURANCE SERVICES
3377 CARMEL MOUNTAIN ROAD
SAN DIEGO, CA 92121-0000

**INSURED IS**
CORPORATION

**PREVIOUS POLICY NUMBER**
NEW

OTHER WORKPLACES NOT SHOWN ABOVE: SEE NAME AND ADDRESS SCHEDULE - WC990610

**ITEM 2**   POLICY PERIOD 12:01 A.M. standard time at the insured's
mailing address          FROM  01/01/03   TO  01/01/04

**ITEM 3**   A. Workers Compensation Insurance: Part One of the policy applies to the Workers Compensation Law of the states listed
here:

CA

B. Employers Liability Insurance: Part Two of the policy applies to the work in each state listed in Item 3.A.
The limits of our liability under Part Two are:

| | | |
|---|---|---|
| Bodily Injury by Accident $ | 1,000,000 | each accident |
| Bodily Injury by Disease  $ | 1,000,000 | policy limit |
| Bodily Injury by Disease  $ | 1,000,000 | each employee |

C. Other States Insurance: Part Three of the policy applies to the states, if any, listed here:
NONE

**ITEM 4**   The premium for this policy will be determined by our Manuals of Rules, Classifications, Rates and Rating Plans.
All information required below is subject to verification and change by audit.

| Classifications | Code Number | Estimated Total Remuneration [X] Annual [ ] 3 Year | Rate Per $100 Of Remuneration | Estimated Premium [X] Annual [ ] 3 Year |
|---|---|---|---|---|
| SEE EXTENSION OF INFORMATION PAGE - WC7754
TAXES/ASSESSMENTS/SURCHARGES | | | | $40,277 |

| | | | | |
|---|---|---|---|---|
| EXPENSE CONSTANT (EXCEPT WHERE APPLICABLE BY STATE) | $160  CA | | | |
| MINIMUM PREMIUM | $750  CA | | TOTAL ESTIMATED PREMIUM | $1,713,707 |

If indicated below, interim adjustments of premium shall be made:

[ ] Semi-Annually   [ ] Quarterly   [ ] Monthly          **DEPOSIT PREMIUM**   $1,713,707

ENDORSEMENTS (FORM NUMBER)   SEE ATTACHED FORM SCHEDULE - WC990612

01/27/03 LOS ANGELES                    05

**Issue Date**          **Issuing Office**          **Authorized Representative**   WC 00 00 01

39407

FORMS SCHEDULE

Policy Number: WC   124-14-96                              Effective Date:  01/01/2003

| | |
|---|---|
| WC000406 | PREMIUM DISCOUNT ENDORSEMENT |
| 78052 | PRIVACY POLICY |
| 55154WC | CALIFORNIA FRAUD ASSESSMENT |
| WC040002A | CA-ADMINISTRATION REVOLVING FUND ASMNT |
| WC040360 | CA EMPLOYERS LIAB COV AMENDATORY ENDT |
| WC040402 | CA MANDATORY RATE CHANGE ENDT |
| WC040407 | CA PREMIUM ADJUSTMENT ENDT |
| WC040415 | 2002 PREMIUM INCREASE ENDT - CALIFORNIA |
| WC990017 | CALIFORNIA CANCELLATION ENDORSEMENT |
| WC990407 | CA POLICY AMENDATORY ENDT |
| WC990408B | CA NOTIF OF LOSS CONTROL SERVICES |
| WC990409 | CA POLICYHOLDER NOTICE - CIGA SURCHARGE |
| WC990410 | POLICYHOLDER NOTICE |
| WC990610 | NAMED INSUREDS/ADDRESSES |
| 64478-C | LARGE RISK RATING PLAN ENDORSEMENT |

**WC 99 06 12**
(Ed. 1/97)

# WORKERS COMPENSATION AND EMPLOYERS LIABILITY

## INSURANCE POLICY

National Union Fire Insurance
Company of Pittsburgh, Pa.

American Home Assurance Company

The Insurance Company of
The State of Pennsylvania

Birmingham Fire Insurance Company
of Pennsylvania

Commerce and Industry
Insurance Company



Member Companies of
American International Group, Inc.
EXECUTIVE OFFICES
70 PINE STREET
NEW YORK, N.Y. 10270

Coverage is provided by the Company designated on the Information Page
A Stock Insurance Company

### WORKERS COMPENSATION AND EMPLOYERS LIABILITY INSURANCE POLICY
### QUICK REFERENCE

| | BEGINNING ON PAGE |
|---|---|
| Information Page | 1 |
| **GENERAL SECTION** | 1 |
| A. The Policy | 1 |
| B. Who Is Insured | 1 |
| C. Workers Compensation Law | 1 |
| D. State | 1 |
| E. Locations | 1 |
| **PART ONE-WORKERS COMPENSATION INSURANCE** | 1 |
| A. How This Insurance Applies | 1 |
| B. We Will Pay | 1 |
| C. We Will Defend | 1 |
| D. We Will Also Pay | 1 |
| E. Other Insurance | 2 |
| F. Payments You Must Make | 2 |
| G. Recovery From Others | 2 |
| H. Statutory Provisions | 2 |

THESE POLICY PROVISIONS WITH THE INFORMATION PAGE AND ENDORSEMENTS,
IF ANY, ISSUED TO FORM A PART THEREOF, COMPLETE THIS POLICY.

*INCLUDES COPYRIGHT MATERIAL OF THE NATIONAL COUNCIL ON COMPENSATION
INSURANCE, USED WITH ITS PERMISSION.

COPYRIGHT 1983 NATIONAL COUNCIL ON COMPENSATION INSURANCE*

39638C(04/92)

WC 00 00 00 A (STANDARD)

## QUICK REFERENCE – CONTINUED

BEGINNING ON
PAGE

**PART TWO - EMPLOYERS LIABILITY INSURANCE** .................................................................... 2
    A.  How This Insurance Applies ......................................................................... 2
    B.  We Will Pay .................................................................................................. 3
    C.  Exclusions .................................................................................................... 3
    D.  We Will Defend ............................................................................................ 3
    E.  We Will Also Pay ......................................................................................... 4
    F.  Other Insurance ........................................................................................... 4
    G.  Limits of Liability ......................................................................................... 4
    H.  Recovery From Others ................................................................................. 4
    I.  Action Against Us ......................................................................................... 4

**PART THREE - OTHER STATES INSURANCE** ........................................................................... 4
    A.  How This Insurance Applies ......................................................................... 4
    B.  Notice .......................................................................................................... 5

**PART FOUR - YOUR DUTIES IF INJURY OCCURS** .................................................................... 5

**PART FIVE - PREMIUM** ....................................................................................................... 5
    A.  Our Manuals ................................................................................................ 5
    B.  Classifications .............................................................................................. 5
    C.  Remuneration .............................................................................................. 5
    D.  Premium Payments ...................................................................................... 5
    E.  Final Premium .............................................................................................. 5
    F.  Records ........................................................................................................ 6
    G.  Audit ............................................................................................................ 6

**PART SIX - CONDITIONS** ..................................................................................................... 6
    A.  Inspection .................................................................................................... 6
    B.  Long Term Policy ......................................................................................... 6
    C.  Transfer of Your Rights and Duties .............................................................. 8
    D.  Cancellation ................................................................................................. 6
    E.  Sole Representative ..................................................................................... 6

IMPORTANT: This Quick Reference is **not** part of the Workers Compensation and Employers Liability Policy and does **not** provide coverage. Refer to the Workers Compensation and Employers Liability Policy itself for actual contractual provisions.

## PLEASE READ THE WORKERS COMPENSATION AND EMPLOYERS LIABILITY POLICY CAREFULLY

ATTACH FORM AND ENDORSEMENTS (IF ANY) HERE

## WORKERS COMPENSATION AND EMPLOYERS LIABILITY INSURANCE POLICY

In return for the payment of the premium and subject to all terms of this policy, we agree with you as follows.

## GENERAL SECTION

### A. The Policy

This policy includes at its effective date the Information Page and all endorsements and schedules listed there. It is a contract of insurance between you (the employer named in Item 1 of the Information Page) and us (the insurer named on the Information Page). The only agreements relating to this insurance are stated in this policy. The terms of this policy may not be changed or waived except by endorsement issued by us to be part of this policy.

### B. Who Is Insured

You are insured if you are an employer named in Item 1 of the Information Page. If that employer is a partnership, and if you are one of its partners, you are insured, but only in your capacity as an employer of the partnership's employees.

### C. Workers Compensation Law

Workers Compensation Law means the workers or workmen's compensation law and occupational disease law of each state or territory named in Item 3.A. of the Information Page. It includes any amendments to that law which are in effect during the policy period. It does not include any federal workers or workmen's compensation law, any federal occupational disease law or the provisions of any law that provide nonoccupational disability benefits.

### D. State

State means any state of the United States of America, and the District of Columbia.

### E. Locations

This policy covers all of your workplaces listed in Items 1 or 4 of the Information Page; and it covers all other workplaces in Item 3.A states unless you have other insurance or are self-insured for such workplaces.

## PART ONE · WORKERS COMPENSATION INSURANCE

### A. How This Insurance Applies

This workers compensation insurance applies to bodily injury by accident or bodily injury by disease. Bodily injury includes resulting death.

1. Bodily injury by accident must occur during the policy period.

2. Bodily injury by disease must be caused or aggravated by the conditions of your employment. The employee's last day of last exposure to the conditions causing or aggravating such bodily injury by disease must occur during the policy period.

### B. We Will Pay

We will pay promptly when due the benefits required of you by the workers compensation law.

### C. We Will Defend

We have the right and duty to defend at our expense any claim, proceeding or suit against you for benefits payable by this insurance. We have the right to investigate and settle these claims, proceedings or suits.

We have no duty to defend a claim, proceeding or suit that is not covered by this insurance.

### D. We Will Also Pay

We will also pay these costs, in addition to other amounts payable under this insurance, as part of any claim, proceeding or suit we defend:

1. reasonable expenses incurred at our request, but not loss of earnings;

2. premiums for bonds to release attachments and for appeal bonds in bond amounts up to the amount payable under this insurance;

WC 00 00 00 A

1 of 7

3. litigation costs taxed against you;

4. interest on a judgment as required by law until we offer the amount due under this insurance; and

5. expenses we incur.

E. **Other Insurance**

We will not pay more than our share of benefits and costs covered by this insurance and other insurance or self-insurance. Subject to any limits of liability that may apply, all shares will be equal until the loss is paid. If any insurance or self-insurance is exhausted, the shares of all remaining insurance will be equal until the loss is paid.

F. **Payments You Must Make**

You are responsible for any payments in excess of the benefits regularly provided by the workers compensation law including those required because:

1. of your serious and willful misconduct;

2. you knowingly employ an employee in violation of law;

3. you fail to comply with a health or safety law or regulation; or

4. you discharge, coerce or otherwise discriminate against any employee in violation of the workers compensation law.

If we make any payments in excess of the benefits regularly provided by the workers compensation law on your behalf, you will reimburse us promptly.

G. **Recovery From Others**

We have your rights, and the rights of persons entitled to the benefits of this insurance, to recover our payments from anyone liable for the injury. You will do everything necessary to protect those rights for us and to help us enforce them.

H. **Statutory Provisions**

These statements apply where they are required by law.

1. As between an injured worker and us, we have notice of the injury when you have notice.

2. Your default or the bankruptcy or insolvency of you or your estate will not relieve us of our duties under this insurance after an injury occurs.

3. We are directly and primarily liable to any person entitled to the benefits payable by this insurance. Those persons may enforce our duties; so may an agency authorized by law. Enforcement may be against us or against you and us.

4. Jurisdiction over you is jurisdiction over us for purposes of the workers compensation law. We are bound by decisions against you under that law, subject to the provisions of this policy that are not in conflict with that law.

5. This insurance conforms to the parts of the workers compensation law that apply to:

   a. benefits payable by this insurance or;

   b. special taxes, payments into security or other special funds, and assessments payable by us under that law.

6. Terms of this insurance that conflict with the workers compensation law are changed by this statement to conform to that law.

Nothing in these paragraphs relieves you of your duties under this policy.

## PART TWO - EMPLOYERS LIABILITY INSURANCE

A. **How This Insurance Applies**

This employers liability insurance applies to bodily injury by accident or bodily injury by disease. Bodily injury includes resulting death.

1. The bodily injury must arise out of and in the course of the injured employee's employment by you.

2. The employment must be necessary or incidental to your work in a state or territory listed in Item 3.A. of the Information Page.

3. Bodily injury by accident must occur during the policy period.

4. Bodily injury by disease must be caused or aggravated by the conditions of your employment. The employee's last day of last exposure to the conditions causing or aggravating such bodily injury by disease must occur during the policy period.

5. If you are sued, the original suit and any related legal actions for damages for bodily injury

**WC 00 00 00 A**

2 of 7

by accident or by disease must be brought in the United States of America, its territories or possessions, or Canada.

### B.   We Will Pay

We will pay all sums you legally must pay as damages because of bodily injury to your employees, provided the bodily injury is covered by this Employers Liability Insurance.

The damages we will pay, where recovery is permitted by law, include damages:

1.   for which you are liable to a third party by reason of a claim or suit against you by that third party to recover the damages claimed against such third party as a result of injury to your employee;

2.   for care and loss of services; and

3.   for consequential bodily injury to a spouse, child, parent, brother or sister of the injured employee;

provided that these damages are the direct consequence of bodily injury that arises out of and in the course of the injured employee's employment by you; and

4.   because of bodily injury to your employee that arises out of and in the course of employment, claimed against you in a capacity other than as employer.

### C.   Exclusions

This insurance does not cover:

1.   liability assumed under a contract. This exclusion does not apply to a warranty that your work will be done in a workmanlike manner;

2.   punitive or exemplary damages because of bodily injury to an employee employed in violation of law;

3.   bodily injury to an employee while employed in violation of law with your actual knowledge or the actual knowledge of any of your executive officers;

4.   any obligation imposed by a workers compensation, occupational disease, unemployment compensation, or disability benefits law, or any similar law;

5.   bodily injury intentionally caused or aggravated by you;

6.   bodily injury occurring outside the United States of America, its territories or possessions, and Canada. This exclusion does not apply to bodily injury to a citizen or resident of the United States of America or Canada who is temporarily outside these countries;

7.   damages arising out of coercion, criticism, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination against or termination of any employee, or any personnel practices, policies, acts or omissions.

8.   bodily injury to any person in work subject to the Longshore and Harbor Workers' Compensation Act (33 USC Sections 901-950), the Nonappropriated Fund Instrumentalities Act (5 USC Sections 8171-8173), the Outer Continental Shelf Lands Act (43 USC Sections 1331-1356), the Defense Base Act (42 USC Sections 1651-1654), the Federal Coal Mine Health and Safety Act of 1969 (30 USC Sections 901-942), any other federal workers or workmen's compensation law or other federal occupational disease law, or any amendments to these laws.

9.   bodily injury to any person in work subject to the Federal Employers' Liability Act (45 USC Sections 51-60), any other federal laws obligating an employer to pay damages to an employee due to bodily injury arising out of or in the course of employment, or any amendments to those laws.

10.   bodily injury to a master or member of the crew of any vessel.

11.   fines or penalties imposed for violation of federal or state law.

12.   damages payable under the Migrant and Seasonal Agricultural Worker Protection Act (29 USC Sections 1801-1872) and under any other federal law awarding damages for violation of those laws or regulations issued thereunder, and any amendments to those laws.

### D.   We Will Defend

We have the right and duty to defend, at our expense, any claim, proceeding or suit against you for damages payable by this insurance. We have the right to investigate and settle these claims, proceedings and suits.

WC 00 00 00 A

We have no duty to defend a claim, proceeding or suit that is not covered by this insurance. We have no duty to defend or continue defending after we have paid our applicable limit of liability under this insurance.

### E. We Will Also Pay

We will also pay these costs, in addition to other amounts payable under this insurance, as part of any claim proceeding, or suit we defend;

1. reasonable expenses incurred at our request; but not loss of earnings;

2. premiums for bonds to release attachments and for appeal bonds in bond amounts up to the limit of our liability under this insurance;

3. litigation costs taxed against you;

4. interest on a judgment as required by law until we offer the amount due under this insurance; and

5. expenses we incur.

### F. Other Insurance

We will not pay more than our share of damages and costs covered by this insurance and other insurance or self-insurance. Subject to any limits of liability that apply, all shares will be equal until the loss is paid. If any insurance or self-insurance is exhausted, the shares of all remaining insurance and self-insurance will be equal until the loss is paid.

### G. Limits of Liability

Our liability to pay for damages is limited. Our limits of liability are shown in Item 3.B. of the Information Page. They apply as explained below.

1. Bodily Injury by Accident. The limit shown for "bodily injury by accident-each accident" is the most we will pay for all damages covered by this insurance because of bodily injury to one or more employees in any one accident.

A disease is not bodily injury by accident unless it results directly from bodily injury by accident.

2. Bodily Injury by Disease. The limit shown for "bodily injury by disease-policy limit" is the most we will pay for all damages covered by this insurance and arising out of bodily injury by disease, regardless of the number of employees who sustain bodily injury by disease. The limit shown for "bodily injury by disease-each employee" is the most we will pay for all damages because of bodily injury by disease to any one employee.

Bodily injury by disease does not include disease that results directly from a bodily injury by accident.

3. We will not pay any claims for damages after we have paid the applicable limit of our liability under this insurance.

### H. Recovery From Others

We have your rights to recover our payment from anyone liable for an injury covered by this insurance. You will do everything necessary to protect those rights for us and to help us enforce them.

### I. Actions Against Us

There will be no right of action against us under this insurance unless:

1. You have complied with all the terms of this policy; and

2. The amount you owe has been determined with our consent or by actual trial and final judgment.

This insurance does not give anyone the right to add us as a defendant in an action against you to determine your liability. The bankruptcy or insolvency of you or your estate will not relieve us of our obligations under this Part.

### PART THREE - OTHER STATES INSURANCE

### A. How This Insurance Applies

1. This other states insurance applies only if one or more states are shown in Item 3.C. of the Information Page.

2. If you begin work in any one of those states after the effective date of this policy and are not insured or are not self-insured for such work, all provisions of the policy will apply as

though that state were listed in Item 3.A. of the Information Page.

3. We will reimburse you for the benefits required by the workers compensation law of that state if we are not permitted to pay the benefits directly to persons entitled to them.

4. If you have work on the effective date of this policy in any state not listed in Item 3.A. of the

WC 00 00 00 A

Information Page, coverage will not be afforded for that state unless we are notified within thirty days.

B. **Notice**

Tell us at once if you begin work in any state listed in Item 3.C. of the Information Page.

## PART FOUR - YOUR DUTIES IF INJURY OCCURS

Tell us at once if injury occurs that may be covered by this policy. Your other duties are listed here.

1.  Provide for immediate medical and other services required by the workers compensation law.

2.  Give us or our agent the names and addresses of the injured persons and of witnesses, and other information we may need.

3.  Promptly give us all notices, demands and legal papers related to the injury, claim, proceeding or suit.

4.  Cooperate with us and assist us, as we may request, in the investigation, settlement or defense of any claim, proceeding or suit.

5.  Do nothing after an injury occurs that would interfere with our right to recover from others.

6.  Do not voluntarily make payments, assume obligations or incur expenses, except at your own cost.

## PART FIVE - PREMIUM

A. **Our Manuals**

All premium for this policy will be determined by our manuals of rules, rates, rating plans and classifications. We may change our manuals and apply the changes to this policy if authorized by law or a governmental agency regulating this insurance.

B. **Classifications**

Item 4 of the Information Page shows the rate and premium basis for certain business or work classifications. These classifications were assigned based on an estimate of the exposures you would have during the policy period. If your actual exposures are not properly described by those classifications, we will assign proper classifications, rates and premium basis by endorsement to this policy.

C. **Remuneration**

Premium for each work classification is determined by multiplying a rate times a premium basis. Remuneration is the most common premium basis. This premium basis includes payroll and all other remuneration paid or payable during the policy period for the services of:

1.  All your officers and employees engaged in work covered by this policy; and

2.  All other persons engaged in work that could make us liable under Part One (Workers Compensation Insurance) of this policy. If you do not have payroll records for these persons, the contract price for their services and materials may be used as the premium basis. This paragraph 2 will not apply if you give us proof

that the employers of these persons lawfully secured their workers compensation obligations.

D. **Premium Payments**

You will pay all premium when due. You will pay the premium even if part or all of a workers compensation law is not valid.

E. **Final Premium**

The premium shown on the Information Page, schedules, and endorsements is an estimate. The final premium will be determined after this policy ends by using the actual, not the estimated, premium basis and the proper classifications and rates that lawfully apply to the business and work covered by this policy. If the final premium is more than the premium you paid to us, you must pay us the balance. If it is less, we will refund the balance to you. The final premium will not be less than the highest minimum premium for the classifications covered by this policy.

If this policy is canceled, final premium will be determined in the following way unless our manuals provide otherwise.

1.  If we cancel, final premium will be calculated pro rata based on the time this policy was in force. Final premium will not be less than the pro rata share of the minimum premium.

2.  If you cancel, final premium will be more than pro rata; it will be based on the time this policy was in force, and increased by our short rate

**WC 00 00 00 A**

cancellation table and procedure. Final premium will not be less than the minimum premium.

### F.  Records

You will keep records of information needed to compute premium. You will provide us with copies of those records when we ask for them.

### G.  Audit

You will let us examine and audit all your records that relate to this policy. These records include ledgers, journals, registers, vouchers, contracts, tax reports, payroll and disbursement records, and programs for storing and retrieving data. We may conduct the audits during regular business hours during the policy period and within three years after the policy period ends. Information developed by audit will be used to determine final premium. Insurance rate service organizations have the same rights we have under this provision.

## PART SIX - CONDITIONS

### A.  Inspection

We have the right, but are not obliged to inspect your workplaces at any time. Our inspections are not safety inspections. They relate only to the insurability of the workplaces and the premiums to be charged. We may give you reports on the conditions we find. We may also recommend changes. While they may help reduce losses, we do not undertake to perform the duty of any person to provide for the health or safety of your employees or the public. We do not warrant that your workplaces are safe or healthful or that they comply with laws, regulations, codes or standards. Insurance rate service organizations have the same rights we have under this provision.

### B.  Long Term Policy

If the policy period is longer than one year and sixteen days, all provisions of this policy will apply as though a new policy were issued on each annual anniversary that this policy is in force.

### C.  Transfer of Your Rights and Duties

Your rights or duties under this policy may not be transferred without our written consent.

If you die and we receive notice within thirty days after your death, we will cover your legal representative as insured.

### D.  Cancellation

1.  You may cancel this policy. You must mail or deliver advance written notice to us stating when the cancellation is to take effect.

2.  We may cancel this policy. We must mail or deliver to you not less than ten days advance written notice stating when the cancellation is to take effect. Mailing that notice to you at your mailing address shown in Item 1 of the Information Page will be sufficient to prove notice.

3.  The policy period will end on the day and hour stated in the cancellation notice.

4.  Any of these provisions that conflicts with a law that controls the cancellation of the insurance in this policy is changed by this statement to comply with that law.

### E.  Sole Representative

The insured first named in Item 1 of the Information Page will act on behalf of all insureds to change this policy, receive return premium, and give or receive notice of cancellation.

**WC 00 00 00 A**

**In Witness Whereof,** the company has caused this policy to be executed and attested, but this policy shall not be valid unless countersigned by a duly authorized representative of the company.

The Insurance Company
of The State of Pennsylvania

President
National Union Fire
Insurance Company of
Pittsburgh, PA

President
Commerce and Industry
Insurance Company

President
American Home
Assurance Company

President
Birmingham Fire Insurance
Company of Pennsylvania

Secretary
National Union Fire Insurance Company of Pittsburgh, PA
American Home Assurance Company
The Insurance Company of The State of Pennsylvania
Birmingham Fire Insurance Company of Pennsylvania
Commerce and Industry Insurance Company

WC 00 00 00 A                    7 of 7

Page 1 of 1

## STANDARD WORKERS' COMPENSATION AND EMPLOYERS' LIABILITY EXTENSION FORM

| WC | 124-14-96 | | CALIFORNIA | | | | 3376106 | |
|----|-----------|--|------------|--|--|--|---------|--|
| | Policy Prefix & No. | | Schedule | | | | INTRA/Independent State Risk ID | |

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-00     ALTMAN SPECIALTY PLANTS, INC

| Item 4. Classification of Operations | | | | Premium Basis | Rates | |
|---|---|---|---|---|---|---|
| Entries in this item, except as specifically provided elsewhere in this policy, do not modify any of the other provisions of this policy. | | | Code No. | Estimated Total Annual Remuneration | Per $100 of Remuneration | Estimated Annual Premiums |
| RATING GROUP: 0001-01 | | | | | | |
| NURSERIES-PROPAGATION AND CULTIVATION OF NURSERY STOCK | | | 0005 | 13,700,000 | 12.92 | 1,770,040 |
| SALESPERSONS-OUTSIDE | | | 8742 | 3,500,000 | 2.07 | 72,450 |
| CLERICAL OFFICE EMPLOYEES-N.O.C. | | | 8810 | 1,900,000 | 1.78 | 33,820 |
| STATE OF CALIFORNIA TOTALS | | | | | | |
| TOTAL CLASSIFICATION PREMIUM | | | | | | 1,876,310 |
| TOTAL UNMODIFIED PREMIUM | | | | | | 1,876,310 |
| EXPERIENCE PREMIUM (ACTUAL) | 1.1400 | | 9897 | | | 262,683 |
| MODIFIED STANDARD PREMIUM | | | | | | 2,138,993 |
| UNDISCOUNTED PREMIUM | | | | | | 2,138,993 |
| NEGOTIATED PREMIUM DISCOUNT | -19.89% | | 0063 | | | -425,446 |
| DISCOUNTED PREMIUM | | | | | | 1,713,547 |
| EXPENSE CONSTANT | | | 0900 | | | 160 |
| TOTAL ESTIMATED PREMIUM | | | | | | 1,713,707 |
| GUARANTEE ASSOCIATION ASSESS | 2.00% | | 9713 | | | 34,274 |
| CA ADMIN REVOLVING FUND ASSESS | 0.1335% | | 9683 | | | 2,288 |
| CA FRAUD ASSESSMENT | 0.2168% | | 9682 | | | 3,715 |
| TOTAL DUE | | | | | | 1,753,984 |
| EXPERIENCE RATING MODIFICATION = 1.14 | | | | | | |

WC 7754 (Ed. 4-81)     **See Name and Address Schedule – WC990610**

-38-

## PREMIUM DISCOUNT ENDORSEMENT

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need bo completed only when this endorsement is issued subsequent to preparation of the policy).

This endorsement, effective 12:01 AM  01/01/2003          forms a part of Policy No. WC      124-14-96

Issued to ALTMAN SPECIALTY PLANTS, INC

By AMERICAN HOME ASSURANCE COMPANY

The premium for this policy and the policies, if any, listed in Item 3 of the Schedule may be eligible for a discount.  This endorsement shows your estimated discount in Items 1 or 2 of the Schedule.  The final calculation of premium discount will be determined by our manuals and your premium basis as determined by audit.  Premium subject to retrospective rating is not subject to premium discount.

Schedule

| | | | Estimated Eligible Premium | |
| --- | --- | --- | --- | --- |
| 1. State | First $5,000 | Next $95,000 | Next $400,000 | Balance |

2. Average percentage discount:          19.89 %

3. Other policies: WC 124-14-97

4. If there are no entries in Items 1, 2 and 3 of the Schedule, see Premium Discount Endorsement attached to your policy number:

WC 00 04 06          Countersigned by _____
(Ed. 4-84)
                                                                 Authorized Representative

## CALIFORNIA WORKERS COMPENSATION
## FRAUD ASSESSMENT

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy).

This endorsement, effective 12:01 AM 01/01/2003          forms a part of Policy No. WC     124-14-96

Issued to ALTMAN SPECIALTY PLANTS, INC

By AMERICAN HOME ASSURANCE COMPANY

In order to fund increased investigation and prosecution of Workers Compensation fraud, Senate Bill 1218, statutes of 1990, created the Workers Compensation Fraud Account with the Insurance Fund administered by the Insurance Commissioner. The proceeds of this fund include this annual assessment collected from all insured and self insured employers, and remitted by your insurance company to the Workers Compensation Fraud Account.

Surcharge Factor                         Surcharge Amount

  1.002168                                    $3.715

55154WC (12-92)          Countersigned by _____

                                                          **Authorized Representative**

**CALIFORNIA – ADMINISTRATION REVOLVING FUND ASSESSMENT**

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy).

This endorsement, effective 12:01 AM 01/01/2003          forms a part of Policy No. WC    124-14-96

Issued to ALTMAN SPECIALTY PLANTS, INC

By AMERICAN HOME ASSURANCE COMPANY

California Law requires insurers who provide Workers' Compensation insurance to collect an Administration Revolving Fund Assessment for each insured employer. The percentage, as determined by the Director of the Department of Industrial Relations, is applied to each insured employer's premium for the purpose of determining its share of the assessment to be paid. This surcharge amount is subject to adjustment at audit.

The Fund was established pursuant to the provisions of California Labor Code Section 62.5.

Your policy has been surcharged by the amount/percent stated below:

        SURCHARGE AMOUNT:     $2,288

        SURCHARGE PERCENT:  0.1335%

**WC 04 00 02 A**
**(Ed. 8-91)**

Countersigned by _____

                                        **Authorized Representative**

PAGE 1

## ENDORSEMENT

This endorsement effective 12:01 AM 01/01/2003

Forms a part of policy no.: WC    124-14-96

Issued to: ALTMAN SPECIALTY PLANTS, INC

By: AMERICAN HOME ASSURANCE COMPANY

| LOC NO. | NAME AND ADDRESS SCHEDULE | FEIN | UI # |
|---|---|---|---|
| 0001 | ALTMAN SPECIALTY PLANTS, INC<br>2372 TAMARA LANE<br>SAN MARCOS, CA 92069-0000 | 330494942 | |
| 0002 | ALTMAN SPECIALTY PLANTS, INC<br>3361 VALLEY PASEO<br>SAN MARCOS, CA 92069-0000 | 330494942 | |
| 0003 | ALTMAN SPECIALTY PLANTS, INC<br>553 BUENA CREEK ROAD<br>SAN MARCOS, CA 92069-0000 | 330494942 | |
| 0004 | ALTMAN SPECIALTY PLANTS, INC<br>1516 MONTE VISTA DRIVE<br>VISTA, CA 92084-0000 | 330494942 | |
| 0005 | ALTMAN SPECIALTY PLANTS, INC<br>1974 FRIENDLY DRIVE<br>VISTA, CA 92084-0000 | 330494942 | |
| 0006 | ALTMAN SPECIALTY PLANTS, INC<br>2020 EDGEHILL ROAD<br>VISTA, CA 92084-0000 | 330494942 | |
| 0007 | ALTMAN SPECIALTY PLANTS, INC<br>3742 BLUE BIRD CANYON ROAD<br>VISTA, CA 92084-0000 | 330494942 | |
| 0008 | ALTMAN SPECIALTY PLANTS, INC<br>2124 EDGEHILL ROAD<br>VISTA, CA 92084-0000 | 330494942 | |
| 0009 | ALTMAN SPECIALTY PLANTS, INC<br>949 LA RUEDA<br>VISTA, CA 92084-0000 | 330494942 | |
| 0010 | ALTMAN SPECIALTY PLANTS, INC<br>20460 SPENCE ROAD<br>SALINAS, CA 93908-0000 | 330494942 | |

Issue Date: 01/27/03

Authorized Representative

WC990610 (Ed. 1-97)

## LARGE RISK RATING PLAN ENDORSEMENT

### PART II. *SCHEDULE* of POLICIES and RATING VALUES

**Section 1. APPLICATION of this Endorsement**

RATING PERIOD   This endorsement applies to the period beginning 01/01/2003 and ending 01/01/2004.

The *Bases* of Premium, *Subject Losses*, Self-Insured Losses, Maximum Insurance Cost, Minimum Premiums and Premiums shown in Section 5, Section 6, Section 7 and Section 9 are estimated amounts for:

☐ the first year of the Rating Period, or ☒ the entire Rating Period.

POLICIES   This Endorsement applies to the policies described below, and to their replacements and renewals effective during the rating period.

If this Endorsement applies to a Construction Project, it applies only to the following: Not Applicable

a. Workers Compensation and Employers Liability Insurance policies:
   WC 1241496 , WC 1241497.

b. Commercial General Liability Insurance policies:

c. Automobile Liability Insurance policies:

d. Other Insurance policies(described):

**Section 2. Premiums for insurance on risks in states described below will be determined in accordance with the terms of the applicable policy other than this endorsement.**

| Kinds of Insurance | States |
|---|---|
| WC | FL |

**Section 3. *Allocated Loss Adjustment Expenses* Options**

| ALAE Option | Option C Excess % | Applies to |
|---|---|---|
| C | 100% | WC 1241496 , WC 1241497. |

Copyright 1999 American International Group, Inc.
01/06/2003 000301 9479947

## LARGE RISK RATING PLAN ENDORSEMENT

Section 9. The Rating Values and Amounts shown below apply as the *Basis* of the *Final Premium* for the Policies described in Section 1 of this Part II.

If the Rating Period exceeds one year; and if the estimated *Bases* of Premium, Minimum Premiums and Premiums shown below apply only to the first year, on or about each anniversary of the beginning of the rating period, we will issue an extension of this Section to show the rating values and amounts for each subsequent year of the rating period.

### Item A. *Subject Premium*, part of *Final Premium*

| Line Items | Rates | Per | *Basis* Types | Estimated Basis | Minimum Premium | Estimated Premium |
|---|---|---|---|---|---|---|
| Expected Subject Losses | 0.0000 | 100 | ULT.LOSSES | 0 | $0 | $1,140,720 |
| Claims Service Fees | 0.0000 | 1 | FLAT | 0 | $0 | $47,466 |
| Loss Control Service | 0.0000 | 1 | FLAT | 0 | $0 | $15,000 |
| IntelliRisk | 0.0000 | 1 | FLAT | 0 | $0 | $14,500 |
| Program Expenses | 1.3075 | 100 | PAYROLL | 20,370,000 | $0 | $315,723 |

| | | | Subtotal excluding Premium Taxes | | | $1,533,409 |
|---|---|---|---|---|---|---|
| | Premium Taxes: | 0.0000% | Average Tax Divisor: | 0.000000 | | $0 |
| a. | Indicated Total *Subject Premium* | | | | | $1,533,409 |
| b. | Expected Reimbursable or Deductible and Self-Insured Losses and ALAE | | | | | $0 |
| c. | Indicated Subject Insurance Cost (a. + b.) | | | | | $1,533,409 |
| d. | Maximum Subject Insurance Cost from Section 6. If N/A, show (c) | | | | | $1,533,409 |
| e. | Estimated Total *Subject Premium* (a. - c. + d., but not less than $0 or more than a.) | | | | | $1,533,409 |
| f. | Estimated Subject Insurance Cost (lesser of c. or d.) | | | | | $1,533,409 |

### Item B. Non-*Subject Premium*, part of *Final Premium*

| Coverage Description | Rates | Per | *Bases* Types | Estimated Basis | Minimum Premium | Estimated Premium |
|---|---|---|---|---|---|---|
| Excess Premium-WC-The Entire Contract | 1.2196 | 100 | PAYROLL | 20,370,000 | $0 | $248,424 |

| | | | Estimated Total Non-*Subject Premiums* | | | $248,424 |
|---|---|---|---|---|---|---|

### Item C. Summary of Expected Total Cost

| | | | | | | |
|---|---|---|---|---|---|---|
| Estimated *Final Premium* (Part A. item e. plus Part B Total) | | | | | | $1,781,833 |
| Expected Reimbursable or Deductible and Self-Insured Losses and ALAE (Part A. item b.) | | | | | | $0 |
| Surcharges: | 0.0000 | 1 | STANDARD PREMIUM | 0 | $0 | $40,358 |
| N/A | | | | | | $0 |
| N/A | | | | | | $0 |
| | | | EXPECTED TOTAL COST | | | $1,822,191 |

## AGGREGATE STOP AMENDMENT of the LARGE RISK RATING PLAN

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

[The following "attaching clause" need be completed only when this endorsement is issued subsequent to the preparation of the policy.]

This Endorsement, effective 12:01 AM 01/01/2003 forms a part of Policy Number WC 1241496

Issued to ALTMAN SPECIALTY PLANTS, INC

By American Home Assurance Company

The Aggregate Stop Amount and the Aggregate Stop Limit, if any, shown in the *Schedule* below will be applied as explained in this endorsement to limit the amount of the *Subject Losses* that we will use to determine the *Final Premium*.

1   Excess of Adjusted Aggregate Stop Amount Excluded: If an Aggregate Stop Amount is shown in the *Schedule* below, we will not include more than the Adjusted Aggregate Stop Amount in the computation of the *Final Premium* under the terms of the Large Risk Rating Plan Endorsement, subject to the Aggregate Stop Limit described in paragraph 2 below. The Adjusted Aggregate Stop Amount will be the Aggregate Stop Amount shown in the *Schedule* below, less the following:

   a)   all *Subject Losses* that you must reimburse us under any Loss Reimbursement or Deductible terms applicable to the policy covering the *Incurred Loss*, and

   b)   if so stated in the *Schedule*, such amounts as are described in the *Schedule* that you have paid as self-insured losses.

   Adjustment: if an Adjustment Rate and an Adjustment *Basis* are shown in the *Schedule* below, the Aggregate Stop Amount shown in the *Schedule* below is only an estimate. The Aggregate Stop Amount will be finally determined by multiplying the Adjustment Rate by the final Adjustment *Basis* as determined by our audit of your books and records.

2   Excess of Aggregate Stop Limit Included: If an Aggregate Stop Limit is shown in the *Schedule*, that Limit is the most *Subject Losses* that, in combination,

   a)   you do not have to reimburse us for under any Loss Reimbursement or Deductible terms applicable to the policy covering the *Incurred Loss*, and

   b)   we will exclude from this item 1 because of the application of item 2 above.

Neither the Aggregate Stop Amount nor the Aggregate Stop Limit will be reduced on account of the cancellation of any policy to which this endorsement applies.

Refer to the Worksheet as an aid in the determination of the amount of the *Subject Losses* to be included in calculating the *Final Premium*.

### SCHEDULE

#### Aggregate Stop Amount and Limit

The Aggregate Stop Amount and the Aggregate Stop Limit apply to the ☐ first year of, or ☒ entire rating period.

   a.   Aggregate Stop Amount, subject to Aggregate Stop Limit and adjustable on the *Basis* $1,996,260 and rate shown below.

   b.   Aggregate Stop Limit                                                                                          $0

   c.   *Basis* of Adjustment        PAYROLL        Per        100        Estimated *Basis* $20,370,000
         Amount:

                                                                                Adjustment Rate:        9.8000

---

# AGGREGATE STOP AMENDMENT of the LARGE RISK RATING PLAN

Self Insured or Uninsured Losses: Losses you incur to which no insurance applies under the policies listed in Section 1 of the *Schedule* of the Large Risk Rating Plan Endorsement will NOT be included in determining whether or when the Aggregate Stop Amount or the Aggregate Stop Limit have been reached, except as described herein:

Exceptions: None

### Worksheet to determine *Subject Losses*

*Incurred Losses* to be included in calculating the *Final Premium* are determined according to the following formula.

A. Determine the estimated ultimate or the final value of each loss and its *Allocated Loss Adjustment Expenses* under the policies listed in Section 1, and (if the Aggregate Stop Amount includes losses with respect to which you are a self-insurer) under your self-insurance.

B. Apply the loss limitations, reimbursable or deductible amounts, and self-insured retention amounts and allocated loss adjustment options that you have elected to limit each loss and the applicable portion of the expenses included in *Incurred Losses*.

C. Separate the resulting *Incurred Losses* into three groups, and calculate the sum for each group. We have shown our forecast of your *Incurred Losses* below.

|  |  |  |
|---|---|---|
| i. | Self-Insured Losses | $0 |
| ii. | Reimbursable Losses | $0 |
| iii. | All Other Losses eligible for retrospective premium, as limited if Loss Limitation applies | $0 |

D. Determine the Aggregate Stop Amount from the *Schedule* — $1,996,260

E. Determine the Aggregate Stop Limit from the *Schedule* — $0

F. Calculate *Incurred Losses* to be included in the retrospective premium as follows:

All Other Losses within Aggregate Stop Amount:

|  |  |  |
|---|---|---|
| i. | Aggregate Stop Amount less Reimbursable losses: Item D less C.ii., but not less than zero. | $0 |
| ii. | The remainder of Aggregate Stop Amount after payment of Reimbursable Losses and Self-Insured Losses: Item F.i. less C.i., but not less than zero. | $0 |
| iii. | Losses for retrospective premium within remaining Aggregate Stop Amount: Item F.ii. or C.iii., whichever is less. | $0 |

Adjustment to add All Other Losses in Excess of Aggregate Stop Limit:

|  |  |  |
|---|---|---|
| iv. | Item F.iii. plus C.iii. | $0 |
| v. | Item E or (C.i. plus C.ii. less D) whichever is less | $0 |
| vi. | Item E less F.v. | $0 |
| vii. | Item F.vi. or C.iii., whichever is less | $0 |
| viii. | *Subject Losses*: Item F.iv. less F.vii., | $0 |

Determine the *Incurred Losses* to be included in the *Final Premium* for each state and line designated in Section 2 of the Large Risk Rating Plan Endorsement by multiplying the losses in each line and state included in C.iii. by the ratio of F.viii. / C.iii.

Countersigned by _____ Date _____

(Authorized Signature)

Form 64478C AGG (1/99)            Copyright 1999 American International Group, Inc.            Page 2 of 2
⊕ 01/06/2003 01L01 9429447

ISSUED BY THE STOCK INSURANCE COMPANY HEREIN CALLED THE COMPANY

AMERICAN HOME ASSURANCE COMPANY
13781

| AGENT NUMBER | POLICY NUMBER |
|---|---|
| 61342-0000 | WC   124-14-97 |
| | 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-00 |

INCORPORATED UNDER THE LAWS OF   NEW YORK
ITEM 1.   NAMED INSURED:   MAILING ADDRESS   IDENTIFICATION NO.:

ALTMAN SPECIALTY PLANTS, INC
3742 BLUE BIRD CANYON ROAD
VISTA, CA 92084-0000

AIG   Member Companies of
American International Group

EXECUTIVE OFFICES:
70 PINE STREET, NEW YORK, N.Y. 10270

SEE NAME AND ADDRESS SCHEDULE - WC990610
I.D# 917906262

PRODUCERS NAME AND ADDRESS

**WORKERS COMPENSATION AND EMPLOYERS
LIABILITY POLICY INFORMATION PAGE**

G S LEVINE INSURANCE SERVICES
3377 CARMEL MOUNTAIN ROAD
SAN DIEGO, CA 92121-0000

| INSURED IS CORPORATION | PREVIOUS POLICY NUMBER NEW |
|---|---|

OTHER WORKPLACES NOT SHOWN ABOVE: SEE NAME AND ADDRESS SCHEDULE - WC990610

ITEM 2   POLICY PERIOD 12:01 A.M. standard time at the insured's mailing address   FROM   01/01/03   TO   01/01/04

ITEM 3   A. Workers Compensation Insurance: Part One of the policy applies to the Workers Compensation Law of the states listed here:

AZ FL

B. Employers Liability Insurance: Part Two of the policy applies to the work in each state listed in Item 3.A.
The limits of our liability under Part Two are:

Bodily Injury by Accident $   1,000,000   each accident
Bodily Injury by Disease $   1,000,000   policy limit
Bodily Injury by Disease $   1,000,000   each employee

C. Other States Insurance: Part Three of the policy applies to the states, if any, listed here:
AK AL AR CO CT DC DE GA HI IA ID IL IN KS KY LA MA MD ME MI MN MO MS MT NC NE NH NJ NM
NV NY OK OR PA RI SC SD TN TX UT VA VT WI

ITEM 4   The premium for this policy will be determined by our Manuals of Rules, Classifications, Rates and Rating Plans.
All information required below is subject to verification and change by audit.

| Classifications | Code Number | Estimated Total Remuneration [X] Annual [ ] 3 Year | Rate Per $100 Of Remuneration | Estimated Premium [X] Annual [ ] 3 Year |
|---|---|---|---|---|
| SEE EXTENSION OF INFORMATION PAGE - WC7754 | | | | |

EXPENSE CONSTANT (EXCEPT WHERE APPLICABLE BY STATE)   $200  FL

| MINIMUM PREMIUM   $562  FL | | TOTAL ESTIMATED PREMIUM | $55,267 |
|---|---|---|---|

If indicated below, interim adjustments of premium shall be made:

[ ] Semi-Annually   [ ] Quarterly   [ ] Monthly   DEPOSIT PREMIUM   $55,267

ENDORSEMENTS (FORM NUMBER)   SEE ATTACHED FORM SCHEDULE - WC990612

01/27/03 LOS ANGELES   05

Issue Date   Issuing Office   Authorized Representative   WC 00 00 01
38987

FORMS SCHEDULE
POLICY ENDORSEMENT SCHEDULE

Policy Number: WC   124-14-97                                    Effective Date:  01/01/2003

```
WC0003038      EMPLOYERS LIABILITY COVERAGE ENDT
WC000404       PENDING RATE CHANGE ENDORSEMENT
WC000406A      PREMIUM DISCOUNT ENDORSEMENT
WC000414       NOTIFICATION OF CHANGE IN OWNERSHIP ENDT
WC090606       FL EMPLOYMENT AND WAGE INFO RELEASE ENDT
78052          PRIVACY POLICY
WC000419       PREMIUM DUE DATE ENDORSEMENT
WC020601       AZ CANCELATION ENDORSEMENT
FLRNTP         FLORIDA RATE NOTICE TO POLICYHOLDERS
WC990903       FL CANCELLATION AND NONRENEWAL ENDT
WC990610       NAMED INSUREDS/ADDRESSES
53820          LARGE RISK RATING PLAN ENDORSEMENT
```

**WC 99 06 12**
**(Ed. 1/97)**

## STANDARD WORKERS' COMPENSATION AND EMPLOYERS' LIABILITY EXTENSION FORM

| WC   124-14-97 | ARIZONA | 917906262 |
|---|---|---|
| Policy Prefix & No. | Schedule | INTRA/Independent State Risk ID |

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-00          ALTMAN SPECIALTY PLANTS, INC

| Item 4. Classification of Operations | | Premium Basis | Rates | |
| Entries in this item, except as specifically provided elsewhere in this policy, do not modify any of the other provisions of this policy. | Code No. | Estimated Total Annual Remuneration | Per $100 of Remuneration | Estimated Annual Premiums |
|---|---|---|---|---|
| RATING GROUP:  0001-01 | | | | |
| | | | | |
| FARM: NURSERY EMPLOYEES & DRIVERS | 0005 | 250,000 | 2.66 | 6,650 |
| SALESPERSONS, COLLECTORS, OR | 8742 | 150,000 | 0.38 | 570 |
| MESSENGERS-OUTSIDE. | | | | |
| CLERICAL OFFICE EMPLOYEES NOC. | 8810 | 85,000 | 0.24 | 204 |
| | | | | |
| STATE OF ARIZONA TOTALS | | | | |
| TOTAL CLASSIFICATION PREMIUM | | | | 7,424 |
| INCREASE LIMITS                       2.00% | 9812 | | | 148 |
| TOTAL UNMODIFIED PREMIUM | | | | 7,572 |
| EXPERIENCE PREMIUM       (ACTUAL)     1.1300 | 9898 | | | 984 |
| MODIFIED STANDARD PREMIUM | | | | 8,556 |
| UNDISCOUNTED PREMIUM | | | | 8,556 |
| PREMIUM DISCOUNT                     -11.10% | 0063 | | | -950 |
| DISCOUNTED PREMIUM | | | | 7,606 |
| TOTAL ESTIMATED PREMIUM | | | | 7,606 |
| | | | | |
| TOTAL DUE | | | | 7,606 |
| EXPERIENCE RATING MODIFICATION = 1.13 | | | | |

WC 7754 (Ed. 4-81)       See Name and Address Schedule – WC990610

## STANDARD WORKERS' COMPENSATION AND EMPLOYERS' LIABILITY EXTENSION FORM

WC   124-14-97          FLORIDA                              917906262

   Policy Prefix & No.          Schedule                    INTRA/Independent State Risk ID

--------------------

   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-00       ALTMAN SPECIALTY PLANTS, INC

| Item 4. Classification of Operations | | Code No. | Premium Basis — Estimated Total Annual Remuneration | Rates — Per $100 of Remuneration | Estimated Annual Premiums |
|---|---|---|---|---|---|
| Entries in this item, except as specifically provided elsewhere in this policy, do not modify any of the other provisions of this policy. | | | | | |
| RATING GROUP:  0002-01 | | | | | |
| | | | | | |
| FARM: FLORISTS & DRIVERS. | | 0035 | 650,000 | 6.58 | 42,770 |
| SALESPERSONS, COLLECTORS, OR | | 8742 | 110,000 | 1.20 | 1,320 |
| MESSENGERS-OUTSIDE. | | | | | |
| CLERICAL OFFICE EMPLOYEES NOC. | | 8810 | 25,000 | 0.65 | 163 |
| | | | | | |
| STATE OF FLORIDA TOTALS | | | | | |
| TOTAL CLASSIFICATION PREMIUM | | | | | 44,253 |
| INCREASE LIMITS | 1.40% | 9812 | | | 620 |
| TOTAL UNMODIFIED PREMIUM | | | | | 44,873 |
| EXPERIENCE PREMIUM      (ACTUAL) | 1.1300 | 9898 | | | 5,833 |
| MODIFIED STANDARD PREMIUM | | | | | 50,706 |
| UNDISCOUNTED PREMIUM | | | | | 50,706 |
| PREMIUM DISCOUNT | -6.40% | 0064 | | | -3,245 |
| DISCOUNTED PREMIUM | | | | | 47,461 |
| EXPENSE CONSTANT | | 0900 | | | 200 |
| TOTAL ESTIMATED PREMIUM | | | | | 47,661 |
| | | | | | |
| TOTAL DUE | | | | | 47,661 |
| EXPERIENCE RATING MODIFICATION = 1.13 | | | | | |

WC 7754 (Ed. 4-81)      **See Name and Address Schedule – WC990610**

## EMPLOYERS LIABILITY COVERAGE ENDORSEMENT

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy).

This endorsement, effective 12:01 AM  01/01/2003         forms a part of Policy No. WC      124-14-97

Issued to ALTMAN SPECIALTY PLANTS, INC

By AMERICAN HOME ASSURANCE COMPANY

This endorsement applies only to work in the states shown in the Schedule.

A.   Part One (Workers Compensation Insurance) does not apply to work in a state shown in the Schedule.

B.   Part Two (Employers Liability Insurance) applies to work in states shown in the Schedule as though they were shown in Item 3.A. of the Information Page.

C.   Part Two (Employers Liability Insurance), C. Exclusions is changed by adding these exclusions.

This insurance does not cover:

13.  bodily injury to any member of the flying crew of any aircraft;

14.  bodily injury to an employee when you are deprived of common law defenses or are subject to penalty because of your failure to secure your obligations under the workers compensation law of any state shown in the Schedule or otherwise fail to comply with that law.

Schedule

States

        NORTH DAKOTA
        WASHINGTON
        WEST VIRGINIA
        WYOMING
        OHIO

WC 00 03 03 B              Countersigned by _____
(Ed. 4-92)

                                                        Authorized Representative

## PENDING RATE CHANGE ENDORSEMENT

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to prep aration of the policy).

This endorsement, effective 12:01 AM  01/01/2003            forms a part of Policy No. WC      124-14-97

Issued to ALTMAN SPECIALTY PLANTS, INC

By AMERICAN HOME ASSURANCE COMPANY

A rate change filing is being considered by the proper regulatory authority. The filing may result in rates different from the rates shown on the policy. If it does, we will issue an endorsement to show the new rates and their effective date.

If only one state is shown in Item 3.A of the Information Page, this endorsement applies to that state.  If more than one state is shown there, this endorsement applies only in the state shown in the Schedule.

### Schedule

**State**

Florida

WC 00 04 04
(Ed. 4-84)

Countersigned by _____

Authorized Representative

**PREMIUM DISCOUNT ENDORSEMENT**

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy).

This endorsement, effective 12:01 AM 01/01/2003          forms a part of Policy No. WC    124-14-97

Issued to ALTMAN SPECIALTY PLANTS, INC

By AMERICAN HOME ASSURANCE COMPANY

The premium for this policy and the policies, if any, listed in Item 3 of the Schedule may be eligible for a discount. This endorsement shows your estimated discount in Items 1 or 2 of the Schedule. The final calculation of premium discount will be determined by our manuals and your premium basis as determined by audit. Premium subject to retrospective rating is not subject to premium discount.

**Schedule**

1.   State

| | | Estimated Eligible Premium | | |
|---|---|---|---|---|
| | First $10,000 | Next $190,000 | Next $1,550,000 | Balance |
| Arizona | | 9.10 | 11.30 | 12.30 |

2.   Average percentage discount:                    11.10  %

3.   Other policies: WC 124-14-96

4.   If there are no entries in Items 1, 2 and 3 of the Schedule, see the Premium Discount Endorsement attached to your policy number:

WC 00 04 06A              Countersigned by _____
(Ed. 08/95)
                                                      **Authorized Representative**

## NOTIFICATION OF CHANGE IN OWNERSHIP ENDORSEMENT

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy).

This endorsement, effective 12:01 AM 01/01/2003          forms a part of Policy No. WC      124-14-97

Issued to ALTMAN SPECIALTY PLANTS, INC.

By AMERICAN HOME ASSURANCE COMPANY

Experience rating is mandatory for all eligible Insureds. The experience rating modification factor, if any, applicable to this policy, may change if there is a change in your ownership or in that of one or more of the entities eligible to be combined with you for experience rating purposes. Change in ownership includes sales, purchases, other transfers, mergers, consolidations, dissolutions, formations of a new entity and other changes provided for in the applicable experience rating plan manual.

You must report any change in ownership to us in writing within 90 days of such change. Failure to report such changes within this period may result in revision of the experience rating modification factor used to determine your premium.

THIS ENDORSEMENT IS NOT APPLICABLE IN NEW JERSEY, PENNSYLVANIA,
MICHIGAN, ALASKA, CALIFORNIA, DELAWARE OR TEXAS.

WC 00 04 14          Countersigned by _____
(Ed. 7-90)

                                                    Authorized Representative

-54-

PAGE 1

## ENDORSEMENT
### NAME AND ADDRESS SCHEDULE ENDORSEMENT

This endorsement, effective 12:01 AM 01/01/2003

Forms a part of policy no.: WC    124-14-97

Issued to: ALTMAN SPECIALTY PLANTS, INC

By: AMERICAN HOME ASSURANCE COMPANY

| LOC NO. | NAME AND ADDRESS SCHEDULE | FEIN | UI # |
|---------|---------------------------|------|------|
| 0001 | ALTMAN SPECIALTY PLANTS, INC<br>3825 W. SOUTHERN AVE.<br>PHOENIX, AZ 85041-0000 | 330494942 | |
| 0002 | ALTMAN SPECIALTY PLANTS, INC<br>16026 N. 36TH STREET<br>PHOENIX, AZ 85032-0000 | 330494942 | |
| 0003 | ALTMAN SPECIALTY PLANTS, INC<br>4967 HYPOLUXO ROAD<br>LAKE WORTH, FL 33462-7516 | 330494942 | |
| 0004 | ALTMAN SPECIALTY PLANTS, INC<br>2447 D. ROAD<br>LOXAHATCHEE, FL 33470-0000 | 330494942 | |

Issue Date: 01/27/03

WC990610 (Ed. 1-97)

Authorized Representative



B

ISSUED BY THE STOCK INSURANCE COMPANY HEREIN CALLED THE COMPANY

AMERICAN HOME ASSURANCE COMPANY
13781

RECEIVED JAN 2 8 2004

AGENT NUMBER
61342-0000

POLICY NUMBER
WC   124-14-96
------------------------------
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-10

INCORPORATED UNDER THE LAWS OF   NEW YORK
ITEM 1.   NAMED INSURED:   MAILING ADDRESS   IDENTIFICATION NO.:

ALTMAN SPECIALTY PLANTS, INC.
3742 BLUE BIRD CANYON ROAD
VISTA, CA 92084-0000

Member Companies of
American International Group

EXECUTIVE OFFICES:
70 PINE STREET, NEW YORK, N.Y. 10270

SEE NAME AND ADDRESS SCHEDULE - WC990610
I.D# 3376106   CA UI#:

PRODUCERS NAME AND ADDRESS

**WORKERS COMPENSATION AND EMPLOYERS
LIABILITY POLICY INFORMATION PAGE**

G S LEVINE INSURANCE SERVICES
3377 CARMEL MOUNTAIN ROAD
SAN DIEGO, CA 92121-0000

INSURED IS
CORPORATION

PREVIOUS POLICY NUMBER
RENEWAL   001241496

OTHER WORKPLACES NOT SHOWN ABOVE: SEE NAME AND ADDRESS SCHEDULE - WC990610

ITEM 2   POLICY PERIOD 12:01 A.M. standard time at the Insured's
mailing address
FROM   01/01/04   TO   01/01/05

ITEM 3   A. Workers Compensation Insurance: Part One of the policy applies to the Workers Compensation Law of the states listed here:

CA

B. Employers Liability Insurance: Part Two of the policy applies to the work in each state listed in Item 3.A.
The limits of our liability under Part Two are:

Bodily Injury by Accident $   1,000,000   each accident
Bodily Injury by Disease  $   1,000,000   policy limit
Bodily Injury by Disease  $   1,000,000   each employee

C. Other States Insurance: Part Three of the policy applies to the states, if any, listed here:
NONE

ITEM 4   The premium for this policy will be determined by our Manuals of Rules, Classifications, Rates and Rating Plans.
All information required below is subject to verification and change by audit.

| Classifications | Code Number | Estimated Total Remuneration [X] Annual [ ] 3 Year | Rate Per $100 OF Remuneration | Estimated Premium [X] Annual [ ] 3 Year |
|---|---|---|---|---|
| SEE EXTENSION OF INFORMATION PAGE - WC7754 TAXES/ASSESSMENTS/SURCHARGES | | | | $52,498 |

EXPENSE CONSTANT (EXCEPT WHERE APPLICABLE BY STATE)   $160 CA

MINIMUM PREMIUM   $750 CA   TOTAL ESTIMATED PREMIUM   $2,370,023

If indicated below, interim adjustments of premium shall be made:
[ ] Semi-Annually   [ ] Quarterly   [ ] Monthly   DEPOSIT PREMIUM   $2,370,023

ENDORSEMENTS (FORM NUMBER)   SEE ATTACHED FORM SCHEDULE - WC990612

01/15/04 LOS ANGELES   05
Issue Date   Issuing Office   Authorized Representative   WC 00 00 01
39857

## FORMS SCHEDULE

Policy Number: WC   124-14-96                    Effective Date:  01/01/2004

| | |
|---|---|
| WC000406 | PREMIUM DISCOUNT ENDORSEMENT |
| 53820WC | LARGE RISK RATING PLAN (SHORT FORM) |
| WC60904 | FOREIGN COVERAGE ENDORSEMENT |
| 78052A | PRIVACY POLICY |
| WC000420 | TERRORISM RISK INSURANCE ACT ENDORSEMENT |
| 55154WC | CALIFORNIA FRAUD ASSESSMENT |
| WC040002A | CA-ADMINISTRATION REVOLVING FUND ASMNT |
| WC040305 | CA VOL COMP & EMPLOYERS LIAB |
| WC040360 | CA EMPLOYERS LIAB COV AMENDATORY ENDT |
| WC040402 | CA MANDATORY RATE CHANGE ENDT |
| WC040407 | CA PREMIUM ADJUSTMENT ENDT |
| WC990017 | CALIFORNIA CANCELLATION ENDORSEMENT |
| WC990407 | CA POLICY AMENDATORY ENDT |
| WC990408B | CA NOTIF OF LOSS CONTROL SERVICES |
| WC990409 | CA POLICYHOLDER NOTICE - CIGA SURCHARGE |
| WC990410 | POLICYHOLDER NOTICE |
| WC990411 | CA ADV NOTICE OF CANC OR NON-REN EXTD |
| WC990413 | POLICYHOLDER NOTICE |
| WC990610 | NAMED INSUREDS/ADDRESSES |

**WC 99 06 12**
**(Ed. 1/97)**

Page 1 of 1

## STANDARD WORKERS' COMPENSATION AND EMPLOYERS' LIABILITY EXTENSION FORM

| WC   124-14-96 | CALIFORNIA | 3376106 |
|---|---|---|
| Policy Prefix & No. | Schedule | INTRA/Independent State Risk ID |

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-10    ALTMAN SPECIALTY PLANTS, INC.

| Item 4. Classification of Operations | | Premium Basis | Rates | |
|---|---|---|---|---|
| Entries in this item, except as specifically provided elsewhere in this policy, do not modify any of the other provisions of this policy. | Code No. | Estimated Total Annual Remuneration | Per $100 of Remuneration | Estimated Annual Premium |
| RATING GROUP:  0001-01 | | | | |
| NURSERIES-PROPAGATION AND CULTIVATION OF NURSERY STOCK | 0005 | 15,700,000 | 12.91 | 2,026,870 |
| NURSERIES-PROPAGATION AND CULTIVATION OF NURSERY STOCK | 0005V | IF ANY | 12.91 | |
| POTTERIES-GLAZED OR PORCELAIN, EARTHENWARE | 4049 | IF ANY | 17.62 | |
| SALESPERSONS-OUTSIDE | 8742 | 5,430,000 | 1.98 | 107,514 |
| CLERICAL OFFICE EMPLOYEES-N.O.C. | 8810 | 2,600,000 | 1.74 | 45,240 |
| STATE OF CALIFORNIA TOTALS | | | | |
| TOTAL CLASSIFICATION PREMIUM | | | | 2,179,624 |
| TOTAL UNMODIFIED PREMIUM | | | | 2,179,624 |
| EXPERIENCE PREMIUM      (ACTUAL)     1.3500 | 9897 | | | 762,868 |
| MODIFIED STANDARD PREMIUM | | | | 2,942,492 |
| UNDISCOUNTED PREMIUM | | | | 2,942,492 |
| NEGOTIATED PREMIUM DISCOUNT     -20.02% | 0063 | | | -589,087 |
| DISCOUNTED PREMIUM | | | | 2,353,405 |
| EXPENSE CONSTANT | 0900 | | | 160 |
| TERRORISM RISK INS ACT 2002     0.7551% | 9740 | | | 16,458 |
| TOTAL ESTIMATED PREMIUM | | | | 2,370,023 |
| GUARANTEE ASSOCIATION ASSESS     2.00% | 9713 | | | 47,400 |
| CA ADMIN REVOLVING FUND ASSESS   0.0971% | 9683 | | | 2,301 |
| CA FRAUD ASSESSMENT     0.118% | 9682 | | | 2,797 |
| TOTAL DUE | | | | 2,422,521 |
| EXPERIENCE RATING MODIFICATION ~ 1.35 | | | | |

WC 7754 (Ed. 4-81)    **See Name and Address Schedule – WC990610**

# WORKERS COMPENSATION AND EMPLOYERS LIABILITY

## INSURANCE POLICY

National Union Fire Insurance
Company of Pittsburgh, Pa.

American Home Assurance Company

The Insurance Company of
The State of Pennsylvania

Birmingham Fire Insurance Company
of Pennsylvania

Commerce and Industry
Insurance Company



Member Companies of
American International Group, Inc.
EXECUTIVE OFFICES
70 PINE STREET
NEW YORK, N.Y. 10270

Coverage is provided by the Company designated on the Information Page
A Stock Insurance Company

---

**WORKERS COMPENSATION AND EMPLOYERS LIABILITY INSURANCE POLICY**
**QUICK REFERENCE**

|                                                           | BEGINNING ON PAGE |
|-----------------------------------------------------------|:---:|
| Information Page                                           | i   |
| **GENERAL SECTION**                                        | 1   |
| A.  The Policy                                            | 1   |
| B.  Who Is Insured                                        | 1   |
| C.  Workers Compensation Law                              | 1   |
| D.  State                                                 | 1   |
| E.  Locations                                             | 1   |
| **PART ONE–WORKERS COMPENSATION INSURANCE**               | 1   |
| A.  How This Insurance Applies                            | 1   |
| B.  We Will Pay                                           | 1   |
| C.  We Will Defend                                        | 1   |
| D.  We Will Also Pay                                      | 1   |
| E.  Other Insurance                                       | 2   |
| F.  Payments You Must Make                                | 2   |
| G.  Recovery From Others                                  | 2   |
| H.  Statutory Provisions                                  | 2   |

THESE POLICY PROVISIONS WITH THE INFORMATION PAGE AND ENDORSEMENTS,
IF ANY, ISSUED TO FORM A PART THEREOF, COMPLETE THIS POLICY.

"INCLUDES COPYRIGHT MATERIAL OF THE NATIONAL COUNCIL ON COMPENSATION
INSURANCE, USED WITH ITS PERMISSION.

COPYRIGHT 1983 NATIONAL COUNCIL ON COMPENSATION INSURANCE"

39638C(04/92)

WC 00 00 00 A (STANDARD)

## QUICK REFERENCE – CONTINUED

BEGINNING ON
PAGE

PART TWO - EMPLOYERS LIABILITY INSURANCE ............................................................................ 2
   A.  How This Insurance Applies ...................................................................................................... 2
   B.  We Will Pay ................................................................................................................................ 3
   C.  Exclusions .................................................................................................................................. 3
   D.  We Will Defend ......................................................................................................................... 3
   E.  We Will Also Pay ....................................................................................................................... 4
   F.  Other Insurance ........................................................................................................................ 4
   G.  Limits of Liability ....................................................................................................................... 4
   H.  Recovery From Others ............................................................................................................. 4
   I.  Action Against Us ...................................................................................................................... 4

PART THREE - OTHER STATES INSURANCE ................................................................................... 4
   A.  How This Insurance Applies ...................................................................................................... 4
   B.  Notice ........................................................................................................................................ 5

PART FOUR - YOUR DUTIES IF INJURY OCCURS ............................................................................ 5

PART FIVE - PREMIUM ......................................................................................................................... 5
   A.  Our Manuals .............................................................................................................................. 5
   B.  Classifications ........................................................................................................................... 5
   C.  Remuneration ........................................................................................................................... 5
   D.  Premium Payments ................................................................................................................... 5
   E.  Final Premium ........................................................................................................................... 5
   F.  Records ...................................................................................................................................... 6
   G.  Audit .......................................................................................................................................... 6

PART SIX - CONDITIONS ...................................................................................................................... 6
   A.  Inspection .................................................................................................................................. 6
   B.  Long Term Policy ...................................................................................................................... 6
   C.  Transfer of Your Rights and Duties .......................................................................................... 6
   D.  Cancellation .............................................................................................................................. 6
   E.  Sole Representative ................................................................................................................. 6

IMPORTANT: This Quick Reference is **not** part of the Workers Compensation and Employers Liability Policy and does **not** provide coverage. Refer to the Workers Compensation and Employers Liability Policy itself for actual contractual provisions.

## PLEASE READ THE WORKERS COMPENSATION AND EMPLOYERS LIABILITY POLICY CAREFULLY

ATTACH FORM AND ENDORSEMENTS (IF ANY) HERE

## WORKERS COMPENSATION AND EMPLOYERS LIABILITY INSURANCE POLICY

In return for the payment of the premium and subject to all terms of this policy, we agree with you as follows.

## GENERAL SECTION

**A. The Policy**

This policy includes at its effective date the Information Page and all endorsements and schedules listed there. It is a contract of insurance between you (the employer named in Item 1 of the Information Page) and us (the insurer named on the Information Page). The only agreements relating to this insurance are stated in this policy. The terms of this policy may not be changed or waived except by endorsement issued by us to be part of this policy.

**B. Who Is Insured**

You are insured if you are an employer named in Item 1 of the Information Page. If that employer is a partnership, and if you are one of its partners, you are insured, but only in your capacity as an employer of the partnership's employees.

**C. Workers Compensation Law**

Workers Compensation Law means the workers or workmen's compensation law and occupational disease law of each state or territory named in Item 3.A of the Information Page. It includes any amendments to that law which are in effect during the policy period. It does not include any federal workers or workmen's compensation law, any federal occupational disease law or the provisions of any law that provide nonoccupational disability benefits.

**D. State**

State means any state of the United States of America, and the District of Columbia.

**E. Locations**

This policy covers all of your workplaces listed in Items 1 or 4 of the Information Page; and it covers all other workplaces in Item 3.A states unless you have other insurance or are self-insured for such workplaces.

## PART ONE · WORKERS COMPENSATION INSURANCE

**A. How This Insurance Applies**

This workers compensation insurance applies to bodily injury by accident or bodily injury by disease. Bodily injury includes resulting death.

1.  Bodily injury by accident must occur during the policy period.

2.  Bodily injury by disease must be caused or aggravated by the conditions of your employment. The employee's last day of last exposure to the conditions causing or aggravating such bodily injury by disease must occur during the policy period.

**B. We Will Pay**

We will pay promptly when due the benefits required of you by the workers compensation law.

**C. We Will Defend**

We have the right and duty to defend at our expense any claim, proceeding or suit against you for benefits payable by this insurance. We have the right to investigate and settle these claims, proceedings or suits.

We have no duty to defend a claim, proceeding or suit that is not covered by this insurance.

**D. We Will Also Pay**

We will also pay these costs, in addition to other amounts payable under this insurance, as part of any claim, proceeding or suit we defend:

1.  reasonable expenses incurred at our request, but not loss of earnings;

2.  premiums for bonds to release attachments and for appeal bonds in bond amounts up to the amount payable under this insurance;

WC 00 00 00 A

1 of 7

3. litigation costs taxed against you;

4. interest on a judgment as required by law until we offer the amount due under this insurance; and

5. expenses we incur.

E. **Other Insurance**

We will not pay more than our share of benefits and costs covered by this insurance and other insurance or self-insurance. Subject to any limits of liability that may apply, all shares will be equal until the loss is paid. If any insurance or self-insurance is exhausted, the shares of all remaining insurance will be equal until the loss is paid.

F. **Payments You Must Make**

You are responsible for any payments in excess of the benefits regularly provided by the workers compensation law including those required because:

1. of your serious and willful misconduct;

2. you knowingly employ an employee in violation of law;

3. you fail to comply with a health or safety law or regulation; or

4. you discharge, coerce or otherwise discriminate against any employee in violation of the workers compensation law.

If we make any payments in excess of the benefits regularly provided by the workers compensation law on your behalf, you will reimburse us promptly.

G. **Recovery From Others**

We have your rights, and the rights of persons entitled to the benefits of this insurance, to recover our payments from anyone liable for the injury. You will do everything necessary to protect those rights for us and to help us enforce them.

H. **Statutory Provisions**

These statements apply where they are required by law.

1. As between an injured worker and us, we have notice of the injury when you have notice.

2. Your default or the bankruptcy or insolvency of you or your estate will not relieve us of our duties under this insurance after an injury occurs.

3. We are directly and primarily liable to any person entitled to the benefits payable by this insurance. Those persons may enforce our duties; so may an agency authorized by law. Enforcement may be against us or against you and us.

4. Jurisdiction over you is jurisdiction over us for purposes of the workers compensation law. We are bound by decisions against you under that law, subject to the provisions of this policy that are not in conflict with that law.

5. This insurance conforms to the parts of the workers compensation law that apply to:

   a. benefits payable by this insurance or;

   b. special taxes, payments into security or other special funds, and assessments payable by us under that law.

6. Terms of this insurance that conflict with the workers compensation law are changed by this statement to conform to that law.

Nothing in these paragraphs relieves you of your duties under this policy.

## PART TWO - EMPLOYERS LIABILITY INSURANCE

A. **How This Insurance Applies**

This employers liability insurance applies to bodily injury by accident or bodily injury by disease. Bodily injury includes resulting death.

1. The bodily injury must arise out of and in the course of the injured employee's employment by you.

2. The employment must be necessary or incidental to your work in a state or territory listed in Item 3.A. of the Information Page.

3. Bodily injury by accident must occur during the policy period.

4. Bodily injury by disease must be caused or aggravated by the conditions of your employment. The employee's last day of last exposure to the conditions causing or aggravating such bodily injury by disease must occur during the policy period.

5. If you are sued, the original suit and any related legal actions for damages for bodily injury

WC 00 00 00 A

ATTACH FORM AND ENDORSEMENTS (IF ANY) HERE

## WORKERS COMPENSATION AND EMPLOYERS LIABILITY INSURANCE POLICY

In return for the payment of the premium and subject to all terms of this policy, we agree with you as follows.

## GENERAL SECTION

### A.  The Policy

This policy includes at its effective date the Information Page and all endorsements and schedules listed there. It is a contract of insurance between you (the employer named in Item 1 of the Information Page) and us (the insurer named on the Information Page). The only agreements relating to this insurance are stated in this policy. The terms of this policy may not be changed or waived except by endorsement issued by us to be part of this policy.

### B.  Who Is Insured

You are insured if you are an employer named in Item 1 of the Information Page. If that employer is a partnership, and if you are one of its partners, you are insured, but only in your capacity as an employer of the partnership's employees.

### C.  Workers Compensation Law

Workers Compensation Law means the workers or workmen's compensation law and occupational disease law of each state or territory named in Item 3.A. of the Information Page. It includes any amendments to that law which are in effect during the policy period. It does not include any federal workers or workmen's compensation law, any federal occupational disease law or the provisions of any law that provide nonoccupational disability benefits.

### D.  State

State means any state of the United States of America, and the District of Columbia.

### E.  Locations

This policy covers all of your workplaces listed in Items 1 or 4 of the Information Page; and it covers all other workplaces in Item 3.A states unless you have other insurance or are self-insured for such workplaces.

## PART ONE - WORKERS COMPENSATION INSURANCE

### A.  How This Insurance Applies

This workers compensation insurance applies to bodily injury by accident or bodily injury by disease. Bodily injury includes resulting death.

1.  Bodily injury by accident must occur during the policy period.

2.  Bodily injury by disease must be caused or aggravated by the conditions of your employment. The employee's last day of last exposure to the conditions causing or aggravating such bodily injury by disease must occur during the policy period.

### B.  We Will Pay

We will pay promptly when due the benefits required of you by the workers compensation law.

### C.  We Will Defend

We have the right and duty to defend at our expense any claim, proceeding or suit against you for benefits payable by this insurance. We have the right to investigate and settle these claims, proceedings or suits.

We have no duty to defend a claim, proceeding or suit that is not covered by this insurance.

### D.  We Will Also Pay

We will also pay these costs, in addition to other amounts payable under this insurance, as part of any claim, proceeding or suit we defend:

1.  reasonable expenses incurred at our request, but not loss of earnings;

2.  premiums for bonds to release attachments and for appeal bonds in bond amounts up to the amount payable under this insurance;

WC 00 00 00 A

3. litigation costs taxed against you;

4. interest on a judgment as required by law until we offer the amount due under this insurance; and

5. expenses we incur.

### E. Other Insurance

We will not pay more than our share of benefits and costs covered by this insurance and other insurance or self-insurance. Subject to any limits of liability that may apply, all shares will be equal until the loss is paid. If any insurance or self-insurance is exhausted, the shares of all remaining insurance will be equal until the loss is paid.

### F. Payments You Must Make

You are responsible for any payments in excess of the benefits regularly provided by the workers compensation law including those required because:

1. of your serious and willful misconduct;

2. you knowingly employ an employee in violation of law;

3. you fail to comply with a health or safety law or regulation; or

4. you discharge, coerce or otherwise discriminate against any employee in violation of the workers compensation law.

If we make any payments in excess of the benefits regularly provided by the workers compensation law on your behalf, you will reimburse us promptly.

### G. Recovery From Others

We have your rights, and the rights of persons entitled to the benefits of this insurance, to recover our payments from anyone liable for the injury. You will do everything necessary to protect those rights for us and to help us enforce them.

### H. Statutory Provisions

These statements apply where they are required by law.

1. As between an injured worker and us, we have notice of the injury when you have notice.

2. Your default or the bankruptcy or insolvency of you or your estate will not relieve us of our duties under this insurance after an injury occurs.

3. We are directly and primarily liable to any person entitled to the benefits payable by this insurance. Those persons may enforce our duties; so may an agency authorized by law. Enforcement may be against us or against you and us.

4. Jurisdiction over you is jurisdiction over us for purposes of the workers compensation law. We are bound by decisions against you under that law, subject to the provisions of this policy that are not in conflict with that law.

5. This insurance conforms to the parts of the workers compensation law that apply to:

   a. benefits payable by this insurance or;

   b. special taxes, payments into security or other special funds, and assessments payable by us under that law.

6. Terms of this insurance that conflict with the workers compensation law are changed by this statement to conform to that law.

Nothing in these paragraphs relieves you of your duties under this policy.

## PART TWO - EMPLOYERS LIABILITY INSURANCE

### A. How This Insurance Applies

This employers liability insurance applies to bodily injury by accident or bodily injury by disease. Bodily injury includes resulting death.

1. The bodily injury must arise out of and in the course of the injured employee's employment by you.

2. The employment must be necessary or incidental to your work in a state or territory listed in Item 3.A. of the Information Page.

3. Bodily injury by accident must occur during the policy period.

4. Bodily injury by disease must be caused or aggravated by the conditions of your employment. The employee's last day of last exposure to the conditions causing or aggravating such bodily injury by disease must occur during the policy period.

5. If you are sued, the original suit and any related legal actions for damages for bodily injury

WC 00 00 00 A

2 of 7

-65-

by accident or by disease must be brought in the United States of America, its territories or possessions, or Canada.

## B.   We Will Pay

We will pay all sums you legally must pay as damages because of bodily injury to your employees, provided the bodily injury is covered by this Employers Liability Insurance.

The damages we will pay, where recovery is permitted by law, include damages:

1. for which you are liable to a third party by reason of a claim or suit against you by that third party to recover the damages claimed against such third party as a result of injury to your employee;

2. for care and loss of services; and

3. for consequential bodily injury to a spouse, child, parent, brother or sister of the injured employee;

provided that these damages are the direct consequence of bodily injury that arises out of and in the course of the injured employee's employment by you; and

4. because of bodily injury to your employee that arises out of and in the course of employment, claimed against you in a capacity other than as employer.

## C.   Exclusions

This insurance does not cover:

1. liability assumed under a contract. This exclusion does not apply to a warranty that your work will be done in a workmanlike manner;

2. punitive or exemplary damages because of bodily injury to an employee employed in violation of law;

3. bodily injury to an employee while employed in violation of law with your actual knowledge or the actual knowledge of any of your executive officers;

4. any obligation imposed by a workers compensation, occupational disease, unemployment compensation, or disability benefits law, or any similar law;

5. bodily injury intentionally caused or aggravated by you;

6. bodily injury occurring outside the United States of America, its territories or possessions, and Canada. This exclusion does not apply to bodily injury to a citizen or resident of the United States of America or Canada who is temporarily outside these countries;

7. damages arising out of coercion, criticism, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination against or termination of any employee, or any personnel practices, policies, acts or omissions.

8. bodily injury to any person in work subject to the Longshore and Harbor Workers' Compensation Act (33 USC Sections 901-950), the Nonappropriated Fund Instrumentalities Act (5 USC Sections 8171-8173), the Outer Continental Shelf Lands Act (43 USC Sections 1331-1356), the Defense Base Act (42 USC Sections 1651-1654), the Federal Coal Mine Health and Safety Act of 1969 (30 USC Sections 901-942), any other federal workers or workmen's compensation law or other federal occupational disease law, or any amendments to these laws.

9. bodily injury to any person in work subject to the Federal Employers' Liability Act (45 USC Sections 51-60), any other federal laws obligating an employer to pay damages to an employee due to bodily injury arising out of or in the course of employment, or any amendments to those laws.

10. bodily injury to a master or member of the crew of any vessel.

11. fines or penalties imposed for violation of federal or state law.

12. damages payable under the Migrant and Seasonal Agricultural Worker Protection Act (29 USC Sections 1801-1872) and under any other federal law awarding damages for violation of those laws or regulations issued thereunder, and any amendments to those laws.

## D.   We Will Defend

We have the right and duty to defend, at our expense, any claim, proceeding or suit against you for damages payable by this insurance. We have the right to investigate and settle these claims, proceedings and suits.

WC 00 00 00 A

3 of 7

We have no duty to defend a claim, proceeding or suit that is not covered by this insurance. We have no duty to defend or continue defending after we have paid our applicable limit of liability under this insurance.

### E. We Will Also Pay

We will also pay these costs, in addition to other amounts payable under this insurance, as part of any claim proceeding, or suit we defend;

1. reasonable expenses incurred at our request; but not loss of earnings;

2. premiums for bonds to release attachments and for appeal bonds in bond amounts up to the limit of our liability under this insurance;

3. litigation costs taxed against you;

4. interest on a judgment as required by law until we offer the amount due under this insurance; and

5. expenses we incur.

### F. Other Insurance

We will not pay more than our share of damages and costs covered by this insurance and other insurance or self-insurance. Subject to any limits of liability that apply, all shares will be equal until the loss is paid. If any insurance or self-insurance is exhausted, the shares of all remaining insurance and self-insurance will be equal until the loss is paid.

### G. Limits of Liability

Our liability to pay for damages is limited. Our limits of liability are shown in Item 3.B. of the Information Page. They apply as explained below.

1. Bodily Injury by Accident. The limit shown for "bodily injury by accident–each accident" is the most we will pay for all damages covered by this insurance because of bodily injury to one or more employees in any one accident.

A disease is not bodily injury by accident unless it results directly from bodily injury by accident.

2. Bodily Injury by Disease. The limit shown for "bodily injury by disease-policy limit" is the most we will pay for all damages covered by this insurance and arising out of bodily injury by disease, regardless of the number of employees who sustain bodily injury by disease. The limit shown for "bodily injury by disease-each employee" is the most we will pay for all damages because of bodily injury by disease to any one employee.

Bodily injury by disease does not include disease that results directly from a bodily injury by accident.

3. We will not pay any claims for damages after we have paid the applicable limit of our liability under this insurance.

### H. Recovery From Others

We have your rights to recover our payment from anyone liable for an injury covered by this insurance. You will do everything necessary to protect those rights for us and to help us enforce them.

### I. Actions Against Us

There will be no right of action against us under this insurance unless:

1. You have complied with all the terms of this policy; and

2. The amount you owe has been determined with our consent or by actual trial and final judgment.

This insurance does not give anyone the right to add us as a defendant in an action against you to determine your liability. The bankruptcy or insolvency of you or your estate will not relieve us of our obligations under this Part.

## PART THREE - OTHER STATES INSURANCE

### A. How This Insurance Applies

1. This other states insurance applies only if one or more states are shown in Item 3.C. of the Information Page.

2. If you begin work in any one of those states after the effective date of this policy and are not insured or are not self-insured for such work, all provisions of the policy will apply as

though that state were listed in Item 3.A. of the Information Page.

3. We will reimburse you for the benefits required by the workers compensation law of that state if we are not permitted to pay the benefits directly to persons entitled to them.

4. If you have work on the effective date of this policy in any state not listed in Item 3.A. of the

WC 00 00 00 A

Information Page, coverage will not be afforded for that state unless we are notified within thirty days.

B. **Notice**

Tell us at once if you begin work in any state listed in Item 3.C. of the Information Page.

## PART FOUR - YOUR DUTIES IF INJURY OCCURS

Tell us at once if injury occurs that may be covered by this policy. Your other duties are listed here.

1. Provide for immediate medical and other services required by the workers compensation law.

2. Give us or our agent the names and addresses of the injured persons and of witnesses, and other information we may need.

3. Promptly give us all notices, demands and legal papers related to the injury, claim, proceeding or suit.

4. Cooperate with us and assist us, as we may request, in the investigation, settlement or defense of any claim, proceeding or suit.

5. Do nothing after an injury occurs that would interfere with our right to recover from others.

6. Do not voluntarily make payments, assume obligations or incur expenses, except at your own cost.

## PART FIVE - PREMIUM

A. **Our Manuals**

All premium for this policy will be determined by our manuals of rules, rates, rating plans and classifications. We may change our manuals and apply the changes to this policy if authorized by law or a governmental agency regulating this insurance.

B. **Classifications**

Item 4 of the Information Page shows the rate and premium basis for certain business or work classifications. These classifications were assigned based on an estimate of the exposures you would have during the policy period. If your actual exposures are not properly described by those classifications, we will assign proper classifications, rates and premium basis by endorsement to this policy.

C. **Remuneration**

Premium for each work classification is determined by multiplying a rate times a premium basis. Remuneration is the most common premium basis. This premium basis includes payroll and all other remuneration paid or payable during the policy period for the services of:

1. All your officers and employees engaged in work covered by this policy; and

2. All other persons engaged in work that could make us liable under Part One (Workers Compensation Insurance) of this policy. If you do not have payroll records for these persons, the contract price for their services and materials may be used as the premium basis. This paragraph 2 will not apply if you give us proof

that the employers of these persons lawfully secured their workers compensation obligations.

D. **Premium Payments**

You will pay all premium when due. You will pay the premium even if part or all of a workers compensation law is not valid.

E. **Final Premium**

The premium shown on the Information Page, schedules, and endorsements is an estimate. The final premium will be determined after this policy ends by using the actual, not the estimated, premium basis and the proper classifications and rates that lawfully apply to the business and work covered by this policy. If the final premium is more than the premium you paid to us, you must pay us the balance. If it is less, we will refund the balance to you. The final premium will not be less than the highest minimum premium for the classifications covered by this policy.

If this policy is canceled, final premium will be determined in the following way unless our manuals provide otherwise.

1. If we cancel, final premium will be calculated pro rata based on the time this policy was in force. Final premium will not be less than the pro rata share of the minimum premium.

2. If you cancel, final premium will be more than pro rata; it will be based on the time this policy was in force, and increased by our short rate

**WC 00 00 00 A**

cancellation table and procedure.  Final pre-
mium will not be less than the minimum pre-
mium.

### F.  Records

You will keep records of information needed to
compute premium.  You will provide us with copies
of those records when we ask for them.

### G.  Audit

You will let us examine and audit all your records
that relate to this policy.  These records include
ledgers, journals, registers, vouchers, contracts, tax
reports, payroll and disbursement records, and
programs for storing and retrieving data.  We may
conduct the audits during regular business hours
during the policy period and within three years after
the policy period ends.  Information developed by
audit will be used to determine final premium.  In-
surance rate service organizations have the same
rights we have under this provision.

## PART SIX - CONDITIONS

### A.  Inspection

We have the right, but are not obliged to inspect
your workplaces at any time.  Our inspections are
not safety inspections.  They relate only to the
insurability of the workplaces and the premiums to
be charged.  We may give you reports on the con-
ditions we find.  We may also recommend changes.
While they may help reduce losses, we do not
undertake to perform the duty of any person to
provide for the health or safety of your employees
or the public.  We do not warrant that your
workplaces are safe or healthful or that they comply
with laws, regulations, codes or standards.  Insur-
ance rate service organizations have the same
rights we have under this provision.

### B.  Long Term Policy

If the policy period is longer than one year and six-
teen days, all provisions of this policy will apply as
though a new policy were issued on each annual
anniversary that this policy is in force.

### C.  Transfer of Your Rights and Duties

Your rights or duties under this policy may not be
transferred without our written consent.

If you die and we receive notice within thirty days
after your death, we will cover your legal represen-
tative as insured.

### D.  Cancellation

1.  You may cancel this policy.  You must mail or
    deliver advance written notice to us stating
    when the cancellation is to take effect.

2.  We may cancel this policy.  We may mail or
    deliver to you not less than ten days advance
    written notice stating when the cancellation is
    to take effect.  Mailing that notice to you at
    your mailing address shown in Item 1 of the
    Information Page will be sufficient to prove
    notice.

3.  The policy period will end on the day and hour
    stated in the cancellation notice.

4.  Any of these provisions that conflicts with a
    law that controls the cancellation of the insur-
    ance in this policy is changed by this state-
    ment to comply with that law.

### E.  Sole Representative

The insured first named in Item 1 of the Information
Page will act on behalf of all insureds to change this
policy, receive return premium, and give or receive
notice of cancellation.

**WC 00 00 00 A**

**In Witness Whereof,** the company has caused this policy to be executed and attested, but this policy shall not be valid unless countersigned by a duly authorized representative of the company.

The Insurance Company
of The State of Pennsylvania

President
National Union Fire
Insurance Company of
Pittsburgh, PA

President
Commerce and Industry
Insurance Company

President
American Home
Assurance Company

President
Birmingham Fire Insurance
Company of Pennsylvania

Secretary
National Union Fire Insurance Company of Pittsburgh, PA
American Home Assurance Company
The Insurance Company of The State of Pennsylvania
Birmingham Fire Insurance Company of Pennsylvania
Commerce and Industry Insurance Company

WC 00 00 00 A                              7 of 7

## PREMIUM DISCOUNT ENDORSEMENT

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy).

This endorsement, effective 12:01 AM  01/01/2004          forms a part of Policy No. WC     124-14-96

Issued to ALTMAN SPECIALTY PLANTS, INC.

By AMERICAN HOME ASSURANCE COMPANY

The premium for this policy and the policies, if any, listed in Item 3 of the Schedule may be eligible for a discount. This endorsement shows your estimated discount in Items 1 or 2 of the Schedule. The final calculation of premium discount will be determined by our manuals and your premium basis as determined by audit. Premium subject to retrospective rating is not subject to premium discount.

Schedule

Estimated Eligible Premium

| 1. | State | First $5,000 | Next $95,000 | Next $400,000 | Balance |
|---|---|---|---|---|---|

2.  Average percentage discount:                     20.02  %

3.  Other policies: WC 124-14-97

4.  If there are no entries in Items 1, 2 and 3 of the Schedule, see Premium Discount Endorsement attached to your policy number:

WC 00 04 06          Countersigned by _____
(Ed. 4-84)
                                                        Authorized Representative

-71-

This insurance for a loss covered by this endorsement will be excess insurance over and above any other insurance except with respect to insurance provided under Section 5. The limits of liability for this insurance will be reduced by an amount equal to the limits of liability other insurance affords.

SCHEDULE

1.  Name(s) of                          State or Country              Designated Workers
    Employees                           of Operations                 Compensation Law

    ALL OFFICERS AND                    ANYWHERE IN THE               STATE OF HIRE.
    EMPLOYEES WHILE STATIONED           WORLD EXCEPT CUBA,
    OR TRAVELING OUTSIDE OF THE         IRAN, IRAQ AND ANY
    USA, ITS TERRITORIES OR             OTHER COUNTRY
    POSSESSIONS. EXCEPT MASTERS         SANCTIONED OR
    AND MEMBERS OF THE CREW             EMBARGOED BY THE
    OF ANY VESSEL.                      USA.


2.  Limits of Liability For Excess Repatriation Expenses

        $ 25,000          each employee
        $ 25,000          each accident


3.  Limits of Liability for Part Two-Employers Liability

    Bodily Injury                       Bodily Injury
    By Accident                         By Disease

    $ 1,000,000                         $ 1,000,000      policy limit
                                        $ 1,000,000      each employee

4.  Premium

| State of Designated Workers Compensation Law | Premium Basis Estimated Total Annual Remuneration | Rates Per $100 of Remuneration | Advance Premiums |
|---|---|---|---|
| STATE OF HIRE | INCLUDED WITH REMUNERATION IN THE STATE OF REGULAR EMPLOYMENT | INCLUDED IN THE STATE OF REGULAR EMPLOY- MENT | INCLUDED IN THE STATE OF REGULAR EMPLOYMENT |


Total Advance Premium  INCLUDED

See attached Extension of Information Page


This endorsement is not applicable in: _____ NC, NJ, WI _____


WC60904                Countersigned by _____
(Ed. 08/94)
                                                           Authorized Representative

4 of 4

-72-

## CALIFORNIA WORKERS COMPENSATION
## FRAUD ASSESSMENT

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy).

This endorsement, effective 12:01 AM  01/01/2004          forms a part of Policy No. WC    124-14-96

Issued to ALTMAN SPECIALTY PLANTS, INC.

By AMERICAN HOME ASSURANCE COMPANY

In order to fund increased investigation and prosecution of Workers Compensation fraud, Senate Bill 1218, statutes of 1990, created the Workers Compensation Fraud Account with the Insurance Fund administered by the Insurance Commissioner.  The proceeds of this fund include this annual assessment collected from all insured and self insured employers, and remitted by your insurance company to the Workers Compensation Fraud Account.

Surcharge Factor                              Surcharge Amount

   1.001180                                     $2,797

55154WC (12-92)              Countersigned by _____

                                                                    Authorized Representative

CALIFORNIA -- ADMINISTRATION REVOLVING FUND ASSESSMENT

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy).

This endorsement, effective 12:01 AM 01/01/2004          forms a part of Policy No. WC      124-14-96

Issued to ALTMAN SPECIALTY PLANTS, INC.

By AMERICAN HOME ASSURANCE COMPANY

California Law requires insurers who provide Workers' Compensation insurance to collect an Administration Revolving Fund Assessment for each insured employer. The percentage, as determined by the Director of the Department of Industrial Relations, is applied to each insured employer's premium for the purpose of determining its share of the assessment to be paid. This surcharge amount is subject to adjustment at audit.

The Fund was established pursuant to the provisions of California Labor Code Section 62.5.

Your policy has been surcharged by the amount/percent stated below:

SURCHARGE AMOUNT:     $2,301

SURCHARGE PERCENT:  0.0971%

WC 04 00 02 A          Countersigned by _____
(Ed. 8-91)
                                                              Authorized Representative

-74-

### VOLUNTARY COMPENSATION AND EMPLOYERS LIABILITY COVERAGE
### ENDORSEMENT—CALIFORNIA

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy).

This endorsement, effective 12:01 AM 01/01/2004          forms a part of Policy No. WC     124-14-96

Issued to ALTMAN SPECIALTY PLANTS, INC.

By AMERICAN HOME ASSURANCE COMPANY

If the employer named in item 1 of the Information Page has in his employment persons not entitled to compensation under Division 4 of of the Labor Code of the State of California, this policy shall operate as an election on the part of the employer to come under the compensation provisions of Division 4 with respect to those persons described in the Schedule below.

This policy applies to those persons described in the Schedule below as employees.

### Schedule
ALL OFFICERS AND EMPLOYEES NOT SUBJECT TO THE WORKERS COMPENSATION LAW EXCEPT MASTERS AND MEMBERS OF THE CREW OF ANY VESSEL.

WC 04 03 05
(Ed. 1-85)

Countersigned by _____

Authorized Representative

PAGE 1

## ENDORSEMENT

This endorsement, effective 12:01 AM 01/01/2004

Forms a part of policy no.: WC    124-14-96

Issued to: ALTMAN SPECIALTY PLANTS, INC.

By: AMERICAN HOME ASSURANCE COMPANY

| LOC NO. | NAME AND ADDRESS SCHEDULE | FEIN | UI # |
|---------|---------------------------|------|------|
| 0001 | ALTMAN SPECIALTY PLANTS, INC<br>2372 TAMARA LANE<br>SAN MARCOS, CA 92069-0000 | 330494942 | |
| 0002 | ALTMAN SPECIALTY PLANTS, INC<br>3361 VALLEY PASEO<br>SAN MARCOS, CA 92069-0000 | 330494942 | |
| 0003 | ALTMAN SPECIALTY PLANTS, INC<br>553 BUENA CREEK ROAD<br>SAN MARCOS, CA 92069-0000 | 330494942 | |
| 0004 | ALTMAN SPECIALTY PLANTS, INC<br>1516 MONTE VISTA DRIVE<br>VISTA, CA 92084-0000 | 330494942 | |
| 0005 | ALTMAN SPECIALTY PLANTS, INC<br>1974 FRIENDLY DRIVE<br>VISTA, CA 92084-0000 | 330494942 | |
| 0006 | ALTMAN SPECIALTY PLANTS, INC<br>2020 EDGEHILL ROAD<br>VISTA, CA 92084-0000 | 330494942 | |
| 0007 | ALTMAN SPECIALTY PLANTS, INC<br>3742 BLUE BIRD CANYON ROAD<br>VISTA, CA 92084-0000 | 330494942 | |
| 0008 | ALTMAN SPECIALTY PLANTS, INC<br>2124 EDGEHILL ROAD<br>VISTA, CA 92084-0000 | 330494942 | |
| 0009 | ALTMAN SPECIALTY PLANTS, INC<br>949 LA RUEDA<br>VISTA, CA 92084-0000 | 330494942 | |
| 0010 | ALTMAN SPECIALTY PLANTS, INC<br>20460 SPENCE ROAD<br>SALINAS, CA 93908-0000 | 330494942 | |

Issue Date: 01/15/04

WC990610 (Ed. 1-97)

Authorized Representative

# LARGE RISK RATING PLAN ENDORSEMENT

## PART II. *SCHEDULE* of POLICIES and RATING VALUES

### Section 1. APPLICATION of this Endorsement

**RATING PERIOD:** This Endorsement applies to the period beginning 01/01/2004 and ending 01/01/2005.

The *Basis* of Premium, *Subject Losses, Self-Insured Losses, Minimum Cost, Maximum Cost*, Minimum Premiums and Estimated Premiums shown in Section 5, Section 6, Section 7 and Section 9 of this PART II are estimated amounts for:

☐ the first year of the Rating Period, or ☒ the entire Rating Period.

**POLICIES:** ☒ This Endorsement applies to the policies described below, and to their replacements and renewals effective during the Rating Period, or

☐ This Endorsement applies to the policies described below, and to their replacements and renewals, and all subcontractor policies issued under a Construction Project. The Construction Project is described as follows:

N/A

a. Workers Compensation and Employers Liability Insurance policies:
   WC 1241496 , WC 1241497.

b. Commercial General Liability Insurance policies:

c. Automobile Liability Insurance policies:

d. Other Insurance policies (described):

### Section 2. Premiums for insurance on risks in states described below will be determined in accordance with the terms of the applicable policy other than this endorsement.

| Kinds of Insurance | States |
|---|---|
| WC | FL |

### Section 3. *Allocated Loss Adjustment Expenses* Options

| ALAE Option (enter ALAE Option A, B, C or D as applicable) | If ALAE Option C, enter Excess % | Applies to |
|---|---|---|
| C | 100% | WC 1241496 , WC 1241497. |

## LARGE RISK RATING PLAN ENDORSEMENT

**Section 4.** *Retained Amounts:* ☒ applicable to all insureds; or ☐ refer to Extension Schedule

| Kind of Insurance | Retained Amount | Applicable to | Limitations or Descriptions |
|---|---|---|---|
| **Workers Compensation** | | | |
| Workers Compensation and Employers Liability under State Law - Insured States | $600,000 | Each Accident or each Person for Disease | |
| Workers Compensation and Employers Liability under Federal Law - Insured States | $0 | Each Accident or each Person for Disease | |
| Workers Compensation and Employers Liability - Self-Insured States | $0 | Each Accident or each Person for Disease | |
| Employers Liability - Monopolistic States | $0 | Each Accident or each Person for Disease | |
| | $0 | Each Accident or each Person for Disease | |
| **Commercial General Liability** | | | |
| Premises, Operations, Personal and Advertising Injury, Medical Payments, or Damage to Property Liability | $0 | Each Occurrence | |
| Products or Completed Operations Liability | $0 | Each Occurrence | |
| [Other] | $0 | Each Occurrence | |
| **Commercial Automobile Liability, including UM/UIM and PIP/No Fault, if any** | | | |
| Automobile Liability | $0 | Each Accident | |
| Garage Liability | $0 | Each Accident | |
| [Other] | $0 | Each Accident | |
| **Combined Kinds Retention** | | | |
| | $0 | Each Occurrence | |

### Section 5. Forecast of *Subject Losses*

We have shown our forecast of your *Subject Losses* below.

a. Reimbursable and deductible portion of covered *Incurred Losses* (except amounts insured under "Deductible Liability Protection" policies, if any, subject to this Endorsement)   $0

b. All other covered *Subject Losses* (including amounts insured under "Deductible Liability Protection" policies, if any, subject to this Endorsement)   $2,220,000

First Loss Valuation Date: 07/01/2005 and annually thereafter until all claims are closed or mutually agreed upon as to value.

### Section 6. *Minimum Cost* and *Maximum Cost*

The *Minimum Cost* and *Maximum Cost*, if any, will be applied as explained below.

**Item A.** *Minimum Cost:* ☐ applicable, or ☒ not applicable

Line of Insurance:   None

a. *Minimum Cost*, adjustable on the *Basis* and rate shown below:   $0
   Basis of Adjustment:   None   Per   0
   Estimated *Basis* amount:   $0   Adjustment Rate:   0.0000

## LARGE RISK RATING PLAN ENDORSEMENT

b. *Self-Insured Losses* you incur to which no insurance under the policies described in Section 1 of this PART II applies will NOT be included in determining whether or when the *Minimum Cost* has been reached, except as described herein:

**Exceptions:**   N/A

Our forecast of your *Self-Insured Losses* included in paragraph a. above     $0

c. The following *Minimum Cost* itemization schedule applies:

### Item B. *Maximum Cost:* ☐ applicable, or ☒ not applicable

**Line of Insurance:**     None

a. *Maximum Cost,* adjustable on the *Basis* and rate shown below:     $0

| | | | | |
|---|---|---|---|---|
| *Basis* of Adjustment: | None | Per | 0 | |
| Estimated *Basis* amount: | $0 | | Adjustment Rate: | 0.0000 |

b. *Self-Insured Losses* you incur to which no insurance under the policies described in Section 1 of this PART II applies will NOT be included in determining whether or when the *Maximum Cost* has been reached, except as described herein:

**Exceptions:**   N/A

Our forecast of your *Self-Insured Losses* included in paragraph a. above     $0

c. The following *Maximum Cost* itemization schedule applies:

## LARGE RISK RATING PLAN ENDORSEMENT

### Section 7. Claims Service Charges

☐ Charge shown in Section 9, Item A *Subject Premium* of PART II, or ☒ fee schedule described below.

The Claims Service Provider is: AIGCS

### FEE SCHEDULE

☒ If X'ed here, the following fee schedule applies:

Claims Services Fee Schedule - Rates per Claimant

| Type of Claim | Rate per Claimant | Estimated No. of Claimants | Estimated Fee |
|---|---|---|---|
| Workers Comp | | | |
| Medical | 125.00 | 77 | $9,625 |
| Indemnity | 0.00 | 0 | $0 |
| California | 1,580.00 | 28 | $44,240 |
| Texas | 1,300.00 | 4 | $5,200 |
| AOS | 0.00 | 0 | $0 |
| Surcharge Claims | 0.00 | 0 | $0 |
| Other | 4,293.00 | 1 | $4,293 |
| General Liability | | | |
| Bodily Injury | 0.00 | 0 | $0 |
| Property Damage | 0.00 | 0 | $0 |
| Other | 0.00 | 0 | $0 |
| Product Liability | | | |
| Bodily Injury | 0.00 | 0 | $0 |
| Property Damage | 0.00 | 0 | $0 |
| Other | 0.00 | 0 | $0 |
| Automobile Liability | | | |
| Bodily Injury | 0.00 | 0 | $0 |
| Property Damage | 0.00 | 0 | $0 |
| Physical Damage | 0.00 | 0 | $0 |
| Other | 0.00 | 0 | $0 |
| Incident Reports | 0.00 | 0 | $0 |
| Int. to Designated States | 0.00 | 0 | $0 |
| Other | 0.00 | 0 | $0 |
| | 0.00 | 0 | $0 |
| | 0.00 | 0 | $0 |
| | 0.00 | 0 | $0 |

Estimated Total Rate-per-Claimant Fee    $63,358

12/31/2003 004:01 943661)

## LARGE RISK RATING PLAN ENDORSEMENT

☒ If X'ed here, the following fee schedule applies:

### Additional Service Fees Details

| Additional Service Fees | Item Count | Rate/Item | Estimated Fee |
|---|---|---|---|
| Quarterly Loss Report | 0 | 0.00 | $0 |
| Subcontractor Interoffice Supervision | 0 | 0.00 | $0 |
| Magnetic Tape Fee | 0 | 0.00 | $0 |
| Subrogation | 0 | 0.00 | $0 |
| Appraisals | 0 | 0.00 | $0 |
| TPA Expenses | 0 | 0.00 | $0 |
| GAB Expenses | 0 | 0.00 | $0 |
| Cash Management Account Services | 0 | 0.00 | $0 |
| Claim File Reviews | 0 | 0.00 | $0 |
| Contingency Recovery Fees | 0 | 0.00 | $0 |
| Incoming Quality Control | 0 | 0.00 | $0 |
| Legal Cost Control | 0 | 0.00 | $0 |
| Location Visits | 0 | 0.00 | $0 |
| Semiannual Client Meetings | 0 | 0.00 | $0 |
| RMIS Reports | 0 | 0.00 | $0 |
| Customized Account Servicing | 0 | 0.00 | $0 |
| Structured Settlement Program | 0 | 0.00 | $0 |
| Reporting | 0 | 0.00 | $0 |
| Conversion | 0 | 0.00 | $0 |
| Minimum Adjusting Fee | 0 | 0.00 | $0 |
| Intellirisk Charges | 0 | 0.00 | $0 |
| | 0.00 | 0 | $0 |
| | 0.00 | 0 | $0 |
| | 0.00 | 0 | $0 |
| | | Estimated Additional Services Fee | $0 |

### Tail Fees Details

| Tail Fees | Item Count | Rate/Item | Estimated Fee |
|---|---|---|---|
| Workers Comp Med. Only | 0 | 0.00 | $0 |
| Workers Comp. Indemnity | 0 | 0.00 | $0 |
| General Liability | 0 | 0.00 | $0 |
| Products Liability | 0 | 0.00 | $0 |
| Auto Liability | 0 | 0.00 | $0 |
| Maintenance | 0 | 0.00 | $0 |
| | 0.00 | 0 | $0 |
| | | Estimated Tail Fee | $0 |

Copyright 2003 American International Group, Inc.
12/31/2003 05:01 4436671

## LARGE RISK RATING PLAN ENDORSEMENT

**Section 9.** The Rating Values and Amounts shown below apply as the *Basis* of the *Final Premium* for the policies described in Section 1 of this Part II.

If the Rating Period exceeds one year; and if the estimated *Basis* of Premium, Minimum Premiums and Estimated Premiums shown below apply only to the first year, on or about each anniversary of the beginning of the Rating Period, we will issue an extension of this Section to show the rating values and amounts for each subsequent year of the Rating Period.

### Item A. *Subject Premium*, part of *Final Premium*

| Line Items | Rates | Per | *Basis* Types | Estimated *Basis* | Minimum Premium | Estimated Premium |
|---|---|---|---|---|---|---|
| Expected Subject Losses | 0.0000 | 1 | ULT.LOSSES | 0 | $0 | $2,220,000 |
| Claims Service Fees | 0.0000 | 1 | CONTRACT | 0 | $0 | $63,358 |
| Program Expenses | 1.8060 | 100 | PAYROLL | 27,658,000 | $299,710 | $499,516 |
| | | | | | Subtotal | $2,782,874 |
| Taxes/Assessments % | 0.0000% | or | Taxes/Assessments Divisor: | 0.000000 | | $0 |
| | | | Estimated Total *Subject Premiums* | | | $2,782,874 |

### Item B. Non-*Subject Premiums*, part of *Final Premium*

| Coverage Description | Rates | Per | *Basis* Types | Estimated *Basis* | Minimum Premium | Estimated Premium |
|---|---|---|---|---|---|---|
| Excess Premium-WC-The Entire Contract | 0.7196 | 100 | PAYROLL | 27,658,000 | $199,041 | $199,041 |
| | | | Estimated Total Non-*Subject Premiums* | | | $199,041 |

### Item C. Summary of Expected Total Cost

| | | | | | | |
|---|---|---|---|---|---|---|
| Estimated *Final Premium* (Part A. plus Part B) | | | | | | $2,981,915 |
| Expected *Reimbursable Losses* and *Deductible Losses* and *Self-Insured Losses* and *ALAE*, if applicable | | | | | | $0 |
| *Minimum Cost* from Section 6. If not applicable, show $0 | | | | | | $0 |
| *Maximum Cost* from Section 6. If not applicable, show $0 | | | | | | $0 |
| Surcharges: | 0.0000 | 1 | STANDARD PREMIUM | 0 | $0 | $62,498 |
| | | | | EXPECTED TOTAL COST | | $3,034,413 |

---

Copyright 2003 American International Group, Inc.
(12/31/2001 00401 943667t)

# LARGE RISK RATING PLAN ENDORSEMENT

## PART III. AGGREGATE STOP

The *Aggregate Stop Amount* and the *Aggregate Stop Limit*, if any, shown in the Schedule below will be applied as explained below.

### Section I. Aggregate Stop Amount

1. If an *Aggregate Stop Amount* is shown in the Schedule below, we will not include more than the *Aggregate Stop Amount* in the computation of the *Final Premium* and determination of maximum benefits, damages and "ALAE" payable or reimbursable by you under the terms of the policies described in Section I of PART II, subject to any *Aggregate Stop Limit* shown in the Schedule below.

   The *Aggregate Stop Amount* will be the *Aggregate Stop Amount* shown in the Schedule below, less the following:

   a) all *Subject Losses* that you must reimburse us for under any Loss Reimbursement or Deductible terms applicable to the policy covering the *Incurred Loss*, and

   b) such amounts as described in Section III below that you have paid as *Self-Insured Losses*.

2. **Adjustment:** If an Adjustment Rate and an Adjustment Basis are shown in the Schedule below, the *Aggregate Stop Amount* shown in the Schedule below is only an estimate. The *Aggregate Stop Amount* will be finally determined by multiplying the Adjustment Rate by the final Adjustment *Basis* as determined by our audit of your books and records.

3. The *Aggregate Stop Amount* will not be reduced on account of the cancellation of any policy to which this Endorsement applies.

### Section II. Aggregate Stop Limit

1. If an *Aggregate Stop Limit* is shown in the Schedule below, that Limit is the most *Subject Losses* above the *Aggregate Stop Amount* that will be excluded from the computation of the *Final Premium* and which you will not be required to reimburse us for under any Loss Reimbursement or Deductible terms of the policies described in Section I of PART II.

2. The *Aggregate Stop Limit* will not be reduced on account of the cancellation of any policy to which this Endorsement applies.

### Section III. Self-Insured Losses

*Self-Insured Losses:* Losses you incur to which no insurance applies under the policies described in Section I of PART II will NOT be included in determining whether or when the *Aggregate Stop Amount* or *Aggregate Stop Limit* have been reached, except as described herein:

Exceptions: None

## SCHEDULE

### *Aggregate Stop Amount* and *Aggregate Stop Limit*

Line of Insurance:     Workers Compensation - Insured.

The *Aggregate Stop Amount* and the *Aggregate Stop Limit* apply to the ☐ first year of, or ☒ entire Rating Period.

| | | | | | |
|---|---|---|---|---|---|
| a. | *Aggregate Stop Amount*, adjustable on the *Basis* and rate shown below. | | | | $4,000,000 |
| b. | *Basis* of Adjustment Amount: | **WC PAYROLL** | Per | 100 | Estimated *Basis* $27,658,000 |
| | | | | Adjustment Rate: | **14.4624** |
| c. | *Aggregate Stop Limit* | | | | $0 |

Countersigned by _____    Date _____

(Authorized Signature)

EXHIBIT

C

ISSUED BY THE STOCK INSURANCE COMPANY HEREIN CALLED THE COMPANY

AMERICAN HOME ASSURANCE COMPANY
13781

AGENT NUMBER
61342-0000

POLICY NUMBER
. WC   124-14-96
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-20

INCORPORATED UNDER THE LAWS OF   NEW YORK
ITEM 1.   NAMED INSURED   MAILING ADDRESS   IDENTIFICATION NO.:

ALTMAN SPECIALTY PLANTS, INC.
3742 BLUE BIRD CANYON ROAD
VISTA, CA 92084-0000

SEE NAME AND ADDRESS SCHEDULE - WC990610
I.D# 3376106   CA U#

Member Companies of
American International Group

EXECUTIVE OFFICES:
70 PINE STREET, NEW YORK, N.Y. 10270

WORKERS COMPENSATION AND EMPLOYERS
LIABILITY POLICY INFORMATION PAGE

PRODUCERS NAME AND ADDRESS

G S LEVINE INSURANCE SERVICES
3377 CARMEL MOUNTAIN RD
SAN DIEGO, CA 92121-1041

INSURED IS
CORPORATION

PREVIOUS POLICY NUMBER
RENEWAL   001241496

OTHER WORKPLACES NOT SHOWN ABOVE: SEE NAME AND ADDRESS SCHEDULE - WC990610

ITEM 2   POLICY PERIOD 12:01 A.M. standard time at the insured's
mailing address   FROM   01/01/05   TO   01/01/06

ITEM 3   A. Workers Compensation Insurance: Part One of the policy applies to the Workers Compensation Law of the states listed here:

CA

B. Employers Liability Insurance: Part Two of the policy applies to the work in each state listed in Item 3.A.
The limits of our liability under Part Two are:

Bodily Injury by Accident $ _____ 1,000,000   each accident
Bodily Injury by Disease $ _____ 1,000,000   policy limit
Bodily Injury by Disease $ _____ 1,000,000   each employee

C. Other States Insurance: Part Three of the policy applies to the states, if any, listed here:
NONE

ITEM 4   The premium for this policy will be determined by our Manuals of Rules, Classifications, Rates and Rating Plans.
All information required below is subject to verification and change by audit.

| Classifications | Code Number | Estimated Total Remuneration [X] Annual [ ] 3 Year | Rate Per $100 Of Remuneration | Estimated Premium [X] Annual [ ] 3 Year |
|---|---|---|---|---|
| SEE EXTENSION OF INFORMATION PAGE - WC7754 TAXES/ASSESSMENTS/SURCHARGES | | | | $53.720 |

EXPENSE CONSTANT (EXCEPT WHERE APPLICABLE BY STATE)   $160  CA

MINIMUM PREMIUM   $750  CA   TOTAL ESTIMATED PREMIUM   $2,045,774

If indicated below, interim adjustments of premium shall be made:
[ ] Semi-Annually   [ ] Quarterly   [ ] Monthly   DEPOSIT PREMIUM   $2,045,774

ENDORSEMENTS (FORM NUMBER)   SEE ATTACHED FORM SCHEDULE - WC990612

01/27/05 LOS ANGELES   05

Issue date   Issuing Office   Authorized Representative   WC 00 00 01
39967

INSURED'S COPY

## FORMS SCHEDULE

Policy Number: WC   124-14-96                              Effective Date:  01/01/2005

| | |
|---|---|
| WC000406 | PREMIUM DISCOUNT ENDORSEMENT |
| WC60904 | FOREIGN COVERAGE ENDORSEMENT |
| 78052A | PRIVACY POLICY |
| WC000420 | TERRORISM RISK INSURANCE ACT ENDORSEMENT |
| 55154WC | CALIFORNIA FRAUD ASSESSMENT |
| WC040002A | CA-ADMINISTRATION REVOLVING FUND ASMNT |
| WC040305 | CA VOL COMP & EMPLOYERS LIAB |
| WC040360 | CA EMPLOYERS LIAB COV AMENDATORY ENDT |
| WC040402 | CA MANDATORY RATE CHANGE ENDT |
| WC040407 | CA PREMIUM ADJUSTMENT ENDT |
| WC040410 | CA ESTIMATED ANNUAL PREMIUM ENDT |
| WC990017 | CALIFORNIA CANCELLATION ENDORSEMENT |
| WC990407 | CA POLICY AMENDATORY ENDT |
| WC990408B | CA NOTIF OF LOSS CONTROL SERVICES |
| WC990409 | CA POLICYHOLDER NOTICE - CIGA SURCHARGE |
| WC990410 | POLICYHOLDER NOTICE |
| WC990411 | CA ADV NOTICE OF CANC OR NON-REN EXTD |
| WC990413 | POLICYHOLDER NOTICE |
| WC990610 | NAMED INSUREDS/ADDRESSES |

**WC 99 06 12**
**(Ed. 1/97)**

INSURED'S COPY

-86-

# WORKERS COMPENSATION AND EMPLOYERS LIABILITY

## INSURANCE POLICY

National Union Fire Insurance
Company of Pittsburgh, Pa.

American Home Assurance Company

The Insurance Company of
The State of Pennsylvania

Birmingham Fire Insurance Company
of Pennsylvania

Commerce and Industry
Insurance Company



Member Companies of
American International Group, Inc.
EXECUTIVE OFFICES
70 PINE STREET
NEW YORK, N.Y. 10270

Coverage is provided by the Company designated on the Information Page
A Stock Insurance Company

---

**WORKERS COMPENSATION AND EMPLOYERS LIABILITY INSURANCE POLICY
QUICK REFERENCE**

BEGINNING ON
PAGE

Information Page ........................................................................................ 1

GENERAL SECTION ................................................................................... 1
  A.  The Policy ........................................................................................ 1
  B.  Who is Insured ................................................................................ 1
  C.  Workers Compensation Law ............................................................. 1
  D.  State ................................................................................................ 1
  E.  Locations ........................................................................................ 1

PART ONE-WORKERS COMPENSATION INSURANCE ................................. 1
  A.  How This Insurance Applies ............................................................. 1
  B.  We Will Pay ..................................................................................... 1
  C.  We Will Defend ................................................................................ 1
  D.  We Will Also Pay .............................................................................. 1
  E.  Other Insurance ............................................................................... 2
  F.  Payments You Must Make ................................................................ 2
  G.  Recovery From Others ..................................................................... 2
  H.  Statutory Provisions ........................................................................ 2

THESE POLICY PROVISIONS WITH THE INFORMATION PAGE AND ENDORSEMENTS,
IF ANY, ISSUED TO FORM A PART THEREOF, COMPLETE THIS POLICY.

*INCLUDES COPYRIGHT MATERIAL OF THE NATIONAL COUNCIL ON COMPENSATION
INSURANCE, USED WITH ITS PERMISSION.

COPYRIGHT 1983 NATIONAL COUNCIL ON COMPENSATION INSURANCE™

39638C(04/92)

WC 00 00 00 A (STANDARD)

## QUICK REFERENCE – CONTINUED

BEGINNING ON
PAGE

PART TWO - EMPLOYERS LIABILITY INSURANCE ............................................................. 2
    A.  How This Insurance Applies ...................................................................... 2
    B.  We Will Pay ....................................................................................... 3
    C.  Exclusions ........................................................................................ 3
    D.  We Will Defend .................................................................................. 3
    E.  We Will Also Pay ................................................................................ 4
    F.  Other Insurance ................................................................................. 4
    G.  Limits of Liability ............................................................................... 4
    H.  Recovery From Others .......................................................................... 4
    I.  Action Against Us ............................................................................... 4

PART THREE - OTHER STATES INSURANCE .................................................................... 4
    A.  How This Insurance Applies ...................................................................... 4
    B.  Notice ........................................................................................... 5

PART FOUR - YOUR DUTIES IF INJURY OCCURS .............................................................. 5

PART FIVE - PREMIUM ................................................................................................ 5
    A.  Our Manuals ..................................................................................... 5
    B.  Classifications ................................................................................... 5
    C.  Remuneration .................................................................................... 5
    D.  Premium Payments .............................................................................. 5
    E.  Final Premium ................................................................................... 5
    F.  Records .......................................................................................... 6
    G.  Audit ............................................................................................ 6

PART SIX - CONDITIONS .............................................................................................. 6
    A.  Inspection ....................................................................................... 6
    B.  Long Term Policy ................................................................................ 6
    C.  Transfer of Your Rights and Duties ............................................................. 6
    D.  Cancellation ..................................................................................... 6
    E.  Sole Representative .............................................................................. 6

**IMPORTANT: This Quick Reference is not part of the Workers Compensation and Employers Liability Policy and does not provide coverage. Refer to the Workers Compensation and Employers Liability Policy itself for actual contractual provisions.**

## PLEASE READ THE WORKERS COMPENSATION AND EMPLOYERS LIABILITY POLICY CAREFULLY

ATTACH FORM AND ENDORSEMENTS (IF ANY) HERE

## WORKERS COMPENSATION AND EMPLOYERS LIABILITY INSURANCE POLICY

In return for the payment of the premium and subject to all terms of this policy, we agree with you as follows.

### GENERAL SECTION

**A.  The Policy**

This policy includes at its effective date the Information Page and all endorsements and schedules listed there. It is a contract of insurance between you (the employer named in Item 1 of the Information Page) and us (the insurer named on the Information Page). The only agreements relating to this insurance are stated in this policy. The terms of this policy may not be changed or waived except by endorsement issued by us to be part of this policy.

**B.  Who Is Insured**

You are insured if you are an employer named in Item 1 of the Information Page. If that employer is a partnership, and if you are one of its partners, you are insured, but only in your capacity as an employer of the partnership's employees.

**C.  Workers Compensation Law**

Workers Compensation Law means the workers or workmen's compensation law and occupational disease law of each state or territory named in Item 3.A. of the Information Page. It includes any amendments to that law which are in effect during the policy period. It does not include any federal workers or workmen's compensation law, any federal occupational disease law or the provisions of any law that provide nonoccupational disability benefits.

**D.  State**

State means any state of the United States of America, and the District of Columbia.

**E.  Locations**

This policy covers all of your workplaces listed in Items 1 or 4 of the Information Page; and it covers all other workplaces in Item 3.A states unless you have other insurance or are self-insured for such workplaces.

### PART ONE - WORKERS COMPENSATION INSURANCE

**A.  How This Insurance Applies**

This workers compensation insurance applies to bodily injury by accident or bodily injury by disease. Bodily injury includes resulting death.

1.  Bodily injury by accident must occur during the policy period.

2.  Bodily injury by disease must be caused or aggravated by the conditions of your employment. The employee's last day of last exposure to the conditions causing or aggravating such bodily injury by disease must occur during the policy period.

**B.  We Will Pay**

We will pay promptly when due the benefits required of you by the workers compensation law.

**C.  We Will Defend**

We have the right and duty to defend at our expense any claim, proceeding or suit against you for benefits payable by this insurance. We have the right to investigate and settle these claims, proceedings or suits.

We have no duty to defend a claim, proceeding or suit that is not covered by this insurance.

**D.  We Will Also Pay**

We will also pay these costs, in addition to other amounts payable under this insurance, as part of any claim, proceeding or suit we defend:

1.  reasonable expenses incurred at our request, but not loss of earnings;

2.  premiums for bonds to release attachments and for appeal bonds in bond amounts up to the amount payable under this insurance;

**WC 00 00 00 A**

1 of 7

-89-

3. litigation costs taxed against you;

4. interest on a judgment as required by law until we offer the amount due under this insurance; and

5. expenses we incur.

### E. Other Insurance

We will not pay more than our share of benefits and costs covered by this insurance and other insurance or self-insurance. Subject to any limits of liability that may apply, all shares will be equal until the loss is paid. If any insurance or self-insurance is exhausted, the shares of all remaining insurance will be equal until the loss is paid.

### F. Payments You Must Make

You are responsible for any payments in excess of the benefits regularly provided by the workers compensation law including those required because:

1. of your serious and willful misconduct;

2. you knowingly employ an employee in violation of law;

3. you fail to comply with a health or safety law or regulation; or

4. you discharge, coerce or otherwise discriminate against any employee in violation of the workers compensation law.

If we make any payments in excess of the benefits regularly provided by the workers compensation law on your behalf, you will reimburse us promptly.

### G. Recovery From Others

We have your rights, and the rights of persons entitled to the benefits of this insurance, to recover our payments from anyone liable for the injury. You will do everything necessary to protect those rights for us and to help us enforce them.

### H. Statutory Provisions

These statements apply where they are required by law.

1. As between an injured worker and us, we have notice of the injury when you have notice.

2. Your default or the bankruptcy or insolvency of you or your estate will not relieve us of our duties under this insurance after an injury occurs.

3. We are directly and primarily liable to any person entitled to the benefits payable by this insurance. Those persons may enforce our duties; so may an agency authorized by law. Enforcement may be against us or against you and us.

4. Jurisdiction over you is jurisdiction over us for purposes of the workers compensation law. We are bound by decisions against you under that law, subject to the provisions of this policy that are not in conflict with that law.

5. This insurance conforms to the parts of the workers compensation law that apply to:

   a. benefits payable by this insurance or;

   b. special taxes, payments into security or other special funds, and assessments payable by us under that law.

6. Terms of this insurance that conflict with the workers compensation law are changed by this statement to conform to that law.

Nothing in these paragraphs relieves you of your duties under this policy.

### PART TWO - EMPLOYERS LIABILITY INSURANCE

### A. How This Insurance Applies

This employers liability insurance applies to bodily injury by accident or bodily injury by disease. Bodily injury includes resulting death.

1. The bodily injury must arise out of and in the course of the injured employee's employment by you.

2. The employment must be necessary or incidental to your work in a state or territory listed in Item 3.A. of the Information Page.

3. Bodily injury by accident must occur during the policy period.

4. Bodily injury by disease must be caused or aggravated by the conditions of your employment. The employee's last day of last exposure to the conditions causing or aggravating such bodily injury by disease must occur during the policy period.

5. If you are sued, the original suit and any related legal actions for damages for bodily injury

WC 00 00 00 A

by accident or by disease must be brought in the United States of America, its territories or possessions, or Canada.

**B. We Will Pay**

We will pay all sums you legally must pay as damages because of bodily injury to your employees, provided the bodily injury is covered by this Employers Liability Insurance.

The damages we will pay, where recovery is permitted by law, include damages:

1. for which you are liable to a third party by reason of a claim or suit against you by that third party to recover the damages claimed against such third party as a result of injury to your employee;

2. for care and loss of services; and

3. for consequential bodily injury to a spouse, child, parent, brother or sister of the injured employee;

provided that these damages are the direct consequence of bodily injury that arises out of and in the course of the injured employee's employment by you; and

4. because of bodily injury to your employee that arises out of and in the course of employment, claimed against you in a capacity other than as employer.

**C. Exclusions**

This insurance does not cover:

1. liability assumed under a contract. This exclusion does not apply to a warranty that your work will be done in a workmanlike manner;

2. punitive or exemplary damages because of bodily injury to an employee employed in violation of law;

3. bodily injury to an employee while employed in violation of law with your actual knowledge or the actual knowledge of any of your executive officers;

4. any obligation imposed by a workers compensation, occupational disease, unemployment compensation, or disability benefits law, or any similar law;

5. bodily injury intentionally caused or aggravated by you;

6. bodily injury occurring outside the United States of America, its territories or possessions, and Canada. This exclusion does not apply to bodily injury to a citizen or resident of the United States of America or Canada who is temporarily outside these countries;

7. damages arising out of coercion, criticism, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination against or termination of any employee, or any personnel practices, policies, acts or omissions.

8. bodily injury to any person in work subject to the Longshore and Harbor Workers' Compensation Act (33 USC Sections 901-950), the Nonappropriated Fund Instrumentalities Act (5 USC Sections 8171-8173), the Outer Continental Shelf Lands Act (43 USC Sections 1331-1356), the Defense Base Act (42 USC Sections 1651-1654), the Federal Coal Mine Health and Safety Act of 1969 (30 USC Sections 901-942), any other federal workers or workmen's compensation law or other federal occupational disease law, or any amendments to these laws.

9. bodily injury to any person in work subject to the Federal Employers' Liability Act (45 USC Sections 51-60), any other federal laws obligating an employer to pay damages to an employee due to bodily injury arising out of or in the course of employment, or any amendments to those laws.

10. bodily injury to a master or member of the crew of any vessel.

11. fines or penalties imposed for violation of federal or state law.

12. damages payable under the Migrant and Seasonal Agricultural Worker Protection Act (29 USC Sections 1801-1872) and under any other federal law awarding damages for violation of those laws or regulations issued thereunder, and any amendments to those laws.

**D. We Will Defend**

We have the right and duty to defend, at our expense, any claim, proceeding or suit against you for damages payable by this insurance. We have the right to investigate and settle these claims, proceedings and suits.

WC 00 00 00 A

We have no duty to defend a claim, proceeding or suit that is not covered by this insurance. We have no duty to defend or continue defending after we have paid our applicable limit of liability under this insurance.

E. **We Will Also Pay**

We will also pay these costs, in addition to other amounts payable under this insurance, as part of any claim proceeding, or suit we defend;

1. reasonable expenses incurred at our request; but not loss of earnings;

2. premiums for bonds to release attachments and for appeal bonds in bond amounts up to the limit of our liability under this insurance;

3. litigation costs taxed against you;

4. interest on a judgment as required by law until we offer the amount due under this insurance; and

5. expenses we incur.

F. **Other Insurance**

We will not pay more than our share of damages and costs covered by this insurance and other insurance or self-insurance. Subject to any limits of liability that apply, all shares will be equal until the loss is paid. If any insurance or self-insurance is exhausted, the shares of all remaining insurance and self-insurance will be equal until the loss is paid.

G. **Limits of Liability**

Our liability to pay for damages is limited. Our limits of liability are shown in Item 3.B. of the Information Page. They apply as explained below.

1. Bodily Injury by Accident. The limit shown for "bodily injury by accident-each accident" is the most we will pay for all damages covered by this insurance because of bodily injury to one or more employees in any one accident.

A disease is not bodily injury by accident unless it results directly from bodily injury by accident.

2. Bodily Injury by Disease. The limit shown for "bodily injury by disease-policy limit" is the most we will pay for all damages covered by this insurance and arising out of bodily injury by disease, regardless of the number of employees who sustain bodily injury by disease. The limit shown for "bodily injury by disease-each employee" is the most we will pay for all damages because of bodily injury by disease to any one employee.

Bodily injury by disease does not include disease that results directly from a bodily injury by accident.

3. We will not pay any claims for damages after we have paid the applicable limit of our liability under this insurance.

H. **Recovery From Others**

We have your rights to recover our payment from anyone liable for an injury covered by this insurance. You will do everything necessary to protect those rights for us and to help us enforce them.

I. **Actions Against Us**

There will be no right of action against us under this insurance unless:

1. You have complied with all the terms of this policy; and

2. The amount you owe has been determined with our consent or by actual trial and final judgment.

This insurance does not give anyone the right to add us as a defendant in an action against you to determine your liability. The bankruptcy or insolvency of you or your estate will not relieve us of our obligations under this Part.

PART THREE - OTHER STATES INSURANCE

A. **How This Insurance Applies**

1. This other states insurance applies only if one or more states are shown in Item 3.C. of the Information Page.

2. If you begin work in any one of those states after the effective date of this policy and are not insured or are not self-insured for such work, all provisions of the policy will apply as

though that state were listed in Item 3.A. of the Information Page.

3. We will reimburse you for the benefits required by the workers compensation law of that state if we are not permitted to pay the benefits directly to persons entitled to them.

4. If you have work on the effective date of this policy in any state not listed in Item 3.A. of the

WC 00 00 00 A

Information Page, coverage will not be afforded for that state unless we are notified within thirty days.

**B.   Notice**

Tell us at once if you begin work in any state listed in Item 3.C. of the Information Page.

## PART FOUR - YOUR DUTIES IF INJURY OCCURS

Tell us at once if injury occurs that may be covered by this policy. Your other duties are listed here.

1.   Provide for immediate medical and other services required by the workers compensation law.

2.   Give us or our agent the names and addresses of the injured persons and of witnesses, and other information we may need.

3.   Promptly give us all notices, demands and legal papers related to the injury, claim, proceeding or suit.

4.   Cooperate with us and assist us, as we may request, in the investigation, settlement or defense of any claim, proceeding or suit.

5.   Do nothing after an injury occurs that would interfere with our right to recover from others.

6.   Do not voluntarily make payments, assume obligations or incur expenses, except at your own cost.

## PART FIVE - PREMIUM

**A.   Our Manuals**

All premium for this policy will be determined by our manuals of rules, rates, rating plans and classifications. We may change our manuals and apply the changes to this policy if authorized by law or a governmental agency regulating this insurance.

**B.   Classifications**

Item 4 of the Information Page shows the rate and premium basis for certain business or work classifications.    These classifications were assigned based on an estimate of the exposures you would have during the policy period. If your actual exposures are not properly described by those classifications, we will assign proper classifications, rates and premium basis by endorsement to this policy.

**C.   Remuneration**

Premium for each work classification is determined by multiplying a rate times a premium basis. Remuneration is the most common premium basis. This premium basis includes payroll and all other remuneration paid or payable during the policy period for the services of:

1.   All your officers and employees engaged in work covered by this policy; and

2.   All other persons engaged in work that could make us liable under Part One (Workers Compensation Insurance) of this policy. If you do not have payroll records for these persons, the contract price for their services and materials may be used as the premium basis. This paragraph 2 will not apply if you give us proof

that the employers of these persons lawfully secured their workers compensation obligations.

**D.   Premium Payments**

You will pay all premium when due.  You will pay the premium even if part or all of a workers compensation law is not valid.

**E.   Final Premium**

The premium shown on the Information Page, schedules, and endorsements is an estimate.  The final premium will be determined after this policy ends by using the actual, not the estimated, premium basis and the proper classifications and rates that lawfully apply to the business and work covered by this policy. If the final premium is more than the premium you paid to us, you must pay us the balance.  If it is less, we will refund the balance to you.  The final premium will not be less than the highest minimum premium for the classifications covered by this policy.

If this policy is canceled, final premium will be determined in the following way unless our manuals provide otherwise.

1.   If we cancel, final premium will be calculated pro rata based on the time this policy was in force. Final premium will not be less than the pro rata share of the minimum premium.

2.   If you cancel, final premium will be more than pro rata; it will be based on the time this policy was in force, and increased by our short rate

WC 00 00 00 A

cancellation table and procedure. Final premium will not be less than the minimum premium.

## F. Records

You will keep records of information needed to compute premium. You will provide us with copies of those records when we ask for them.

## G. Audit

You will let us examine and audit all your records that relate to this policy. These records include ledgers, journals, registers, vouchers, contracts, tax reports, payroll and disbursement records, and programs for storing and retrieving data. We may conduct the audits during regular business hours during the policy period and within three years after the policy period ends. Information developed by audit will be used to determine final premium. Insurance rate service organizations have the same rights we have under this provision.

## PART SIX - CONDITIONS

## A. Inspection

We have the right, but are not obliged to inspect your workplaces at any time. Our inspections are not safety inspections. They relate only to the insurability of the workplaces and the premiums to be charged. We may give you reports on the conditions we find. We may also recommend changes. While they may help reduce losses, we do not undertake to perform the duty of any person to provide for the health or safety of your employees or the public. We do not warrant that your workplaces are safe or healthful or that they comply with laws, regulations, codes or standards. Insurance rate service organizations have the same rights we have under this provision.

## B. Long Term Policy

If the policy period is longer than one year and sixteen days, all provisions of this policy will apply as though a new policy were issued on each annual anniversary that this policy is in force.

## C. Transfer of Your Rights and Duties

Your rights or duties under this policy may not be transferred without our written consent.

If you die and we receive notice within thirty days after your death, we will cover your legal representative as insured.

## D. Cancellation

1. You may cancel this policy. You must mail or deliver advance written notice to us stating when the cancellation is to take effect.

2. We may cancel this policy. We must mail or deliver to you not less than ten days advance written notice stating when the cancellation is to take effect. Mailing that notice to you at your mailing address shown in Item 1 of the Information Page will be sufficient to prove notice.

3. The policy period will end on the day and hour stated in the cancellation notice.

4. Any of these provisions that conflicts with a law that controls the cancellation of the insurance in this policy is changed by this statement to comply with that law.

## E. Sole Representative

The insured first named in Item 1 of the Information Page will act on behalf of all insureds to change this policy, receive return premium, and give or receive notice of cancellation.

**WC 00 00 00 A**

6 of 7

**In Witness Whereof,** the company has caused this policy to be executed and attested, but this policy shall not be valid unless countersigned by a duly authorized representative of the company.

The Insurance Company
of The State of Pennsylvania

President
National Union Fire
Insurance Company of
Pittsburgh, PA

President
Commerce and Industry
Insurance Company

President
American Home
Assurance Company

President
Birmingham Fire Insurance
Company of Pennsylvania

Secretary
National Union Fire Insurance Company of Pittsburgh, PA
American Home Assurance Company
The Insurance Company of The State of Pennsylvania
Birmingham Fire Insurance Company of Pennsylvania
Commerce and Industry Insurance Company

**WC 00 00 00 A**                        7 of 7

## LARGE RISK RATING PLAN ENDORSEMENT

**Section 9. The Rating Values and Amounts** shown below apply as the *Basis* of the *Final Premium* for the policies described in Section 1 of this Part II.

If the Rating Period exceeds one year; and if the estimated *Basis* of Premium, Minimum Premiums and Estimated Premiums shown below apply only to the first year, on or about each anniversary of the beginning of the Rating Period, we will issue an extension of this Section to show the rating values and amounts for each subsequent year of the Rating Period.

### Item A *Subject Premium*, part of *Final Premium*

| Line Items | Rates | Per | Basis Types | Estimated Basis | Minimum Premium | Estimated Premium |
|---|---|---|---|---|---|---|
| Expected Primary Losses | 0.0000 | 1 | ULTIMATE LOSSES | 0 | $0 | $2,373,000 |
| Claims Service Fees | 0.0000 | 1 | CONTRACT | 0 | $6,446 | $64,458 |
| Broker's Commission | 0.3420 | 100 | WC PAYROLL | 27,779,871 | $0 | $95,000 |
| IntelliRisk | 0.0000 | 1 | FLAT | 0 | $8,650 | $8,650 |
| Insurance Charge | 0.3687 | 100 | WC PAYROLL | 27,779,871 | $89,699 | $89,699 |
| Total Taxes and Assessments | 3.3623 | 100 | STANDARD PREMIUM | 2,202,073 | $0 | $74,038 |
| Administration including Loss Control | 0.5580 | 100 | WC PAYROLL | 27,779,871 | $93,000 | $155,000 |
| | | | | | **Subtotal** | $2,859,845 |
| **Taxes/Assessments %** | **0.0000%** | **or** | **Taxes/Assessments Divisor:** | **0.000000** | | $0 |
| | | | | **Estimated Total** *Subject Premiums* | | $2,859,845 |

### Item B *Non-Subject Premiums*, part of *Final Premium*

| Coverage Description | Rates | Per | Basis Types | Estimated Basis | Minimum Premium | Estimated Premium |
|---|---|---|---|---|---|---|
| Excess PremiumWCThe Entire Contract | 0.9640 | 100 | WC PAYROLL | 27,779,871 | $287,957 | $267,957 |
| | | | **Estimated Total Non-***Subject Premiums* | | | $267,957 |

### Item C *Summary of Expected Total Cost*

| | | | | | | |
|---|---|---|---|---|---|---|
| Estimated *Final Premium* (Part A. plus Part B) | | | | | | $3,127,802 |
| Expected *Reimbursable Losses* and *Deductible Losses* and *Self-Insured Losses* and *ALAE*, if applicable | | | | | | $0 |
| *Minimum Cost* from Section 6. If not applicable, show $0 | | | | | | $0 |
| *Maximum Cost* from Section 6. If not applicable, show $0 | | | | | | $0 |
| Surcharges: | 0.0000 | 1 | STANDARD PREMIUM | 0 | $0 | $53,720 |
| | | | | **EXPECTED TOTAL COST** | | $3,181,522 |

Form No. 81461 (8/04)            Copyright 2004 American International Group, Inc.            Page 12 of 14
⊕ 91/01/2005 001/01 9444753

INSURED'S COPY

-96-

## LARGE RISK RATING PLAN ENDORSEMENT

**Section 9. The Rating Values and Amounts** shown below apply as the *Basis* of the *Final Premium* for the policies described in Section 1 of this Part II.

If the Rating Period exceeds one year; and if the estimated *Basis* of Premium, Minimum Premiums and Estimated Premiums shown below apply only to the first year, on or about each anniversary of the beginning of the Rating Period, we will issue an extension of this Section to show the rating values and amounts for each subsequent year of the Rating Period.

**Item A. *Subject Premium*, part of *Final Premium***

| Line Items | Rates | Per | *Basis* Types | Estimated *Basis* | Minimum Premium | Estimated Premium |
|---|---|---|---|---|---|---|
| Expected Primary Losses | 0.0000 | 1 | ULTIMATE LOSSES | 0 | $0 | $2,373,000 |
| Claims Service Fees | 0.0000 | 1 | CONTRACT | 0 | $8,446 | $84,458 |
| Broker's Commission | 0.3420 | 100 | WC PAYROLL | 27,779,871 | $0 | $96,000 |
| IntelliRisk | 0.0000 | 1 | FLAT | 0 | $8,650 | $8,650 |
| Insurance Charge | 0.3867 | 100 | WC PAYROLL | 27,779,871 | $89,699 | $89,699 |
| Total Taxes and Assessments | 3.3823 | 100 | STANDARD PREMIUM | 2,202,073 | $0 | $74,038 |
| Administration including Loss Control | 0.5580 | 100 | WC PAYROLL | 27,779,871 | $93,000 | $155,000 |
| | | | | | Subtotal | $2,869,845 |
| Taxes/Assessments % | 0.0000% | or | Taxes/Assessments Divisor: | 0.000000 | | $0 |
| | | | | **Estimated Total *Subject Premiums*** | | $2,869,845 |

**Item B. Non-*Subject Premiums*, part of *Final Premium***

| Coverage Description | Rates | Per | *Basis* Types | Estimated *Basis* | Minimum Premium | Estimated Premium |
|---|---|---|---|---|---|---|
| Excess PremiumWCThe Entire Contract | 0.9646 | 100 | WC PAYROLL | 27,779,871 | $267,957 | $267,957 |
| | | | **Estimated Total Non-*Subject Premiums*** | | | $267,957 |

**Item C. Summary of Expected Total Cost**

| | | | | | | |
|---|---|---|---|---|---|---|
| Estimated *Final Premium* (Part A, plus Part B) | | | | | | $3,127,802 |
| Expected *Reimbursable Losses* and *Deductible Losses* and *Self-Insured Losses* and *ALAE*, if applicable | | | | | | $0 |
| Minimum Cost from Section 6. If not applicable, show $0 | | | | | | $0 |
| Maximum Cost from Section 6. If not applicable, show $0 | | | | | | $0 |
| Surcharges: | 0.0000 | 1 | STANDARD PREMIUM | 0 | $0 | $53,720 |
| | | | | **EXPECTED TOTAL COST** | | $3,181,522 |

01/01/2005 09:AU 9446791

INSURED'S COPY

## LARGE RISK RATING PLAN ENDORSEMENT

### PART III. AGGREGATE STOP

The *Aggregate Stop Amount* and the *Aggregate Stop Limit*, if any, shown in the Schedule below will be applied as explained below.

### Section I. Aggregate Stop Amount

1. If an *Aggregate Stop Amount* is shown in the Schedule below, we will not include more than the *Aggregate Stop Amount* in the computation of the *Final Premium* and determination of maximum benefits, damages and "ALAE" payable or reimbursable by you under the terms of the policies described in Section I of PART II, subject to any *Aggregate Stop Limit* shown in the Schedule below.

   The maximum benefits, damages and *ALAE* to be included in the computation of the *Final Premium* will be the *Aggregate Stop Amount* shown in the Schedule below, less the following:

   a) all *Subject Losses* that you must reimburse us for under any Loss Reimbursement or Deductible terms applicable to any policy covering the *Incurred Loss*, and

   b) such amounts as described in Section III below that you have paid as *Self-Insured Losses*.

2. **Adjustment:** If an Adjustment Rate and an Adjustment *Basis* are shown in the Schedule below, the *Aggregate Stop Amount* shown in the Schedule below is only an estimate. The *Aggregate Stop Amount* will be finally determined by multiplying the Adjustment Rate by the final Adjustment *Basis* as determined by our audit of your books and records. The *Aggregate Stop Amount* will not be less than the estimated amount shown in the Schedule below, unless otherwise set forth in Section 11 of PART Two

3. The *Aggregate Stop Amount* will not be reduced on account of the cancellation of any policy to which this Endorsement applies.

### Section II. Aggregate Stop Limit

1. If an *Aggregate Stop Limit* is shown in the Schedule below, that Limit is the most *Subject Losses* above the *Aggregate Stop Amount* that will be excluded from the computation of the *Final Premium* and which you will not be required to reimburse us for under any Loss Reimbursement or Deductible terms of the policies described in Section I of PART II.

2. The *Aggregate Stop Limit* will not be reduced on account of the cancellation of any policy to which this Endorsement applies.

### Section III. Self-Insured Losses

*Self-Insured Losses:* Losses you incur to which no insurance applies under the policies described in Section I of PART II will NOT be included in determining whether or when the *Aggregate Stop Amount* or *Aggregate Stop Limit* have been reached, except as described herein:

Exceptions: None

### SCHEDULE

#### Aggregate Stop Amount and Aggregate Stop Limit

Line of Insurance:    Workers Compensation - Insured.

The *Aggregate Stop Amount* and the *Aggregate Stop Limit* apply to the ☐ first year of, or ☒ entire Rating Period.

| | | | | | |
|---|---|---|---|---|---|
| a. | *Aggregate Stop Amount*, adjustable on the *Basis* and rate shown below. | | | | $4,500,000 |
| b. | *Basis* of Adjustment Amount: | **WC PAYROLL** | Per | 100 | Estimated *Basis* $27,779,871 |
| | | | | Adjustment Rate: | 16.1988 |
| c. | *Aggregate Stop Limit* | | | | $0 |

Countersigned by _____   Date _____

(Authorized Signature)

Form No. 81461 (8/04)          Copyright 2004 American International Group, Inc.          Page 14 of 14
01301-2005-01; 01 9446791

INSURED'S COPY

EXHIBIT

D

| ISSUED BY THE STOCK INSURANCE COMPANY HEREIN CALLED THE COMPANY | AGENT NUMBER | POLICY NUMBER |
|---|---|---|

AMERICAN HOME ASSURANCE COMPANY
13781

AGENT NUMBER: 61342-0000

POLICY NUMBER: WC 124-14-96
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-30

INCORPORATED UNDER THE LAWS OF NEW YORK

MAY 22 2006

**ITEM 1.** NAMED INSURED MAILING ADDRESS IDENTIFICATION NO:

ALTMAN SPECIALTY PLANTS, INC.
3742 BLUE BIRD CANYON ROAD
VISTA, CA 92084-0000

Member Companies of
American International Group

EXECUTIVE OFFICES:
70 PINE STREET, NEW YORK, N.Y. 10270

SEE NAME AND ADDRESS SCHEDULE - WC990610

I.D# 3376106     CA UI#:

PRODUCERS NAME AND ADDRESS

**WORKERS COMPENSATION AND EMPLOYERS
LIABILITY POLICY INFORMATION PAGE**

G.S. LEVINE INSURANCE SERVICES
10505 SORRENTO VALLEY RD., STE 200
SAN DIEGO, CA 92121-1041

INSURED IS
CORPORATION

PREVIOUS POLICY NUMBER
RENEWAL    001241496

OTHER WORKPLACES NOT SHOWN ABOVE: SEE NAME AND ADDRESS SCHEDULE - WC990610

**ITEM 2** POLICY PERIOD 12:01 A.M. standard time at the insured's
mailing address     FROM 01/01/06    TO 01/01/07

**ITEM 3** A. Workers Compensation Insurance: Part One of the policy applies to the Workers Compensation Law of the states listed here:

CA

B. Employers Liability Insurance: Part Two of the policy applies to the work in each state listed in item 3.A.
The limits of our liability under Part Two are:

Bodily Injury by Accident $ 1,000,000 each accident
Bodily Injury by Disease $ 1,000,000 policy limit
Bodily Injury by Disease $ 1,000,000 each employee

C. Other States Insurance: Part Three of the policy applies to the states, if any, listed here:
NONE

**ITEM 4** The premium for this policy will be determined by our Manuals of Rules, Classifications, Rates and Rating Plans.
All information required below is subject to verification and change by audit.

| Classifications | Code Number | Estimated Total Remuneration [X] Annual [ ] 3 Year | Rate Per $100 Of Remuneration | Estimated Premium [X] Annual [ ] 3 Year |
|---|---|---|---|---|
| SEE EXTENSION OF INFORMATION PAGE - WC7754 TAXES/ASSESSMENTS/SURCHARGES | | | | $44,893 |

EXPENSE CONSTANT (EXCEPT WHERE APPLICABLE BY STATE)    $160 CA

MINIMUM PREMIUM    $750 CA    TOTAL ESTIMATED PREMIUM    $1,730,184

If indicated below, interim adjustments of premium shall be made.

[ ] Semi-Annually    [ ] Quarterly    [ ] Monthly    DEPOSIT PREMIUM    $1,730,184

ENDORSEMENTS (FORM NUMBER)    SEE ATTACHED FORM SCHEDULE - WC990612

05/12/06 LOS ANGELES     05

Issue Date         Issuing Office        Authorized Representative    WC 00 00 01

29987

FORMS SCHEDULE

Policy Number: WC 124-14-96                    Effective Date: 01/01/2006

| FORTRSM | FOREIGN TERRORISM POLHOLDR NOT-PREM DTHN |
| WC000113 | TRIA EXTENSION ACT ENDT. |
| WC000406 | PREMIUM DISCOUNT ENDORSEMENT |
| WC000422 | FOREIGN TERRORISM PREMIUM ENDT. |
| WCOFAC | NOTICE REG OFFICE OF FOREIGN ASSET CTRL |
| 78052C | PRIVACY POLICY |
| 55154WC | CALIFORNIA FRAUD ASSESSMENT |
| WC040002A | CA-ADMINISTRATION REVOLVING FUND ASMNT |
| WC040305 | CA VOL COMP & EMPLOYERS LIAB |
| WC040360 | CA EMPLOYERS LIAB COV AMENDATORY ENDT |
| WC040402 | CA MANDATORY RATE CHANGE ENDT |
| WC040407 | CA PREMIUM ADJUSTMENT ENDT |
| WC040410 | CA ESTIMATED ANNUAL PREMIUM ENDT |
| WC990017 | CALIFORNIA CANCELLATION ENDORSEMENT |
| WC990407 | CA POLICY AMENDATORY ENDT |
| WC990408B | CA NOTIF OF LOSS CONTROL SERVICES |
| WC990409 | CA POLICYHOLDER NOTICE - CIGA SURCHARGE |
| WC990410 | POLICYHOLDER NOTICE |
| WC990411 | CA ADV NOTICE OF CANC OR NON-REN EXTD |
| WC990413A | POLICYHOLDER NOTICE |
| WC990422 | VOLUNTARY FOREIGN COVERAGE ENDT. CA ONLY |
| WC990610 | NAMED INSUREDS/ADDRESSES |
| 81461 | LARGE RISK RATING PLAN ENDORSEMENT |

# WORKERS COMPENSATION AND EMPLOYERS LIABILITY

## INSURANCE POLICY

National Union Fire Insurance
Company of Pittsburgh, Pa.

American Home Assurance Company

The Insurance Company of
The State of Pennsylvania

Birmingham Fire Insurance Company
of Pennsylvania

Commerce and Industry
Insurance Company



Member Companies of
American International Group, Inc.
EXECUTIVE OFFICES
70 PINE STREET
NEW YORK, N.Y. 10270

Coverage is provided by the Company designated on the Information Page
A Stock Insurance Company

---

**WORKERS COMPENSATION AND EMPLOYERS LIABILITY INSURANCE POLICY
QUICK REFERENCE**

BEGINNING ON PAGE

Information Page ............................................................................................... i

GENERAL SECTION ............................................................................................ 1
  A.  The Policy ................................................................................................. 1
  B.  Who Is Insured ......................................................................................... 1
  C.  Workers Compensation Law ..................................................................... 1
  D.  State ........................................................................................................ 1
  E.  Locations ................................................................................................. 1

PART ONE-WORKERS COMPENSATION INSURANCE ........................................ 1
  A.  How This Insurance Applies ..................................................................... 1
  B.  We Will Pay ............................................................................................. 1
  C.  We Will Defend ........................................................................................ 1
  D.  We Will Also Pay ..................................................................................... 1
  E.  Other Insurance ....................................................................................... 2
  F.  Payments You Must Make ........................................................................ 2
  G.  Recovery From Others ............................................................................. 2
  H.  Statutory Provisions ................................................................................ 2

THESE POLICY PROVISIONS WITH THE INFORMATION PAGE AND ENDORSEMENTS,
IF ANY, ISSUED TO FORM A PART THEREOF, COMPLETE THIS POLICY.

"INCLUDES COPYRIGHT MATERIAL OF THE NATIONAL COUNCIL ON COMPENSATION
INSURANCE, USED WITH ITS PERMISSION.

COPYRIGHT 1983 NATIONAL COUNCIL ON COMPENSATION INSURANCE"

39838C(04/92)

WC 00 00 00 A (STANDARD)

# QUICK REFERENCE – CONTINUED

BEGINNING ON
PAGE

PART TWO - EMPLOYERS LIABILITY INSURANCE ........................................................... 2
    A.  How This Insurance Applies ............................................................. 2
    B.  We Will Pay .................................................................................... 3
    C.  Exclusions ...................................................................................... 3
    D.  We Will Defend .............................................................................. 3
    E.  We Will Also Pay ........................................................................... 4
    F.  Other Insurance ............................................................................. 4
    G.  Limits of Liability ........................................................................... 4
    H.  Recovery From Others ................................................................... 4
    I.  Action Against Us .......................................................................... 4

PART THREE - OTHER STATES INSURANCE ............................................................... 4
    A.  How This Insurance Applies ............................................................. 4
    B.  Notice ........................................................................................... 5

PART FOUR - YOUR DUTIES IF INJURY OCCURS ........................................................ 5

PART FIVE - PREMIUM ............................................................................................. 5
    A.  Our Manuals .................................................................................. 5
    B.  Classifications ................................................................................ 5
    C.  Remuneration ................................................................................ 5
    D.  Premium Payments ........................................................................ 5
    E.  Final Premium ............................................................................... 5
    F.  Records ......................................................................................... 6
    G.  Audit ............................................................................................. 6

PART SIX - CONDITIONS ........................................................................................... 6
    A.  Inspection ..................................................................................... 6
    B.  Long Term Policy ........................................................................... 6
    C.  Transfer of Your Rights and Duties .................................................. 6
    D.  Cancellation .................................................................................. 6
    E.  Sole Representative ........................................................................ 6

IMPORTANT: This Quick Reference is **not** part of the Workers Compensation and Employers Liability Policy and does **not** provide coverage. Refer to the Workers Compensation and Employers Liability Policy itself for actual contractual provisions.

## PLEASE READ THE WORKERS COMPENSATION AND EMPLOYERS LIABILITY POLICY CAREFULLY

ATTACH FORM AND ENDORSEMENTS (IF ANY) HERE

## WORKERS COMPENSATION AND EMPLOYERS LIABILITY INSURANCE POLICY

In return for the payment of the premium and subject to all terms of this policy, we agree with you as follows.

### GENERAL SECTION

**A.   The Policy**

This policy includes at its effective date the Information Page and all endorsements and schedules listed there.  It is a contract of insurance between you (the employer named in Item 1 of the Information Page) and us (the insurer named on the Information Page).  The only agreements relating to this insurance are stated in this policy.  The terms of this policy may not be changed or waived except by endorsement issued by us to be part of this policy.

**B.   Who Is Insured**

You are insured if you are an employer named in Item 1 of the Information Page.  If that employer is a partnership, and if you are one of its partners, you are insured, but only in your capacity as an employer of the partnership's employees.

**C.   Workers Compensation Law**

Workers Compensation Law means the workers or workmen's compensation law and occupational disease law of each state or territory named in Item 3.A. of the Information Page.  It includes any amendments to that law which are in effect during the policy period.  It does not include any federal workers or workmen's compensation law, any federal occupational disease law or the provisions of any law that provide nonoccupational disability benefits.

**D.   State**

State means any state of the United States of America, and the District of Columbia.

**E.   Locations**

This policy covers all of your workplaces listed in Items 1 or 4 of the Information Page; and it covers all other workplaces in Item 3.A states unless you have other insurance or are self-insured for such workplaces.

### PART ONE · WORKERS COMPENSATION INSURANCE

**A.   How This Insurance Applies**

This workers compensation insurance applies to bodily injury by accident or bodily injury by disease.  Bodily injury includes resulting death.

1.   Bodily injury by accident must occur during the policy period.

2.   Bodily injury by disease must be caused or aggravated by the conditions of your employment.  The employee's last day of last exposure to the conditions causing or aggravating such bodily injury by disease must occur during the policy period.

**B.   We Will Pay**

We will pay promptly when due the benefits required of you by the workers compensation law.

**C.   We Will Defend**

We have the right and duty to defend at our expense any claim, proceeding or suit against you for benefits payable by this insurance.  We have the right to investigate and settle these claims, proceedings or suits.

We have no duty to defend a claim, proceeding or suit that is not covered by this insurance.

**D.   We Will Also Pay**

We will also pay these costs, in addition to other amounts payable under this insurance, as part of any claim, proceeding or suit we defend:

1.   reasonable expenses incurred at our request, but not loss of earnings;

2.   premiums for bonds to release attachments and for appeal bonds in bond amounts up to the amount payable under this insurance;

**WC 00 00 00 A**

1 of 7

-104-

3.  litigation costs taxed against you;

4.  interest on a judgment as required by law until we offer the amount due under this insurance; and

5.  expenses we incur.

E.  **Other Insurance**

We will not pay more than our share of benefits and costs covered by this insurance and other insurance or self-insurance. Subject to any limits of liability that may apply, all shares will be equal until the loss is paid. If any insurance or self-insurance is exhausted, the shares of all remaining insurance will be equal until the loss is paid.

F.  **Payments You Must Make**

You are responsible for any payments in excess of the benefits regularly provided by the workers compensation law including those required because:

1.  of your serious and willful misconduct;

2.  you knowingly employ an employee in violation of law;

3.  you fail to comply with a health or safety law or regulation; or

4.  you discharge, coerce or otherwise discriminate against any employee in violation of the workers compensation law.

If we make any payments in excess of the benefits regularly provided by the workers compensation law on your behalf, you will reimburse us promptly.

G.  **Recovery From Others**

We have your rights, and the rights of persons entitled to the benefits of this insurance, to recover our payments from anyone liable for the injury. You will do everything necessary to protect those rights for us and to help us enforce them.

H.  **Statutory Provisions**

These statements apply where they are required by law.

1.  As between an injured worker and us, we have notice of the injury when you have notice.

2.  Your default or the bankruptcy or insolvency of you or your estate will not relieve us of our duties under this insurance after an injury occurs.

3.  We are directly and primarily liable to any person entitled to the benefits payable by this insurance. Those persons may enforce our duties; so may an agency authorized by law. Enforcement may be against us or against you and us.

4.  Jurisdiction over you is jurisdiction over us for purposes of the workers compensation law. We are bound by decisions against you under that law, subject to the provisions of this policy that are not in conflict with that law.

5.  This insurance conforms to the parts of the workers compensation law that apply to:

    a.  benefits payable by this insurance or;

    b.  special taxes, payments into security or other special funds, and assessments payable by us under that law.

6.  Terms of this insurance that conflict with the workers compensation law are changed by this statement to conform to that law.

Nothing in these paragraphs relieves you of your duties under this policy.

## PART TWO · EMPLOYERS LIABILITY INSURANCE

A.  **How This Insurance Applies**

This employers liability insurance applies to bodily injury by accident or bodily injury by disease. Bodily injury includes resulting death.

1.  The bodily injury must arise out of and in the course of the injured employee's employment by you.

2.  The employment must be necessary or incidental to your work in a state or territory listed in Item 3.A. of the Information Page.

3.  Bodily injury by accident must occur during the policy period.

4.  Bodily injury by disease must be caused or aggravated by the conditions of your employment. The employee's last day of last exposure to the conditions causing or aggravating such bodily injury by disease must occur during the policy period.

5.  If you are sued, the original suit and any related legal actions for damages for bodily injury

WC 00 00 00 A

2 of 7

-105-

by accident or by disease must be brought in the United States of America, its territories or possessions, or Canada.

**B.   We Will Pay**

We will pay all sums you legally must pay as damages because of bodily injury to your employees, provided the bodily injury is covered by this Employers Liability Insurance.

The damages we will pay, where recovery is permitted by law, include damages:

1.  for which you are liable to a third party by reason of a claim or suit against you by that third party to recover the damages claimed against such third party as a result of injury to your employee;

2.  for care and loss of services; and

3.  for consequential bodily injury to a spouse, child, parent, brother or sister of the injured employee;

provided that these damages are the direct consequence of bodily injury that arises out of and in the course of the injured employee's employment by you; and

4.  because of bodily injury to your employee that arises out of and in the course of employment, claimed against you in a capacity other than as employer.

**C.   Exclusions**

This insurance does not cover:

1.  liability assumed under a contract. This exclusion does not apply to a warranty that your work will be done in a workmanlike manner;

2.  punitive or exemplary damages because of bodily injury to an employee employed in violation of law;

3.  bodily injury to an employee while employed in violation of law with your actual knowledge or the actual knowledge of any of your executive officers;

4.  any obligation imposed by a workers compensation, occupational disease, unemployment compensation, or disability benefits law, or any similar law;

5.  bodily injury intentionally caused or aggravated by you;

6.  bodily injury occurring outside the United States of America, its territories or possessions, and Canada. This exclusion does not apply to bodily injury to a citizen or resident of the United States of America or Canada who is temporarily outside these countries;

7.  damages arising out of coercion, criticism, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination against or termination of any employee, or any personnel practices, policies, acts or omissions.

8.  bodily injury to any person in work subject to the Longshore and Harbor Workers' Compensation Act (33 USC Sections 901-950), the Nonappropriated Fund Instrumentalities Act (5 USC Sections 8171-8173), the Outer Continental Shelf Lands Act (43 USC Sections 1331-1356), the Defense Base Act (42 USC Sections 1651-1654), the Federal Coal Mine Health and Safety Act of 1969 (30 USC Sections 901-942), any other federal workers or workmen's compensation law or other federal occupational disease law, or any amendments to these laws.

9.  bodily injury to any person in work subject to the Federal Employers' Liability Act (45 USC Sections 51-60), any other federal laws obligating an employer to pay damages to an employee due to bodily injury arising out of or in the course of employment, or any amendments to those laws.

10.  bodily injury to a master or member of the crew of any vessel.

11.  fines or penalties imposed for violation of federal or state law.

12.  damages payable under the Migrant and Seasonal Agricultural Worker Protection Act (29 USC Sections 1801-1872) and under any other federal law awarding damages for violation of those laws or regulations issued thereunder, and any amendments to those laws.

**D.   We Will Defend**

We have the right and duty to defend, at our expense, any claim, proceeding or suit against you for damages payable by this insurance. We have the right to investigate and settle these claims, proceedings and suits.

**WC 00 00 00 A**

We have no duty to defend a claim, proceeding or suit that is not covered by this insurance. We have no duty to defend or continue defending after we have paid our applicable limit of liability under this insurance.

### E. We Will Also Pay

We will also pay these costs, in addition to other amounts payable under this insurance, as part of any claim proceeding, or suit we defend;

1. reasonable expenses incurred at our request; but not loss of earnings;

2. premiums for bonds to release attachments and for appeal bonds in bond amounts up to the limit of our liability under this insurance;

3. litigation costs taxed against you;

4. interest on a judgment as required by law until we offer the amount due under this insurance; and

5. expenses we incur.

### F. Other Insurance

We will not pay more than our share of damages and costs covered by this insurance and other insurance or self-insurance. Subject to any limits of liability that apply, all shares will be equal until the loss is paid. If any insurance or self-insurance is exhausted, the shares of all remaining insurance and self-insurance will be equal until the loss is paid.

### G. Limits of Liability

Our liability to pay for damages is limited. Our limits of liability are shown in Item 3.B. of the Information Page. They apply as explained below.

1. Bodily Injury by Accident. The limit shown for "bodily injury by accident-each accident" is the most we will pay for all damages covered by this insurance because of bodily injury to one or more employees in any one accident.

A disease is not bodily injury by accident unless it results directly from bodily injury by accident.

2. Bodily Injury by Disease. The limit shown for "bodily injury by disease-policy limit" is the most we will pay for all damages covered by this insurance and arising out of bodily injury by disease, regardless of the number of employees who sustain bodily injury by disease. The limit shown for "bodily injury by disease-each employee" is the most we will pay for all damages because of bodily injury by disease to any one employee.

Bodily injury by disease does not include disease that results directly from a bodily injury by accident.

3. We will not pay any claims for damages after we have paid the applicable limit of our liability under this insurance.

### H. Recovery From Others

We have your rights to recover our payment from anyone liable for an injury covered by this insurance. You will do everything necessary to protect those rights for us and to help us enforce them.

### I. Actions Against Us

There will be no right of action against us under this insurance unless:

1. You have complied with all the terms of this policy; and

2. The amount you owe has been determined with our consent or by actual trial and final judgment.

This insurance does not give anyone the right to add us as a defendant in an action against you to determine your liability. The bankruptcy or insolvency of you or your estate will not relieve us of our obligations under this Part.

### PART THREE - OTHER STATES INSURANCE

### A. How This Insurance Applies

1. This other states insurance applies only if one or more states are shown in Item 3.C. of the Information Page.

2. If you begin work in any one of those states after the effective date of this policy and are not insured or are not self-insured for such work, all provisions of the policy will apply as

though that state were listed in Item 3.A. of the Information Page.

3. We will reimburse you for the benefits required by the workers compensation law of that state if we are not permitted to pay the benefits directly to persons entitled to them.

4. If you have work on the effective date of this policy in any state not listed in Item 3.A. of the

**WC 00 00 00 A**

Information Page, coverage will not be afforded for that state unless we are notified within thirty days.

**B. Notice**

Tell us at once if you begin work in any state listed in Item 3.C. of the Information Page.

## PART FOUR - YOUR DUTIES IF INJURY OCCURS

Tell us at once if injury occurs that may be covered by this policy. Your other duties are listed here.

1. Provide for immediate medical and other services required by the workers compensation law.

2. Give us or our agent the names and addresses of the injured persons and of witnesses, and other information we may need.

3. Promptly give us all notices, demands and legal papers related to the injury, claim, proceeding or suit.

4. Cooperate with us and assist us, as we may request, in the investigation, settlement or defense of any claim, proceeding or suit.

5. Do nothing after an injury occurs that would interfere with our right to recover from others.

6. Do not voluntarily make payments, assume obligations or incur expenses, except at your own cost.

## PART FIVE - PREMIUM

**A. Our Manuals**

All premium for this policy will be determined by our manuals of rules, rates, rating plans and classifications. We may change our manuals and apply the changes to this policy if authorized by law or a governmental agency regulating this insurance.

**B. Classifications**

Item 4 of the Information Page shows the rate and premium basis for certain business or work classifications. These classifications were assigned based on an estimate of the exposures you would have during the policy period. If your actual exposures are not properly described by those classifications, we will assign proper classifications, rates and premium basis by endorsement to this policy.

**C. Remuneration**

Premium for each work classification is determined by multiplying a rate times a premium basis. Remuneration is the most common premium basis. This premium basis includes payroll and all other remuneration paid or payable during the policy period for the services of:

1. All your officers and employees engaged in work covered by this policy; and

2. All other persons engaged in work that could make us liable under Part One (Workers Compensation Insurance) of this policy. If you do not have payroll records for these persons, the contract price for their services and materials may be used as the premium basis. This paragraph 2 will not apply if you give us proof

that the employers of these persons lawfully secured their workers compensation obligations.

**D. Premium Payments**

You will pay all premium when due. You will pay the premium even if part or all of a workers compensation law is not valid.

**E. Final Premium**

The premium shown on the Information Page, schedules, and endorsements is an estimate. The final premium will be determined after this policy ends by using the actual, not the estimated, premium basis and the proper classifications and rates that lawfully apply to the business and work covered by this policy. If the final premium is more than the premium you paid to us, you must pay us the balance. If it is less, we will refund the balance to you. The final premium will not be less than the highest minimum premium for the classifications covered by this policy.

If this policy is canceled, final premium will be determined in the following way unless our manuals provide otherwise.

1. If we cancel, final premium will be calculated pro rata based on the time this policy was in force. Final premium will not be less than the pro rata share of the minimum premium.

2. If you cancel, final premium will be more than pro rata; it will be based on the time this policy was in force, and increased by our short rate

WC 00 00 00 A

cancellation table and procedure. Final premium will not be less than the minimum premium.

F. **Records**

You will keep records of information needed to compute premium. You will provide us with copies of those records when we ask for them.

G. **Audit**

You will let us examine and audit all your records that relate to this policy. These records include ledgers, journals, registers, vouchers, contracts, tax reports, payroll and disbursement records, and programs for storing and retrieving data. We may conduct the audits during regular business hours during the policy period and within three years after the policy period ends. Information developed by audit will be used to determine final premium. Insurance rate service organizations have the same rights we have under this provision.

## PART SIX - CONDITIONS

A. **Inspection**

We have the right, but are not obliged to inspect your workplaces at any time. Our inspections are not safety inspections. They relate only to the insurability of the workplaces and the premiums to be charged. We may give you reports on the conditions we find. We may also recommend changes. While they may help reduce losses, we do not undertake to perform the duty of any person to provide for the health or safety of your employees or the public. We do not warrant that your workplaces are safe or healthful or that they comply with laws, regulations, codes or standards. Insurance rate service organizations have the same rights we have under this provision.

B. **Long Term Policy**

If the policy period is longer than one year and sixteen days, all provisions of this policy will apply as though a new policy were issued on each annual anniversary that this policy is in force.

C. **Transfer of Your Rights and Duties**

Your rights or duties under this policy may not be transferred without our written consent.

If you die and we receive notice within thirty days after your death, we will cover your legal representative as insured.

D. **Cancellation**

1. You may cancel this policy. You must mail or deliver advance written notice to us stating when the cancellation is to take effect.

2. We may cancel this policy. We must mail or deliver to you not less than ten days advance written notice stating when the cancellation is to take effect. Mailing that notice to you at your mailing address shown in Item 1 of the Information Page will be sufficient to prove notice.

3. The policy period will end on the day and hour stated in the cancellation notice.

4. Any of these provisions that conflicts with a law that controls the cancellation of the insurance in this policy is changed by this statement to comply with that law.

E. **Sole Representative**

The insured first named in Item 1 of the Information Page will act on behalf of all insureds to change this policy, receive return premium, and give or receive notice of cancellation.

**WC 00 00 00 A**

**In Witness Whereof,** the company has caused this policy to be executed and attested, but this policy shall not be valid unless countersigned by a duly authorized representative of the company.

The Insurance Company
of The State of Pennsylvania

President
National Union Fire
Insurance Company of
Pittsburgh, PA

President
Commerce and Industry
Insurance Company

President
American Home
Assurance Company

President
Birmingham Fire Insurance
Company of Pennsylvania

Secretary
National Union Fire Insurance Company of Pittsburgh, PA
American Home Assurance Company
The Insurance Company of The State of Pennsylvania
Birmingham Fire Insurance Company of Pennsylvania
Commerce and Industry Insurance Company

WC 00 00 00 A                      7 of 7

Page 1   of   1

## STANDARD WORKERS' COMPENSATION AND EMPLOYERS' LIABILITY EXTENSION FORM

| WC | 124-14-96 | CALIFORNIA | 3376106 |
|---|---|---|---|
| | Policy Prefix & No. | Schedule | INTRA/Independent State Risk ID |

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-30        ALTMAN SPECIALTY PLANTS, INC.

| Item 4. Classification of Operations | | Code No. | Premium Basis — Estimated Total Annual Remuneration | Rates — Per $100 of Remuneration | Estimated Annual Premiums |
|---|---|---|---|---|---|
| Entries in this item, except as specifically provided elsewhere in this policy, do not modify any of the other provisions of this policy. | | | | | |
| RATING GROUP: 0001-01 | | | | | |
| NURSERIES-PROPAGATION AND CULTIVATION OF NURSERY STOCK | | 0005 | 17,640,760 | 8.33 | 1,469,475 |
| SALESPERSONS-OUTSIDE | | 8742 | 4,454,894 | 1.44 | 64,150 |
| CLERICAL OFFICE EMPLOYEES-N.O.C. | | 8810 | 2,228,074 | 1.35 | 30,079 |
| CLERICAL OFFICE EMPLOYEES-N.O.C. | | 8810V | IF ANY | 1.35 | |
| STATE OF CALIFORNIA TOTALS | | | | | |
| TOTAL CLASSIFICATION PREMIUM | | | | | 1,563,704 |
| TOTAL UNMODIFIED PREMIUM | | | | | 1,563,704 |
| EXPERIENCE PREMIUM       (EXPIRING) | 1.7200 | 9897 | | | 1,125,867 |
| SCHEDULE MODIFICATION | -20.00% | 9887 | | | -537,914 |
| MODIFIED STANDARD PREMIUM | | | | | 2,151,657 |
| UNDISCOUNTED PREMIUM | | | | | 2,151,657 |
| NEGOTIATED PREMIUM DISCOUNT | -19.93% | 0063 | | | -428,825 |
| DISCOUNTED PREMIUM | | | | | 1,722,832 |
| EXPENSE CONSTANT | | 0900 | | | 160 |
| TERRORISM RISK INS ACT 2002 | 0.4599% | 9740 | | | 7,192 |
| TOTAL ESTIMATED PREMIUM | | | | | 1,730,184 |
| GUARANTEE ASSOCIATION ASSESS | 2.00% | 9713 | | | 34,604 |
| CA ADMIN REVOLVING FUND ASSESS | 0.3935% | 9683 | | | 6,808 |
| CA FRAUD ASSESSMENT | 0.0844% | 9682 | | | 1,460 |
| UIEB TRUST FUND ASSESSMENT | 0.0812% | 9705 | | | 1,405 |
| SIB TRUST FUND ASSESSMENT | 0.0356% | 9706 | | | 616 |
| TOTAL DUE | | | | | 1,775,077 |
| EXPERIENCE RATING MODIFICATION = 1.72 | | | | | |

WC 7754 (Ed. 4-81)        See Name and Address Schedule -- WC990610

**FOREIGN TERRORISM (TRIA) POLICYHOLDER NOTICE - PREMIUM DETERMINATION**

As indicated in Form No. WC 00 04 22, your Foreign Terrorism (TRIA) premium is shown in Form WC 7754. The schedule below shows how the premium for Foreign Terrorism (TRIA) is determined.

Schedule

| State | Premium Determination Method |
|---|---|
| Arizona ............................................................................ | Rate per $100 of Remuneration in addition to rate included in Arizona premium as set forth below*. |
| Colorado, Connecticut, New Jersey and Wisconsin ................ | Rate per $100 of Remuneration. |
| New York ......................................................................... | Rate per $100 of Remuneration and rate applied to Total Classification Premium. |
| Idaho, Kansas, Maine, New Hampshire and Virginia ................ | Included in Rates applied to Premium Basis (Remuneration) for calculation of annual premium for each applicable classification of operations. |
| Alabama, Alaska, Iowa, Montana, Nevada and Tennessee ...... | Rate per $100 of Remuneration in addition to charge included in rates applied to Premium Basis (Remuneration) for calculation of annual premium for each applicable classification of operations. |
| All Other States ................................................................ | Rate applied to Total Classification Premium. |

\*       For policies issued by Commerce and Industry Insurance Company, AIU Insurance Company or New Hampshire Insurance Company the total premium for Arizona also includes a charge for this coverage in the rates applied to Premium Basis (Remuneration) for each applicable classification of operations.

For policies issued by American Home Assurance Company, American International South Insurance Company, Birmingham Fire Insurance Company of Pennsylvania, Granite State Insurance Company, Illinois National Insurance Co., National Union Fire Insurance Company of Pittsburgh, Pa. or The Insurance Company of the State of Pennsylvania the total premium for Arizona also includes a charge for this coverage determined by applying a rate against the Schedule Modification factor.

**FORTRSM**
**(Ed. 01/06)**

## TERRORISM RISK INSURANCE EXTENSION ACT ENDORSEMENT

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy).

This endorsement, effective 12:01 AM  01/01/2006          forms a part of Policy No. WC    124-14-96

Issued to ALTMAN SPECIALTY PLANTS, INC.

By AMERICAN HOME ASSURANCE COMPANY

This endorsement addresses the requirements of the Terrorism Risk Insurance Act of 2002 as amended and extended by the Terrorism Risk Insurance Extension Act of 2005.

### Definitions

The definitions provided in this endorsement are based on the definitions in the Act and are intended to have the same meaning. If words or phrases not defined in this endorsement are defined in the Act, the definitions in the Act will apply. "Act" means the Terrorism Risk Insurance Act of 2002, which took effect on November 26, 2002, and any amendments resulting from the Terrorism Risk Insurance Extension Act of 2005.

"Act of terrorism" means any act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State, and the Attorney General of the United States as meeting all of the following requirements:

a.  The act is an act of terrorism.

b.  The act is violent or dangerous to human life, property or infrastructure.

c.  The act resulted in damage within the United States, or outside of the United States in the case of United States missions or certain air carriers or vessels.

d.  The act has been committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

"Insured terrorism or war loss" means any loss resulting from an act of terrorism (including an act of war, in the case of workers compensation) that is covered by primary or excess property and casualty insurance issued by an insurer if the loss occurs in the United States or at United States missions or to certain air carriers or vessels.

"Insurer deductible" means:

a.  For the period beginning on November 26, 2002 and ending on December 31, 2002, an amount equal to 1% of our direct earned premiums, as provided in the Act, over the calendar year immediately preceding November 26, 2002.

b.  For the period beginning on January 1, 2003 and ending on December 31, 2003, an amount equal to 7% of our direct earned premiums, as provided in the Act, over the calendar year immediately preceding January 1, 2003.

c.  For the period beginning on January 1, 2004 and ending on December 31, 2004, an amount equal to 10% of our direct earned premiums, as provided in the Act, over the calendar year immediately preceding January 1, 2004.

d.  For the period beginning on January 1, 2005 and ending on December 31, 2005, an amount equal to 15% of our direct earned premiums, as provided in the Act, over the calendar year immediately preceding January 1, 2005.

e.  For the period beginning on January 1, 2006 and ending on December 31, 2006, an amount equal to 17.5% of our direct earned premiums, as provided in the Act, over the calendar year immediately preceding January 1, 2006.

**WC 00 01 13**
**(Ed. 01/06)**
© 2002-2005 National Council on Compensation Insurance, Inc.          Page 1 of 2

f.   For the period beginning on January 1, 2007 and ending on December 31, 2007, an amount equal to 20% of our direct earned premiums, as provided in the Act, over the calendar year immediately preceding January 1, 2007.

**Limitation of Liability**

The Act may limit our liability to you under this policy. If annual aggregate insured terrorism or war losses of all insurers exceed $100,000,000,000 during the applicable period provided in the Act, and if we have met our insurer deductible, the amount we will pay for insured terrorism or war losses under this policy will be limited by the Act, as determined by the Secretary of the Treasury.

**Policyholder Disclosure Notice**

1.   Insured terrorism or war losses would be partially reimbursed by the United States Government under a formula established by the Act. Under this formula, the United States Government would pay 90% for Program Year 4 and 85% for Program Year 5 of our insured terrorism or war losses exceeding our insurer deductible.

2.   The premium charged for the coverage this policy provides for insured terrorism or war losses is included in the amount shown in Item 4 of the Information Page or in the Schedule in the Foreign Terrorism Premium Endorsement. (WC 00 04 22), attached to this policy.

WC 00 01 13
(Ed. 01/06)
© 2002-2005 National Council on Compensation Insurance, Inc.

Countersigned by _____

Page 2 of 2

**Authorized Representative**

## IMPORTANT NOTICE TO OUR CUSTOMERS
## REGARDING THE
## OFFICE OF FOREIGN ASSETS CONTROL

Your rights as a policyholder and payments to you, any insured, additional insured, loss payee, mortgagee, or claimant, for loss under this policy may be affected by the administration and enforcement of U.S. economic embargoes and trade sanctions by the OFFICE OF FOREIGN ASSETS CONTROL ("OFAC").

### WHAT IS OFAC?

OFAC is an office of the Department of the Treasury and acts under presidential wartime and national emergency powers, as well as authority granted by specific legislation, to impose controls on transactions and freeze foreign assets under U.S. jurisdiction. OFAC administers and enforces economic embargoes and trade sanctions primarily against:

- Targeted foreign countries and their agents

- Terrorism sponsoring agencies and organizations

- International narcotics traffickers

### PROHIBITED ACTIVITY

- OFAC enforces certain embargoes and sanctions against certain designated countries. No U.S. business or person may enter into certain transactions in or connected to such designated "sanctioned" countries.

- OFAC maintains a directory known as the "Specially Designated Nationals and Blocked Persons" ("SDNBP") list. No U.S. business or person may transact business with any person or entity named on the SDNBP list.

Additional and more in-depth information on OFAC is available at the following website:
http://www.ustreas.gov/offices/eotffc/ofac.

### OBLIGATIONS PLACED ON US BY OFAC

If we determine that you or any insured, additional insured, loss payee, mortgagee, or claimant are on the SDNBP list or are connected to a sanctioned country as described in the regulations enforced by OFAC, we must block or "freeze" property and payment of any funds transfers or transactions and report all blocks to OFAC within ten (10) days.

### POTENTIAL ACTIONS BY US

1. We may immediately cancel your coverage effective on the day that we determine that we have transacted business with an individual or entity associated with your policy on the SDNBP list or connected to a sanctioned country as described in the regulations enforced by OFAC.

2. If we cancel your coverage, you will not receive a return premium unless approved by OFAC. All funds will be placed in an interest bearing blocked account established on the books of a U.S. financial institution.

3. We will not pay a claim, accept premium or exchange monies or assets of any kind to or with individuals, entities or companies (including a bank) on the SDNBP list or connected to a sanctioned country as described in the regulations enforced by OFAC. And, we will not defend or provide any other benefits under your policy to individuals, entities or companies on the SDNBP list or connected to a sanctioned country as described in the regulations enforced by OFAC.

### YOUR RIGHTS AS A POLICYHOLDER

If funds are blocked or frozen by us in conjunction with the OFFICE OF FOREIGN ASSETS CONTROL, you may complete an "APPLICATION FOR THE RELEASE OF BLOCKED FUNDS" and apply for a specific license to request their release. Forms are available for download at the OFAC website. See
http://www.ustreas.gov/offices/eotffc/ofac/legal/forms/license.pdf

**WCOFAC**
**(Ed. 07/05)**

## PRIVACY POLICY

**Our Commitment to Privacy:**

The AIG Companies (AIG) believe one of our most important assets is the trust consumers place in us to respect and properly handle nonpublic personal information received by us in connection with providing our products and services. To continue earning your trust and enhance the products and services offered to you, the companies listed below have adopted the following privacy policy to govern how we treat your nonpublic personal information including such information about our former customers.

It's important for you to know that this privacy policy applies only to the product or service you have just obtained or the insurance policy under which you are seeking or receiving benefits. As a large worldwide leader in the delivery of financial products and services, we offer numerous products and services to many types of consumers and clients in many different states and countries around the world. Therefore, each of our companies may issue different privacy policies to fit the specific products and services they offer.

**Information We Collect:**

We collect information about you that is necessary to tailor our products and services to meet your individual needs, provide effective customer service, and comply with legal requirements.

We may collect nonpublic personal information about you, from one or more of the following sources:
- Information we receive from you on applications or other forms;
- Information about your transactions with us, our affiliates or others;
- Information we receive from a consumer-reporting agency; and
- Information received in handling claims.

**Sharing Information Within Our Family of Companies:**

We may share some or all of the nonpublic personal information we collect with our affiliates - the members of the AIG family of companies, unless such sharing of information is prohibited by law. In many cases, the information that is shared may be at your request or is necessary to administer, process or otherwise handle your transactions with us or settle a claim on your behalf. In addition, we may provide this information to our affiliates in order to offer you products and services in which you may be interested.

Our family of companies includes many insurance companies (e.g., auto, home, and life insurance), insurance claims handling companies, other financial institutions (e.g., savings bank), and non-financial institutions.

**Sharing Information Outside the AIG Family:**

Sometimes, we use companies or businesses outside the AIG family to administer, process, or otherwise handle your transactions with us, such as for claims handling or customer service. Other times, we may enter into contracts with nonaffiliated companies to perform services on our behalf, such as marketing our products and services, or we may enter into joint marketing agreements with other financial institutions. In these and other circumstances permitted by law, we may share some or all of the information we collect above with these nonaffiliated third parties. However, whenever we utilize a nonaffiliated third party to provide these services, they are required to follow federal privacy laws governing this notice. We also may share information to combat fraud, in response to a court order, or at the request of government regulators.

**Nonpublic Personal Health Information:**

We will not disclose nonpublic personal health information about you without obtaining prior written authorization from you, except as permitted by applicable law or regulation.

78052C
(Ed. 11/05)

Page 1 of 3

**Protecting and Safeguarding Your Information:**

To help prevent unwarranted disclosure of your nonpublic information and secure it from theft, we utilize secure computer networks and restrict access to nonpublic personal information about you to those employees who need to know that information to provide products or services to you.  In addition, we maintain physical, electronic, and procedural safeguards that comply with applicable laws and regulations to guard our customers' nonpublic personal information.

**Maintaining Accurate Information:**

We also maintain procedures to ensure that the information we collect is accurate, up-to-date, and as complete as possible.  If you believe the information we have about you in our records or files is incomplete or inaccurate, you may request that we make additions or corrections, or if it is feasible, that we delete this information from our files.  You may make this request in writing to (include your name, address and policy number):

Chief Privacy Officer
AIG - Domestic Brokerage Group
175 Water Street, 3rd Floor
New York, NY  10038

FAX:  212-785-9495

e-mail:  DBG.Privacy@AIG.com

*Special notice for policyholders who reside in any of the following states: Arizona, California, Connecticut, Georgia, Illinois, Kansas, Maine, Massachusetts, Minnesota, Montana, Nevada, New Jersey, North Carolina, Ohio, Oregon, Virginia or Wisconsin: You can obtain access to any nonpublic personal information we have about you if you properly identify yourself and submit a written request to us at the address above describing the information you want to review (include your name, address and policy number).  Once we have received your request, and if the information is reasonably locatable and retrievable, we will, within 30 business days, take the following actions:*

- *Inform you of the nature and substance of the recorded information;*
- *Allow you to see and copy, in person, such recorded personal information; or*
- *Send you a copy of the recorded personal information by mail (we may charge you a reasonable fee to cover the cost of this service).*

*We will also tell you at this time the identity, if recorded, of persons to whom we have disclosed the nonpublic personal information within the preceding two years.*

*If you ask us to correct, amend or delete any information about you, we will, within 30 business days, either correct, amend or delete the nonpublic personal information in dispute or notify you of our refusal to take such action along with the reasons for our decision.  If we make the correction, amendment or deletion you've requested, we will also notify you along with any person you designate who has received the information about you within the preceding two years, together with any insurance support organization(s) which provided us with the disputed information.*

*If we refuse to make the requested correction, amendment or deletion, you are permitted to file a concise statement setting forth what you think is the correct, relevant or fair information along with a statement of the reasons why you disagree with our refusal to correct, amend or delete the information subject to dispute.  We will file your statement with the disputed personal information and make any person who reviews your file aware of your statement.  We will also furnish your statement to any person who has received personal information from us within the two preceding years and any insurance support organization whose primary source of personal information is an insurer.*

78052C
(Ed. 11/05)

Page 2 of 3

**Important Information Concerning the Applicability and Future Changes to this Privacy Policy:**

This privacy policy applies, with respect to nonpublic personal financial information, to products or services provided primarily for personal, family, or household purposes in the United States by the AIG Companies listed below, and it applies to all nonpublic personal health information these Companies may have. Although we may change this policy at any time, please rest assured that you will be notified of any changes as required by law.

**AIG Companies Covered by this Policy:**

AIG Hawaii Insurance Company
AIU Insurance Company
American Home Assurance Company
American International Pacific Insurance Company
American International South Insurance Company
Birmingham Fire Insurance Company of Pennsylvania
Commerce and Industry Insurance Company
Granite State Insurance Company
Illinois National Insurance Co.
National Union Fire Insurance Company of Louisiana
National Union Fire Insurance Company of Pittsburgh, Pa.
New Hampshire Insurance Company
The Insurance Company of the State of Pennsylvania
American International Specialty Lines Insurance Company
American Pacific Insurance Company, Inc.
Landmark Insurance Company
Lexington Insurance Company
Agency Management Corporation
A. I. Risk Specialists Insurance, Inc.
A. I. Risk Specialists of Missouri, Inc.
American International Entertainment, Inc.
Eastern Risk Specialists, Inc.
Florida Risk Specialists, Inc.
The Gulf Agency, Inc.
Louisiana Risk Specialists, Inc.
Medical Excess Insurance Services, Inc.
Michigan Risk Specialists, Inc.
Midwestern Risk Specialists, Inc.
Nevada Risk Specialists, Inc.
New England Risk Specialists, Inc.
Northwestern Risk Specialists, Inc.
Risk Specialists Companies, Inc.
Risk Specialists Company (Bermuda), Ltd.
Risk Specialists Company of Colorado, Inc.
Risk Specialists Company of Kentucky, Inc.
Risk Specialists Company of Minnesota, Inc.
Risk Specialists Company of New Jersey, Inc.
Risk Specialists Company of New York, Inc.
Risk Specialists Company of Ohio, Inc.
Risk Specialists of the Carolinas, Inc.
Southeastern Risk Specialists, Inc.
Southern Risk Specialists, Inc.
Western Risk Specialists, Inc.
American International Surplus Lines Agency, Inc.
AIG Warranty Services and Insurance Agency, Inc.

and other member companies of the AIG family who sent you this privacy policy statement.

78052C
(Ed. 11/05)

Page 3 of 3

## CALIFORNIA WORKERS COMPENSATION
## FRAUD ASSESSMENT

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy).

This endorsement, effective 12:01 AM  01/01/2006          forms a part of Policy No. WC       124-14-96

Issued to ALTMAN SPECIALTY PLANTS, INC.

By AMERICAN HOME ASSURANCE COMPANY

In order to fund increased investigation and prosecution of Workers Compensation fraud, Senate Bill 1218, statutes of 1990, created the Workers Compensation Fraud Account with the Insurance Fund administered by the Insurance Commissioner.  The proceeds of this fund include this annual assessment collected from all insured and self insured employers, and remitted by your insurance company to the Workers Compensation Fraud Account.

Surcharge Factor                              Surcharge Amount

   1.000844                                     $1,460

55154WC (12-92)              Countersigned by _____          _signature_

                                                      Authorized Representative

## CALIFORNIA — ADMINISTRATION REVOLVING FUND ASSESSMENT

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy).

This endorsement, effective 12:01 AM 01/01/2006          forms a part of Policy No. WC    124-14-96

Issued to ALTMAN SPECIALTY PLANTS, INC.

By AMERICAN HOME ASSURANCE COMPANY

California Law requires insurers who provide Workers' Compensation insurance to collect an Administration Revolving Fund Assessment for each insured employer. The percentage, as determined by the Director of the Department of Industrial Relations, is applied to each insured employer's premium for the purpose of determining its share of the assessment to be paid. This surcharge amount is subject to adjustment at audit.

The Fund was established pursuant to the provisions of California Labor Code Section 62.6.

Your policy has been surcharged by the amount/percent stated below:

    SURCHARGE AMOUNT:     $6,808

    SURCHARGE PERCENT:  0.3935%

WC 04 00 02 A
(Ed. 8-91)                    Countersigned by _____

                                                              Authorized Representative

-120-

## VOLUNTARY COMPENSATION AND EMPLOYERS LIABILITY COVERAGE
## ENDORSEMENT—CALIFORNIA

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy).

This endorsement, effective 12:01 AM 01/01/2006          forms a part of Policy No. WC    124-14-96

Issued to ALTMAN SPECIALTY PLANTS, INC.

By AMERICAN HOME ASSURANCE COMPANY

If the employer named in item 1 of the Information Page has in his employment persons not entitled to compensation under Division 4 of of the Labor Code of the State of California, this policy shall operate as an election on the part of the employer to come under the compensation provisions of Division 4 with respect to those persons described in the Schedule below.

This policy applies to those persons described in the Schedule below as employees.

### Schedule

ALL OFFICERS AND EMPLOYEES NOT SUBJECT TO THE WORKERS
COMPENSATION LAW EXCEPT MASTERS AND MEMBERS OF THE CREW OF
ANY VESSEL.

WC 04 03 05          Countersigned by _____
(Ed. 1-85)

**Authorized Representative**

## EMPLOYERS' LIABILITY COVERAGE AMENDATORY ENDORSEMENT –– CALIFORNIA

This endorsement changes the policy to which it is attached effective on inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy).

This endorsement, effective 12:01 AM 01/01/2006          forms a part of Policy No. WC     124-14-96

Issued to ALTMAN SPECIALTY PLANTS, INC.

by AMERICAN HOME ASSURANCE COMPANY

Premium

The insurance afforded by Part Two (Employers' Liability Insurance) by reason of designation of California in item 3 of the information page is subject to the following provisions:

A. "How This Insurance Applies", is amended to read as follows:

### A.   How This Insurance Applies

This employers' liability insurance applies to bodily injury by accident or bodily injury by disease. Bodily injury means a physical or mental injury, including resulting death. Bodily injury does not include emotional distress, anxiety, discomfort, inconvenience, depression, dissatisfaction or shock to the nervous system, unless caused by either a manifest physical injury or a disease with a physical dysfunction or condition resulting in treatment by a licensed physician and surgeon.

1.   The bodily injury must arise out of and in the course of the injured employee's employment by you.

2.   The employment must be necessary or incidental to your work in California.

3.   Bodily injury by accident must occur during the policy period.

4.   Bodily injury by disease must be caused or aggravated by the conditions of your employment. The employee's last day of last exposure to the conditions causing or aggravating such bodily injury by disease must occur during the policy period.

5.   If you are sued, the original suit and any related legal actions for damages for bodily injury by accident or by disease must be brought in the United States of America, its territories or possessions, or Canada.

C. "Exclusions", is amended to read as follows:

### C.   Exclusions

This insurance does not cover:

1.   liability assumed under a contract;

2.   bodily injury to an employee while employed in violation of law with your actual knowledge or the actual knowledge of any of your executive officers;

3.   any obligation imposed by a workers' compensation, occupational disease, unemployment compensation, or disability benefits law, or any similar law;

4.   bodily injury intentionally caused or aggravated by you;

5.   bodily injury occurring outside the United States of America, its territories or possessions, and Canada. This exclusion does not apply to bodily injury to a citizen or resident of the United States of America or Canada who is temporarily outside these countries;

6.   bodily injury arising out of termination of employment;

7.   bodily injury arising out of the coercion, demotion, reassignment, discipline, defamation, harassment or humiliation of, or discrimination against any employee.

WC 04 03 60
(Ed. 8-86)

Countersigned by _____

_Authorized signature_

**Authorized Representative**

-122-

## MANDATORY RATE CHANGE ENDORSEMENT–CALIFORNIA

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy).

This endorsement, effective 12:01 AM  01/01/2006           forms a part of Policy No. WC    124-14-96

Issued to ALTMAN SPECIALTY PLANTS, INC.

By AMERICAN HOME ASSURANCE COMPANY

The premium and rates with respect to the insurance provided by this policy by reason of the designation of California in Item 3 of the Information Page are subject to change if ordered by the Insurance Commissioner of the State of California pursuant to Section 11737 of the California Insurance Code.

WC 04 04 02            Countersigned by _____
(Ed. 01-95)

Authorized Representative

## PREMIUM ADJUSTMENT ENDORSEMENT- CALIFORNIA

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy).

This endorsement, effective 12:01 AM   01/01/2006          forms a part of Policy No. WC      124-14-96

Issued to ALTMAN SPECIALTY PLANTS, INC.

By AMERICAN HOME ASSURANCE COMPANY

We have the right to adjust the policy premium after issuance of the policy if the cost of providing the benefits required under the workers' compensation laws of California is affected by legislative or regulatory changes adopted after issuance of the policy. The amount of the adjustment will not exceed the change in the cost of providing the benefits as reflected in the pure premium rates approved by the Insurance Commissioner.

WC 04 04 07
(Ed. 10/99)                    Countersigned by _____

© 1999 by the Worker's Compensation Insurance Rating Bureau of California. All rights reserved.
From the WCIRB's California Workers' Compensation Insurance Forms Manual © 2001.

Authorized Representative

-124-

## ESTIMATED ANNUAL PREMIUM ENDORSEMENT — CALIFORNIA

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy).

This endorsement, effective 12:01 AM 01/01/2006       forms a part of Policy No. WC    124-14-96

Issued to ALTHAN SPECIALTY PLANTS, INC.

By AMERICAN HOME ASSURANCE COMPANY

The premium with respect to the insurance provided by this policy by reason of the designation of California in item 3 of the Information Page is subject to experience modification. The experience modification, when issued, will be effective on 01/01/06, your normal anniversary rating date. Pending the issuance of the experience modification by the Workers' Compensation Insurance Rating Bureau of California, the estimated annual premium shown below is based on the experience modification previously applicable to your operations. The estimated annual premium will be revised when the Bureau issues the applicable experience modification.

ESTIMATED ANNUAL PREMIUM    $1,775,077

The estimated annual premium shown above is based on a prior experience modification of       1.72    which was effective on 01/01/05.

**NOTE: THE ESTIMATED ANNUAL PREMIUM MAY BE INCREASED WHEN THE BUREAU ISSUES THE EXPERIENCE MODIFICATION APPLICABLE TO THIS POLICY.**

WC 04 04 10
(Ed. 09-88)

Countersigned by _____

_Signature_

**Authorized Representative**

## CALIFORNIA CANCELLATION ENDORSEMENT

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy).

This endorsement, effective 12:01 AM  01/01/2006          forms a part of Policy No. WC    124-14-96

Issued to ALTMAN SPECIALTY PLANTS, INC.

By AMERICAN HOME ASSURANCE COMPANY

This endorsement applies only to the insurance provided by the policy because California is shown in Item 3.A. of the Information Page.

The cancellation condition in Part Six (Conditions) of the policy is replaced by these conditions:

Cancellation

1.   You may cancel this policy. You must mail or deliver advance written notice to us stating when the cancellation is to take effect.

2.   We may cancel this policy for one or more of the following reasons:

   a)   Non-payment of premium;

   b)   Failure to report payroll;

   c)   Failure to permit us to audit payroll as required by the terms of this policy or of a previous policy issued by us;

   d)   Failure to pay any additional premium resulting from an audit of payroll required by the terms of this policy or any previous policy issued by us;

   e)   Material misrepresentation made by you or your agent;

   f)   Failure to cooperate with us in the investigation of a claim;

   g)   Failure to pay additional premium resulting from a retrospective adjustment of premium required by the terms of this policy or any previous policy issued by us;

   h)   Failure to comply with Federal or State safety orders;

   i)   Failure to comply with written recommendations of our designated loss control representatives;

   j)   The occurrence of a material change in the ownership of your business;

   k)   The occurrence of any change in your business or operations that materially increases the hazard for frequency or severity of loss;

   l)   The occurrence of any change in your business or operation that requires additional or different classification for premium calculation;

   m)   The occurrence of any change in your business or operation which contemplates an activity excluded by our reinsurance treaties.

3.   If we cancel your policy for any of the reasons listed in (a) through (g), we will give you 10 days advance written notice, stating when the cancellation is to take effect. Mailing that notice to you at your mailing address shown in Item 1 of the information page will be sufficient to prove notice. If we cancel your policy for any of the reasons listed in (h) through (m), we will give you 30 days advance written notice; however, we agree that in the event of cancellation and reissuance of a policy effective upon a material change in ownership or operations, notice will not be provided.

4.   The policy period will end on the day and hour stated in the cancellation notice.

WC 99 00 17                    Countersigned by _____
(Ed. 01/01)

**Authorized Representative**

**POLICY AMENDATORY ENDORSEMENT - CALIFORNIA**

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy).

This endorsement, effective 12:01 AM  01/01/2006          forms a part of Policy No. WC    124-14-96

Issued to ALTMAN SPECIALTY PLANTS, INC.

By AMERICAN HOME ASSURANCE COMPANY

It is agreed that, anything in the policy to the contrary notwithstanding, such insurance as is afforded by this policy by reason of the designation of California in Item 3 of the Information Page is subject to the following provisions:

1.  **Minors Illegally Employed -- Not Insured.** This policy does not cover liability for additional compensation imposed on you under Section 4557, Division IV, Labor Code of the State of California, by reason of injury to an employee under sixteen years of age and illegally employed at the time of injury.

2.  **Punitive or Exemplary Damages -- Uninsurable.** This policy does not cover punitive or exemplary damages where insurance of liability therefor is prohibited by law or contrary to public policy.

3.  **Increase in Indemnity Payment -- Reimbursement.** You are obligated to reimburse us for the amount of increase in indemnity payments made pursuant to Subdivision (d) of Section 4650 of the California Labor Code, if the late indemnity payment which gives rise to the increase in the amount of payment is due  less than seven (7) days after we receive the completed claim form from you. You are obligated to reimburse us for any increase in indemnity payment not covered under this policy and will reimburse us for any increase in indemnity payment not covered under the policy when the aggregate total amount of the reimbursement payments paid in a policy year exceeds one hundred dollars ($100).

    If we notify you in writing, within 30 days of the payment, that you are obligated to reimburse us, we will bill you for the amount of increase in indemnity payment and collect it no later than the final audit. You will have 60 days, following notice of the obligation to reimburse, to appeal the decision of the insurer to the  Department of Insurance.

4.  **Application of Policy.** Part One, "Workers Compensation Insurance", A, "How This Insurance Applies", is amended to read as follows:

    This workers compensation insurance applies to bodily injury by accident or disease, including death resulting therefrom. Bodily injury by accident must occur during the policy period. Bodily injury by disease must be caused or aggravated by the conditions of your employment. Your employee's exposure to those conditions causing or aggravating such bodily injury by disease must occur during the policy period.

5.  **Rate Changes.** The premium and rates with respect to the insurance provided by this policy by reason of the designation of California in Item 3 of the Information Page are subject to change if ordered by the Insurance Commissioner of the State of California pursuant to Section 11737 of the California Insurance Code.

6.  **Long Term Policy.** If this policy is written for a period longer than one year, all the provisions of this policy shall apply separately to each consecutive twelve-month period or, if the first or last consecutive period is less than twelve months, to such period of less than twelve months, in the same manner as if a separate policy had been written for each consecutive period.

7.  **Statutory Provision.** Your employee has a first lien upon any amount which becomes owing to you by us on account of this policy, and in the case of your legal incapacity or inability to receive the money and pay it to the claimant, we will pay it directly to the claimant.

It is further agreed that this policy, including all endorsements forming a part thereof, constitutes the entire contract of insurance. No condition, provision, agreement, or understanding not set forth in this policy or such endorsements shall affect such contract or any rights, duties, or privileges arising therefrom.

WC 99 04 07          Countersigned by _____          _____
(Ed. 3/93)
                                                                        **Authorized Representative**

## NOTIFICATION OF LOSS CONTROL SERVICES

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy).

This endorsement, effective 12:01 AM   01/01/2006           forms a part of Policy No. WC    124-14-96

Issued to ALTMAN SPECIALTY PLANTS, INC.

By AMERICAN HOME ASSURANCE COMPANY


Dear Policyholder:

American International Group, Inc. (AIG) is pleased to inform you that as an AIG member company workers' compensation insurance policyholder, loss prevention services are available to you at no additional charge.

AIG Consultants, Inc., a member company of AIG, can assist you in your accident prevention process by:

- Evaluating the adequacy of your Injury and Illness Prevention Program (IIPP);
- Providing accident prevention consultations;
- Evaluating safety management practices;
- Evaluating your illness and injury experience to determine incident causes;
- Providing on-site health and safety surveys which identify reasonably discoverable occupational safety and health hazards within the scope of the survey scheduled;
- Providing industrial hygiene exposure recognition assistance and safety evaluations to assist in detecting physical and chemical hazards of the workplace;
- Development of plans to improve health and safety loss records, including injury and prevention programs;
- Evaluating workplace design, layout and operation, and job site modifications utilizing an ergonomic approach;
- Identifying the need for and assisting with health and safety training; and
- Providing recommendations, where appropriate, to improve your accident prevention program.

If you have any comments or would like to request accident prevention information or assistance, please contact or write to:

> AIG Consultants, Inc.
> 777 South Figueroa St., 14th Floor
> Los Angeles, CA 90017
> Attention: Jim Zanotti
> Phone: (213) 689-3909
> Fax: (213) 689-3558
> Email: Jim.Zanotti@aig.com

Workers' compensation insurance policyholders may register comments about the insurer's loss control consultation services by writing to: State of California, Department of Industrial Relations, Division of Occupational Safety and Health, Attention: LCCU, P.O. Box 420603, San Francisco, CA 94142.


WC 99 04 08B
(Ed. 09/02)

POLICYHOLDER NOTICE

CALIFORNIA INSURANCE GUARANTEE ASSOCIATION (CIGA) SURCHARGE

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy).

This endorsement, effective 12:01 AM  01/01/2006         forms a part of Policy No. WC    124-14-96

Issued to ALTMAN SPECIALTY PLANTS, INC.

By AMERICAN HOME ASSURANCE COMPANY

Companies writing property and casualty insurance business in California are required to participate in the California Insurance Guarantee Association. If a company becomes insolvent, the California Insurance Guarantee Association settles unpaid claims and assesses each insurance company for its fair share.

California law requires all companies to surcharge policies to recover these assessments. If your policy is surcharged, "CA Surcharge" or "CA Surcharge (CIGA) Surcharge)" with an amount will be displayed on your premium notice.

This notice does not change the policy to which it is attached.

PN049904
**WC 99 04 09**
(Ed. 12/01)                         Countersigned by _____

©2001 by the Workers' Compensation Insurance Rating Bureau of California. All rights reserved.         **Authorized Representative**

## POLICYHOLDER NOTICE

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy).

This endorsement, effective 12:01 AM  01/01/2006         forms a part of Policy No. WC     124-14-96

Issued to ALTMAN SPECIALTY PLANTS, INC.

By AMERICAN HOME ASSURANCE COMPANY

## CALIFORNIA WORKERS' COMPENSATION
## INSURANCE RATING LAWS

Pursuant to Section 11752.8 of the California Insurance code, we are providing you with an explanation of the California workers' compensation rating laws.

1.  We establish our own rates for workers' compensation.  Our rates, rating plans, and related information are filed with the insurance commissioner and are open for public inspection.

2.  The insurance commissioner can disapprove our rates, rating plans, or classifications only if he or she has determined after public hearing that our rates might jeopardize our ability to pay claims or might create a monopoly in the market.  A monopoly is defined by law as a market where one insurer writes 20% or more of that part of the California workers' compensation insurance that is not written by the State Compensation Insurance Fund.  If the insurance commissioner disapproves our rates, rating plans, or classifications, he or she may order an increase in the rates applicable to outstanding policies.

3.  Rating organizations may develop pure premium rates that are subject to the insurance commissioner's approval.  A pure premium rate reflects the anticipated cost and expenses of claims per $100 of payroll for a given classification.  Pure premium rates are advisory only, as we are not required to use the pure premium rates developed by any rating organization in establishing our own rates.

4.  We must adhere to a single, uniform experience rating plan.  If you are eligible for experience rating under the plan, we will be required to adjust your premium to reflect your claim history.  A better claim history generally results in a lower experience rating modification; more claims, or more expensive claims, generally result in a higher experience rating modification.  The uniform experience rating plan, which is developed by the insurance rating organization designated by the insurance commissioner, is subject to approval by the insurance commissioner.

5.  A standard classification system, developed by the insurance rating organization designated by the insurance commissioner, is subject to approval by the insurance commissioner.  The standard classification system is a method of recognizing and separating policyholders into industry or occupational groups according to their similarities and/or differences.  We can adopt and apply the standard classification system or develop and apply our own classification system, provided we can report the payroll, expenses, and other costs of claims in a way that is consistent with the uniform statistical plan or the standard classification system.

6.  Our rates and classifications may not violate the Unruh Civil Rights Act or be unfairly discriminatory.

PN049902B
WC 89 04 10
(Ed. 05/02)
© 2002 by the Workers' Compensation Insurance Rating Bureau of California. All rights reserved.

7. We will provide an appeal process for you to appeal the way we rate your insurance policy. The process requires us to respond to your written appeal within 30 days. If you are not satisfied with the result of your appeal, you may appeal our decision to the insurance commissioner.

## CALIFORNIA WORKERS' COMPENSATION
## NOTICE OF NONRENEWAL

Section 11664 of the California Insurance code requires us, in most instances, to provide you with a notice of nonrenewal. Except as specified in paragraphs 1 through 6 below, if we elect to nonrenew your policy, we are required to deliver or mail to you a written notice stating the reason or reasons for the nonrenewal of the policy. The notice is required to be sent to you no earlier than 120 days before the end of the policy period and no later than 30 days before the end of the policy period. If we fail to provide you the required notice, we are required to continue the coverage under the policy with no change in the premium rate until 60 days after we provide you with the required notice.

We are not required to provide you with a notice of nonrenewal in any of the following situations:

1. Your policy was transferred or renewed without a change in its terms or conditions or the rate on which the premium is based to another insurer or other insurers who are members of the same insurance group as us.

2. The policy was extended for 90 days or less and the required notice was given prior to the extension.

3. You obtained replacement coverage or agreed, in writing, within 60 days of the termination of the policy, to obtain that coverage.

4. The policy is for a period of no more than 60 days and you were notified at the time of issuance that it may not be renewed.

5. You requested a change in the terms or conditions or risks covered by the policy within 60 days prior to the end of the policy period.

6. We made a written offer to you to renew the policy at a premium rate increase of less than 25 percent.

(A) If the premium rate in your governing classification is to be increased 25 percent or greater and we intend to renew the policy, we shall provide a written notice of a renewal offer not less than 30 days prior to the policy renewal date. The governing classification shall be determined by the rules and regulations established in accordance with California Insurance Code Section 11750.3(c).

(B) For purposes of this Notice, "premium rate" means the cost of insurance per unit of exposure prior to the application of individual risk variations based on loss or expense considerations such as scheduled rating and experience rating.

This notice does not change the policy to which it is attached.

PN049902B
WC 99 04 10
(Ed. 05/02)                    Countersigned by _____          _____

© 2002 by the Workers' Compensation Insurance Rating Bureau of California. All rights reserved.

Authorized Representative

## CALIFORNIA ADVANCE NOTICE OF CANCELLATION OR NON-RENEWAL BY US EXTENDED

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy).

This endorsement, effective 12:01 AM  01/01/2006          forms a part of Policy No. WC    124-14-96

Issued to ALTMAN SPECIALTY PLANTS, INC.

By AMERICAN HOME ASSURANCE COMPANY

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

### WORKERS COMPENSATION AND EMPLOYERS LIABILITY INSURANCE POLICY

**PART SIX - CONDITIONS, D. - Cancellation, 2.** is deleted in its entirety and replaced with:

We may cancel or non-renew this policy. We will mail or deliver to you not less than 10 days advance written notice of cancellation for reasons (a) through (g) and 30 days advance written notice of cancellation for reasons (h) through (m) of California Cancellation Endorsement WC990017. We will mail or deliver to you not less than 30 days and not more than 120 days advance written notice of non-renewal.

Except for non-payment of premium and non-payment of loss reimbursement or non-delivery of satisfactory security or collateral when due, for which we will provide advance written notice in accordance with the provisions of any applicable statute or regulation, we shall not provide less than the number of days set forth below.

Mailing that notice to you, at your mailing address shown in Item 1 of the Information Page will be sufficient to prove notice.

Cancellation:  60   Days

Non-Renewal: 60   Days

WC 99 04 11              Countersigned by _____
(Ed. 08/03)

**Authorized Representative**

-132-

## POLICYHOLDER NOTICE

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy).

This endorsement, effective 12:01 AM  01/01/2006          forms a part of Policy No. WC    124-14-96

Issued to ALTMAN SPECIALTY PLANTS, INC.

By AMERICAN HOME ASSURANCE COMPANY

### YOUR RIGHT TO RATING AND DIVIDEND INFORMATION

**I.   INFORMATION AVAILABLE TO YOU**

    **A.   Information Available from Us - AMERICAN HOME ASSURANCE COMPANY**

        (1) General questions regarding your policy should be directed to AIG, Dana Shioji, 777 S. Figueroa Street, Los Angeles, CA  90017, fax 213-689-3515.

        (2) **DIVIDEND CALCULATION.** If this is a participating policy (a policy on which a dividend may be paid), upon payment or non-payment of a dividend, we shall provide a written explanation to you that sets forth the basis of the dividend calculation.  The explanation will be in clear, understandable language and will express the dividend as a dollar amount and as a percentage of the earned premium for the policy year on which the dividend is calculated.

        (3) **CLAIMS INFORMATION.**  Pursuant to Sections 3761 and 3762 of the California Labor Code, you are entitled to receive information in our claim files that affects your premium.  Copies of documents will be supplied at your expense during reasonable business hours.

        For claims covered under this policy, we will estimate the ultimate cost of unsettled claims for statistical purposes eighteen months after the policy becomes effective and will report those estimates to the Workers' Compensation Insurance Rating Bureau of California (WCIRB) no later than twenty months after the policy becomes effective.  The cost of any settled claims will also be reported at that time.  At twelve-month intervals thereafter, we will update and report to the WCIRB the estimated cost of any unsettled claims and the actual final cost of any claims settled in the interim.  The amounts we report will be used by the WCIRB to compute your experience modification if you are eligible for experience rating.

    **B.   Information Available from the Workers' Compensation Insurance Rating Bureau of California**

        (1) The WCIRB is a licensed rating organization and the California Insurance Commissioner's designated statistical agent.   As such, the WCIRB is responsible for administering the *California Workers' Compensation Uniform Statistical Reporting Plan - 1995* (USRP) and the *California Workers' Compensation Experience Rating Plan - 1995* (ERP).  Contact information for the WCIRB is:  WCIRB, 525 Market Street, Suite 800, San Francisco, California 94105-2767, Attention: Customer Service.  You may also contact WCIRB Customer Service at 1-888-229-2472, by fax at 415-778-7272, or via the Internet at the WCIRB's website: http://www.wcirbonline.org.   The regulations contained in the USRP and the ERP are available for public viewing through the WCIRB's website.

        (2) **POLICYHOLDER INFORMATION.**  Pursuant to California Insurance Code (CIC) Section 11752.6, upon written request, you are entitled to information relating to loss experience, claims, classification assignments, and policy contracts as well as rating plans, rating systems, manual rules, or other information impacting your premium that is maintained in the records of the WCIRB.  Complaints and Requests for Action requesting policyholder information should be forwarded to:  WCIRB, 525 Market Street, Suite 800, San Francisco, California 94105-2767, Attention: Custodian of Records.  The Custodian of Records can be reached by telephone at 415-777-0777 and by fax at 415-778-7272.

PN049901C
**WC 99 04 13A**
(Ed. 04/04)
© 2004 by the Workers' Compensation Insurance Rating Bureau of California.  All rights reserved.

## II. DISPUTE PROCESS

You may dispute our actions or the actions of the WCIRB pursuant to CIC Sections 11737 and 11753.1.

### A  Our Dispute Resolution Process.

If you are aggrieved by our decision adopting a change in a classification assignment that results in increased premium, or by the application of our rating system to your workers' compensation insurance, you may dispute these matters with us.  If you are dissatisfied with the outcome of the initial dispute with us, you may send us a written Complaint and Request for Action as outlined below.

You may send us a written Complaint and Request for Action, requesting that we reconsider a change in a classification assignment that results in an increased premium and/or requesting that we review the manner in which our rating system has been applied in connection with the insurance afforded or offered you.  Written Complaints and Requests for Action should be forwarded to: AIG, Dana Shioji, 777 S. Figueroa Street, Los Angeles, CA 90017, fax 213-689-3515, Dana.Shioji@aig.com.

After you send your Complaint and Request for Action, we have 30 days to send you a written notice indicating whether or not your written request will be reviewed.  If we agree to review your request, we must conduct the review and issue a decision granting or rejecting your request within 60 days after sending you the written notice granting review.  If we decline to review your request, if you are dissatisfied with the decision upon review, or if we fail to grant or reject your request or issue a decision upon review, you may appeal to the insurance commissioner as described in paragraph II.C., below.

### B.  Disputing the Actions of the WCIRB.

If you have been aggrieved by any decision, action, or omission to act of the WCIRB, you may request, in writing, that the WCIRB reconsider its decision, action, or omission to act.  You may also request, in writing, that the WCIRB review the manner in which its rating system has been applied in connection with the insurance afforded or offered you.  For requests related to classification disputes, the reporting of experience, or coverage issues, your initial request for review must be received by the WCIRB within 12 months after the expiration date of the policy to which the request for review pertains, except if the request involves the application of the Revision of Losses rule.  For requests related to your experience modification, your initial request for review must be received by the WCIRB within 6 months after the issuance, or 12 months after the expiration date, of the experience modification to which the request for review pertains, whichever is later, except if the request for review involves the application of the Revision of Losses rule.  If the request involves the Revision of Losses rule, the time to state your appeal may be longer. (See Section VI, Rule 14 of the ERP).

You may commence the review process by sending the WCIRB a written Inquiry.  Written Inquiries should be sent to:  WCIRB, 525 Market Street, Suite 800, San Francisco, California 94105-2767, Attention: Customer Service.  Customer Service can be reached by telephone at 1-888-229-2472, and by fax at 415-778-7272.

If you are dissatisfied with the WCIRB's decision upon an Inquiry, or if the WCIRB fails to respond within 90 days after receipt of the Inquiry, you may pursue the subject of the Inquiry by sending the WCIRB a written Complaint and Request for Action.  After you send your Complaint and Request for Action, the WCIRB has 30 days to send you written notice indicating whether or not your written request will be reviewed.  If the WCIRB agrees to review your request, it must conduct the review and issue a decision granting or rejecting your request within 60 days after sending you the written notice granting review.  If the WCIRB declines to review your request, if you are dissatisfied with the decision upon review, or if the WCIRB fails to grant or reject your request or issue a decision upon review, you may appeal to the insurance commissioner as described in paragraph II.C., below.  Written Complaints and Requests for Action should be forwarded to:  WCIRB, 525 Market Street, Suite 800, San Francisco, California 94105-2767, Attention: Complaints and Reconsiderations. The WCIRB's telephone number is 1-888-229-2472, and the fax number is 415-371-5204.

### C.  California Department of Insurance - Appeals to the Insurance Commissioner.

If, after you follow the appropriate dispute resolution process described above, we or the WCIRB decline to review your request, if you are dissatisfied with the decision upon review, or if we or the WCIRB fail to grant or reject your request or issue a decision upon review, you may appeal to the insurance commissioner pursuant to the CIC Section 11737, 11752.6, 11753.1 and Title 10, California Code of Regulations, Section 2509.40 et seq.  You must file your appeal within 30 days after we or the WCIRB send you the notice rejecting review of your Complaint and Request for Action or the decision upon your Complaint and Request for Action.  If no written decision regarding your Complaint and Request for Action is sent, your appeal must be filed within 120 days after you

PN049901C
**WC 89 04 13A**
**(Ed. 04/04)**
© 2004 by the Workers' Compensation Insurance Rating Bureau of California. All rights reserved.

Page 2 of 3

sent your Complaint and Request for Action to us or to the WCIRB. The filing address for all appeals to the insurance commissioner is:

> Administrative Hearing Bureau
> California Department of Insurance
> 45 Fremont Street, 22nd Floor
> San Francisco, California 94105

You have the right to a hearing before the insurance commissioner, and our action, or the action of the WCIRB, may be affirmed, modified, or reversed.

## III. RESOURCE AVAILABLE TO YOU IN OBTAINING INFORMATION AND PURSUING DISPUTES

A. **Policyholder Ombudsman.**   Pursuant to California Insurance Code Section 11752.6, a policyholder ombudsman is available at the WCIRB to assist you in obtaining and evaluating the rating, policy, and claims information referenced in I.A. and I.B., above. The ombudsman may advise you on any dispute with us, the WCIRB, or on an appeal to the insurance commissioner pursuant to Section 11737 of the Insurance Code. The address of the policyholder ombudsman is WCIRB, 525 Market Street, Suite 800, San Francisco, California 94105-2767, Attention: Policyholder Ombudsman. The policyholder ombudsman can be reached by telephone at 415-777-0777 and by fax at 415-778-7007.

B. **California Department of Insurance - Information and Assistance.**   Information and assistance on policy questions can be obtained from the Department of Insurance Consumer HOTLINE, 1-800-927-HELP (4357) or http://www.insurance.ca.gov.   For questions and correspondence regarding appeals to the Administrative Hearing Bureau, see the contact information in paragraph II.C.

This notice does not change the policy to which it is attached.

PN049901C
**WC 99 04 13A**
**(Ed. 04/04)**                    Countersigned by _____

© 2004 by the Workers' Compensation Insurance Rating Bureau of California. All rights reserved.

Page 3 of 3

**Authorized Representative**

## VOLUNTARY FOREIGN COVERAGE ENDORSEMENT

### CALIFORNIA ONLY

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy).

This endorsement, effective 12:01 AM  01/01/2006          forms a part of Policy No. WC    124-14-96

Issued to ALTMAN SPECIALTY PLANTS, INC.

By AMERICAN HOME ASSURANCE COMPANY

### Section 1. Employees Covered

A.  This coverage applies only to employees you hire within the limits of the United States of America while they are traveling or temporarily residing outside the United States of America, its territories or possessions or Canada for a period no longer than ninety days.

B.  This insurance does not apply to any employees you hire outside the limits of the United States of America.

### Section 2. How This Insurance Applies

This insurance applies only to bodily injury by accident or to bodily injury by disease.  Bodily injury includes resulting death.  Bodily injury includes any endemic disease.

A.  An employee included in the group of employees described in Item 1 of the Schedule of this endorsement must sustain the bodily injury, and

B.  The bodily injury must occur in the course of employment necessary or incidental to work in a state, country or subdivision of a country listed in Item 1 of the Schedule of this endorsement, and

C.  Bodily injury by accident must occur during the policy period, or

D.  The conditions of your workplace must cause or aggravate the bodily injury by disease.  The employee's last day of last exposure to those conditions of your workplace must occur during the policy period.

### Section 3. Exclusions

This insurance does not cover:

A.  Bodily injury arising from any direct or indirect consequence of war, invasion, act of foreign enemy, hostilities (whether war is declared or not), civil war, rebellion, revolution, insurrection or military or usurped power.  No current or subsequent endorsement to this policy will override or waive this limitation.

B.  Compensation or benefits imposed by any nonoccupational, disability benefits law, plan or any similar law or plan.

C.  Bodily injury you intentionally cause or aggravate.

### Section 4. Voluntary Workers Compensation

This endorsement amends Section A of Part One of the policy by adding the following coverage:

The coverage afforded under this section is in addition to the coverages afforded in the policy.  The terms and conditions set forth in this endorsement do not in any way limit or restrict the coverage afforded by Part One, Part Two, or Part Three of the policy.

On your behalf, we will voluntarily pay an amount equal to the benefits you would be required to pay if you and the employees described in Item 1 of the Schedule were subject to the workers compensation law designated in Item 1 of the Schedule of this endorsement.

We will pay those amounts to the persons who would be entitled to them under the law.  If this is not possible, we will reimburse you for amounts you are required to pay.

**WC 99 04 22**
**(Ed. 10/05)**

The following provisions apply to this insurance:

A. In no event will our liability under this section exceed the amount we or you would have been obligated to pay if the employment and injury had been subject to the workers compensation law designated in Item 1 of the Schedule of this endorsement. The only exception to this is as provided for in Section 6-Excess Repatriation Expenses.

B. We have the option to request you to pay sums due directly to persons entitled to them on our behalf. We will reimburse you for these payments when you provide us with satisfactory proof of payment.

C. Before we are required to make any payment or reimburse you, the persons entitled or paid must:

   i) Release you and us in writing from all responsibility for the bodily injury or death.

   ii) Transfer to us their right to recover from others who may be responsible for the injury or death to the extent of our payment or reimbursement.

   iii) Cooperate with us and do everything necessary to enable us to enforce the right to recover from others.

   If a person entitled to payment under this section refuses to accept voluntary payments offered, we may, at our discretion, withdraw the offer to pay compensation benefits. If this happens, we will notify you and the employee that we will no longer be bound by the provisions in this section.

D. Under this or any other policy we have issued to you, it is possible that the provisions of a workers compensation law, plan or any similar law or plan may hold you or us legally liable for any injury where payments have been made or would otherwise be made under Section 4 of this endorsement. If this happens, we agree that we will make no further payments under Section 4 if Section 5 of this endorsement applies.

### Section 5. Legal Liability Under Workers Compensation Law

A. If benefits are payable under a workers compensation or occupational disease law of any state, country or subdivision of a country other than the United States of America, its territories or possessions or Canada, we will reimburse you up to but not in excess of the cost of benefits which would have been payable under the workers compensation law of the state designated in Item 1 of the Schedule of this endorsement.

B. We will not be liable for any loss for which you had other valid and collectible insurance.

C. We assume no obligation to defend any suit or proceeding against you outside the United States of America, its territories or possessions or Canada.

D. The coverage this Section 5 affords does not cover fines or penalties imposed on you for failure to comply with the requirements of any workers compensation or occupational disease law of any state, country or subdivision of a country.

### Section 6. Excess Repatriation Expenses

This section only applies to coverage provided for in Section 4 and 5 of this endorsement.

Medical expenses include additional expenses of repatriation to the United States of America incurred as a result of bodily injury to employees. In the event an employee is injured, our liability is limited to the amount by which these expenses exceed the normal cost of returning the employee. In the event of an employee's death, our liability is limited to the amount by which the expenses of returning the body exceed the normal cost of returning an employee who is alive and in good health.

Our liability will never exceed the amount indicated in Item 2 of the Schedule of this endorsement for one covered employee or accident.

The policy does not afford coverage for repatriation expenses unless a specific limit of liability for each covered employee and accident appears in Item 2 of the Schedule of this endorsement.

### Section 7. Employers Liability

This endorsement amends Section B of Part Two - Employers Liability of this policy by adding the following coverage:

We will also pay on your behalf all sums which you become legally obligated to pay as damages because of bodily injury by accident or disease, including resulting death, sustained in any state or country or subdivision of a country other than

**WC 99 04 22**
**(Ed. 10/05)**

Page 2 of 4

the United States of America, its territories or possessions, or Canada by any of your employees arising out of and in the course of employment by you.

The following provisions apply to Section 7 of this endorsement:

A. We will reimburse you for all reasonable expenses you incur including attorneys' fees in defending any suit against you alleging injury and seeking damages on account of any insurance this section of this endorsement affords. We assume no obligation to defend any suit or any proceeding brought against you outside of the United States of America, its territories or possessions or Canada.

B. The limit of our liability under Part Two will be in accordance with the following provisions.

The words "damages because of bodily injury by accident or disease, including death at any time resulting therefrom," in Part Two include damages for care and loss of services. These words also include damages for which you are liable because of suits or claims others bring against you to recover the damages obtained from such others because of bodily injury your employees sustain arising out of and in the course of their employment.

The limit of liability in Item 3 of the Schedule of this endorsement which applies to bodily injury by accident is the total limit of our liability for all damages because of bodily injury by accident including resulting death that one or more employees sustain.

The limit of liability in Item 3 of the Schedule of this endorsement which applies to bodily injury by disease is the total limit of our liability for all damages because of bodily injury by disease including resulting death that one or more employees sustain in any one state, country or subdivision of a country outside the United States, its territories or possessions or Canada listed in Item 1 of the Schedule of this endorsement.

The limits of liability designated in this endorsement supersede and are not cumulative with any limit(s) of liability elsewhere in the policy. The inclusion of more than one insured does not increase the limits of our liability.

### Section 8. Premium

In addition to the provisions of Part V of the policy, the following provisions will apply to this endorsement:

A. We will compute the premium for this coverage in accordance with Part V of the policy, upon all remuneration paid to employees while traveling or temporarily residing outside the United States of America, its territories or possessions or Canada for the period no longer than ninety days. Remuneration includes overtime, bonuses and cash allowances for cost of living and board and lodging.

B. We will determine the premium for this coverage on the basis of the workers compensation rules, classifications and rates in accordance with the manuals we use for the state workers compensation law designated in Item 1 of the Schedule of this endorsement.

C. You must maintain payroll records for any employees covered by the provisions of this endorsement.

### Section 9. Other Insurance

The following provision replaces Section E of Part One and Section F of Part Two of the policy with respect to the coverage this endorsement provides.

This insurance for a loss covered by this endorsement will be excess insurance over and above any other insurance except with respect to insurance provided under Section 5. The limits of liability for this insurance will be reduced by an amount equal to the limits of liability other insurance affords.

**WC 99 04 22**
(Ed. 10/05)

Page 3 of 4

-138-

Schedule

1. Name(s) of
   Employee

   ALL OFFICERS AND EMPLOYEES
   WHILE STATIONED OR TRAVELING
   OUTSIDE OF THE USA, ITS TERRI-
   TORIES AND POSSESSIONS, EXCEPT
   MASTERS AND MEMBERS OF THE
   CREW OF ANY VESSEL.

   State or Country
   of Operations

   ANYWHERE IN THE
   WORLD, INCLUDING
   INTERNATIONAL WATERS
   OR AIRSPACE, BUT
   EXCLUDING THE USA
   (INCLUDING ITS
   TERRITORIES AND
   POSSESSIONS) AND
   PUERTO RICO AND
   THOSE COUNTRIES

   Designated Workers
   Compensation Law

   CALIFORNIA

2. Limits of Liability For Excess Repatriation Expenses

   $ 25,000      each employee
   $ 25,000      each accident

3. Limits of Liability for Part Two-Employers Liability

   Bodily Injury
   By Accident

   $ 1,000,000

   Bodily Injury
   By Disease

   $ 1,000,000      policy limit
   $ 1,000,000      each employee

4. Premium

| State of Designated Workers Compensation Law | Premium Basis Estimated Total Annual Remuneration | Rates Per $100 of Remuneration | Advance Premiums |
|---|---|---|---|
| CALIFORNIA | INCLUDED WITH REMUNERATION IN THE STATE OF REGULAR EMPLOYMENT. | INCLUDED IN THE STATE OF REGULAR EMPLOY- MENT. | INCLUDED IN THE STATE OF REGULAR EMPLOYMENT. |

Total Advance Premium INCLUDED

CONTINUED NEXT PAGE

WC 99 04 22
(Ed. 10/05)

Countersigned by _____

Page 4 of 4

Authorized Representative

-139-

## BROAD FORM VOLUNTARY FOREIGN COVERAGE ENDORSEMENT

### CALIFORNIA ONLY

This endorsement, effective 12:01 AM 01/01/2006

Forms a part of policy no.: WC   124-14-96

Issued to: ALTMAN SPECIALTY PLANTS, INC.

By: AMERICAN HOME ASSURANCE COMPANY

### Schedule (continued)

| 1. | Name(s) of Employee | State or Country of Operations | Designated Workers Compensation Law |
|----|---------------------|-------------------------------|-------------------------------------|
|    |                     | AGAINST WHICH THE OFFICE OF FOREIGN ASSETS CONTROL OF THE U.S. DEPARTMENT OF THE TREASURY ADMINISTERS AND ENFORCES ECONOMIC AND TRADE SANCTIONS. | |

4. Premium

| State of Designated Workers Compensation Law | Premium Basis Estimated Total Annual Remuneration | Rates Per $100 of Remuneration | Advance Premiums |
|---------------------------------------------|--------------------------------------------------|-------------------------------|------------------|
| | | | |

**WC 99 04 22CONT**
**(Ed. 10/05)**

Countersigned by _____

*[signature]*

**Authorized Representative**

-140-

PAGE 1

## ENDORSEMENT

This endorsement, effective 12:01 AM 01/01/2006

Forms a part of policy no.: WC     124-14-96

Issued to: ALTMAN SPECIALTY PLANTS, INC.

By: AMERICAN HOME ASSURANCE COMPANY

| LOC NO. | NAME AND ADDRESS SCHEDULE | FEIN | UI # |
|---------|---------------------------|------|------|
| 0001 | ALTMAN SPECIALTY PLANTS, INC.<br>2372 TAMARA LANE<br>SAN MARCOS, CA 92069-0000<br>BUSINESS TYPE: CORPORATION | 330494942 | |
| 0002 | ALTMAN SPECIALTY PLANTS, INC.<br>3361 VALLEY PASEO<br>SAN MARCOS, CA 92069-0000<br>BUSINESS TYPE: CORPORATION | 330494942 | |
| 0003 | ALTMAN SPECIALTY PLANTS, INC.<br>553 BUENA CREEK ROAD<br>SAN MARCOS, CA 92069-0000<br>BUSINESS TYPE: CORPORATION | 330494942 | |
| 0004 | ALTMAN SPECIALTY PLANTS, INC.<br>3742 BLUE BIRD CANYON RD.<br>VISTA, CA 92084-0000<br>BUSINESS TYPE: CORPORATION | 330494942 | |
| 0005 | ALTMAN SPECIALTY PLANTS, INC.<br>2124 EDGEHILL ROAD<br>VISTA, CA 92084-0000<br>BUSINESS TYPE: CORPORATION | 330494942 | |
| 0006 | ALTMAN SPECIALTY PLANTS, INC.<br>949 LA RUEDA<br>VISTA, CA 92084-0000<br>BUSINESS TYPE: CORPORATION | 330494942 | |
| 0007 | ALTMAN SPECIALTY PLANTS, INC.<br>1974 FRIENDLY DRIVE<br>VISTA, CA 92084-0000<br>BUSINESS TYPE: CORPORATION | 330494942 | |
| 0008 | ALTMAN SPECIALTY PLANTS, INC.<br>2020 EDGEHILL ROAD<br>VISTA, CA 92084-0000<br>BUSINESS TYPE: CORPORATION | 330494942 | |
| 0009 | ALTMAN SPECIALTY PLANTS, INC.<br>20460 SPENCE ROAD<br>SALINAS, CA 93908-0000<br>BUSINESS TYPE: CORPORATION | 330494942 | |

CONTINUED NEXT PAGE

Issue Date: 05/12/06

WC990610 (Ed. 1-97)

## LARGE RISK RATING PLAN ENDORSEMENT

### Section 2. Schedule of Premium Adjustments

A. The estimated *Final Premium* is shown in Section 9, Item C of PART II. We will recalculate the estimated *Final Premium* as soon as practicable after the First Valuation Date shown in Section 5 of PART II. We will recalculate the estimated *Final Premium* annually thereafter until you and we agree in writing that no more recalculations will be done.

B. Additional premium due us, or return premium due you, resulting from the calculation or recalculation of the *Final Premium*, will be payable in its entirety promptly unless otherwise specified in a premium finance agreement between you and us.

### Section 3. Expected Total Cost

In addition to *Final Premium*, you may be liable under the terms of the policies for reimbursements of certain losses and *Allocated Loss Adjustment Expenses* we pay, subject to any *Minimum Cost* and *Maximum Cost* as described below, and surcharges. Our estimated amounts for such additional costs, if any, are shown in Section 9, Item C of PART II.

A. *Minimum Cost:* If a *Minimum Cost* is applicable, that amount is the minimum you must pay for the *Subject Premium* and, if applicable, *Non-Subject Premium, Reimbursable Losses, Deductible Losses, Self-Insured Losses* and *ALAE* itemized in Section 6 Item A. c. of PART II. Component items not itemized in Section 6, Item A. c. of Part II are not included in the *Minimum Cost.* If an Adjustment Rate and a *Basis* of Adjustment are shown in Section 6, Item A. a. of PART II, the *Minimum Cost* will be determined by multiplying the Adjustment Rate by the actual *Basis* of Adjustment as determined by our final audit of your books and records.

B. *Maximum Cost:* If a *Maximum Cost* is applicable, that amount is the maximum you must pay for *Subject Premium* and, if applicable, *Non-Subject Premium, Reimbursable Losses, Deductible Losses, Self-Insured Losses* and *ALAE* itemized in Section 6 Item B. c. of PART II. Component items not itemized in Section 6, Item B. c. of Part II are not included in the *Maximum Cost.* If an Adjustment Rate and a *Basis* of Adjustment are shown in Section 6, Item B. a. of PART II, the *Maximum Cost* will be determined by multiplying the Adjustment Rate by the actual *Basis* of Adjustment as determined by our final audit of your books and records.

### Section 4. Definitions

A. *"Aggregate Stop Amount"* means the maximum amount of benefits, damages and *ALAE* payable by you for losses under the policies described in Section I of PART II, subject to any *Aggregate Stop Limit.*

B. *"Aggregate Stop Limit"* means the maximum amount of benefits, damages and *ALAE* above the *Aggregate Stop Amount* that we will not require you to reimburse us for under any Loss Reimbursement or Deductible terms of the policies described in Section I of PART II.

C. *"Allocated Loss Adjustment Expenses"* or *"ALAE"* will include all fees for service of process and court costs and court expenses; pre- and post-judgement interest; attorneys' fees; cost of undercover operative and detective services; costs of employing experts; costs for legal transcripts, copies of any public records, and costs of depositions and court-reported or recorded statements; costs and expenses of subrogation; and any similar fee, cost or expense reasonably chargeable to the investigation, negotiation, settlement or defense of a loss or a claim or suit against you, or to the protection and perfection of your or our subrogation rights.

*ALAE* will not include loss adjustment expenses explicitly included in the premium calculation formula of Section 1, Paragraph A, Item 2 of this PART I or otherwise explicitly included in the rating values shown in PART II; nor the salary, employee benefits, or overhead of any of our employees, nor the fees of any attorney who is our employee or under our permanent retainer; nor the fees of any attorney we retain to provide counsel to us about our obligations, if any, under any policy issued by us or our affiliated companies, with respect to a claim or suit against you.

*ALAE* Option selected and shown in Section 3 of PART II is described below.

a. Option A: *Subject Loss* includes all or a part of all *ALAE* such that the *Subject Loss* will not exceed the applicable *Retained Amount.*

b. Option B: *Subject Loss* includes 100% of all *ALAE.*

c. Option C: *Subject Loss* includes all or a part of *ALAE* calculated according to the following formula:

   i. If we incur NO obligation under the policies to pay damages, benefits or indemnity resulting from a claim, *Subject Loss* under that claim will include all *ALAE* up to the applicable *Retained Amount* and a percentage of all *ALAE* in excess thereof. That percentage is shown in Section 3 of PART II under "Option C Excess %"; or

## LARGE RISK RATING PLAN ENDORSEMENT

    ii.   if we DO incur an obligation to pay damages, benefits or indemnity under the policies because of a claim, *Subject Loss* under that claim will include all *ALAE* incurred under that claim, multiplied by the amount of our obligation to pay damages or benefits up to the applicable *Retained Amount*, divided by the total amount of our obligation to pay damages or benefits.

   d.  Option D: *Subject Loss* includes none of the *ALAE*.

D.  *"Basis"* will have the meaning(s) shown in Section 10 of PART II.

E.  *"Deductible Loss"* means any amount that you must reimburse us under a Deductible Endorsement of the policies described in Section I of PART II.

F.  *"Final Premium"* means the premium for the insurance afforded under the policies described in Section 1 of PART II and others as may be added by endorsement thereto, upon its final recalculation according to the terms of the policies and this endorsement. Prior to such final recalculation, the premium for such insurance is only the estimated premium.

G.  *"Incurred Loss"* means the total amount we have paid and have reserved for payment as damages or benefits because of an occurrence, accident, claim or suit, and all the *Allocated Loss Adjustment Expenses* we incur in connection therewith under a policy described in PART II, including reserves for occurrences, accidents, claims or suits that have happened but have not been reported to us and for statistically expected loss development on claims that have been reported to us.

H.  *"Minimum Cost"* means the minimum amount payable by you for the Schedule of *Subject Premium* and *Reimbursable Losses* and *Deductible Losses* and *Self-Insured Losses* and *ALAE*, if applicable, described in Section 6 of PART II.

I.  *"Maximum Cost"* means the maximum amount payable by you for the Schedule of *Subject Premium* and *Reimbursable Losses* and *Deductible Losses* and *Self-Insured Losses* and *ALAE*, if applicable, described in Section 6 of PART II.

J.  *"Non-Subject Premium"* means the premium not subject to the premium calculation of this endorsement.

K.  *"Reimbursable Loss"* means any amount that you must reimburse us under a Loss Reimbursement Endorsement of the policies described in Section I of Part II.

L.  *"Retained Amount"* means:

   1.  the amount that is specified as your Self-Insured Retention or as the Loss Reimbursement amount or Deductible amount applicable to an *Incurred Loss* in the applicable policy; or

   2.  if the foregoing does not apply, the largest part of any damages or benefits paid or payable under a policy because of any single accident, occurrence, claim or suit, that we will include in the computation of the *Subject Premium*.

Such amount is shown in Section 4 of PART II for each type of insurance afforded under the policies described in Section 1 of PART II.

M.  *"Self-Insured Loss"* or *"SIR"* means any loss you incur under a Self-Insured Retention of the policies described in Section I of PART II.

N.  *"Standard Premium"* means the premium as calculated according to the terms of each applicable policy, without application of this Endorsement, subject to the following:

   1.  For Workers Compensation and Employers Liability Insurance, *Standard Premium* means the premium determined on the basis of our rates as approved by regulatory authority, the remuneration of your employees in the coverage period, your Experience Modifications and Schedule Modifications, Loss Constant, and Minimum Premiums. Determination of *Standard Premium* will exclude:

      a.  any discount that recognizes any reduction in our expense ratio based on premium size or other factors; or

      b.  any discount for a Loss Reimbursement or Deductible.

      c.  Expense Constant.

   2.  For all other insurance, *Standard Premium* is the premium as calculated according to the terms of each applicable policy for insurance within the *Retained Amounts*, but without the application of this Endorsement, and without reduction for:

## LARGE RISK RATING PLAN ENDORSEMENT

**Section 4. *Retained Amounts:*** ☒ applicable to all Insureds; or ☐ refer to Extension Schedule

| Kind of Insurance | Retained Amount | Applicable to | Limitations or Descriptions |
|---|---|---|---|
| **Workers Compensation** | | | |
| Workers Compensation and Employers Liability under State Law - Insured States | $500,000 | Each Accident or each Person for Disease | |
| Workers Compensation and Employers Liability under Federal Law - Insured States | $500,000 | Each Accident or each Person for Disease | |
| Workers Compensation and Employers Liability - Self-Insured States | $0 | Each Accident or each Person for Disease | |
| Employers Liability - Monopolistic States | $0 | Each Accident or each Person for Disease | |
| | $0 | Each Accident or each Person for Disease | |
| **Commercial General Liability** | | | |
| Premises, Operations, Personal and Advertising Injury, Medical Payments, or Damage to Property Liability | $0 | Each Occurrence | |
| Products or Completed Operations Liability | $0 | Each Occurrence | |
| [Other] | $0 | Each Occurrence | |
| **Commercial Automobile Liability, including UM/UIM and PIP/No Fault, if any** | | | |
| Automobile Liability | $0 | Each Accident | |
| Garage Liability | $0 | Each Accident | |
| [Other] | $0 | Each Accident | |
| **Combined Kinds Retention** | | | |
| | $0 | Each Occurrence | |

### Section 5. Forecast of *Subject Losses*

We have shown our forecast of your *Subject Losses* below.

a. Reimbursable and deductible portion of covered *Incurred Losses* (except amounts insured under "Deductible Liability Protection" policies, if any, subject to this Endorsement) — $0

b. All other covered *Subject Losses* (including amounts insured under "Deductible Liability Protection" policies, if any, subject to this Endorsement) — $1,300,000

**First Loss Valuation Date:** 07/31/2007 and annually thereafter until all claims are closed or mutually agreed upon as to value.

### Section 6. *Minimum Cost* and *Maximum Cost*

The *Minimum Cost* and *Maximum Cost*, if any, will be applied as explained below.

**Item A. *Minimum Cost:*** ☐ applicable, or ☒ not applicable

Line of Insurance:   None

a. *Minimum Cost*, adjustable on the *Basis* and rate shown below:   $0
  Basis of Adjustment:   None   Per   0
  Estimated *Basis* amount:   $0   Adjustment Rate:   0.0000

## LARGE RISK RATING PLAN ENDORSEMENT

     a. any discount that recognizes any reduction in our expense ratio based on premium size or other factors; or

     b. any discount for a Loss Reimbursement or Deductible.

O. *"Subject Loss"* means the entire *Incurred Loss* (including any reimbursable or deductible portion of it) up to the sum of:

     1. the damages or benefits we must pay or have paid up to the *Retained Amount*, and

     2. all or a part of the *Allocated Loss Adjustment Expenses* we incur in accordance with the *ALAE* Option shown in Section 3 of PART II and defined in Item C of this section.

P. *"Subject Premium"* means the premium subject to retrospective adjustment on the basis described in Section 1, Paragraph A of this PART I.

### Section 5. Exceptions and Changes

All exceptions and changes, if any, to the provisions of PART I , PART II or PART III of this endorsement are set forth in Section 11 of PART II or in a written addendum hereto.

## LARGE RISK RATING PLAN ENDORSEMENT

### PART II. *SCHEDULE* of POLICIES and RATING VALUES

**Section 1. APPLICATION of this Endorsement**

**RATING PERIOD:** This Endorsement applies to the period beginning 01/01/2006 and ending 01/01/2007.

The *Basis* of Premium, *Subject Losses, Self-Insured Losses, Minimum Cost, Maximum Cost*, Minimum Premiums and Estimated Premiums shown in Section 5, Section 6, Section 7 and Section 9 of this PART II are estimated amounts for:

☐ the **first year** of the Rating Period, or ☒ the **entire** Rating Period.

**POLICIES:** ☒ This Endorsement applies to the policies described below, and to their replacements and renewals effective during the Rating Period, or

☐ This Endorsement applies to the policies described below, and to their replacements and renewals, and all subcontractor policies issued under a **Construction Project**. The Construction Project is described as follows:

N/A

a. Workers Compensation and Employers Liability Insurance policies:

**WC 1241496 , WC 1241497 , WC 5728746.**

b. Commercial General Liability Insurance policies:

c. Automobile Liability Insurance policies:

d. Other Insurance policies (described):

**Section 2. Premiums for insurance on risks in states described below will be determined in accordance with the terms of the applicable policy other than this endorsement.**

| Kinds of Insurance | States |
|---|---|
| WC | FL |

**Section 3. *Allocated Loss Adjustment Expenses* Options**

| ALAE Option (enter ALAE Option A, B, C or D as applicable) | If ALAE Option C, enter Excess % | Applies to |
|---|---|---|
| C | 100% | WC 1241496 , WC 5728746 , WC 1241497 . |

00/00/0000 00602 9416069

-146-

PAGE 2

## ENDORSEMENT

This endorsement, effective 12:01 AM 01/01/2006

Forms a part of policy no.: WC    124-14-96

Issued to: ALTMAN SPECIALTY PLANTS, INC.

By: AMERICAN HOME ASSURANCE COMPANY

| LOC NO. | NAME AND ADDRESS SCHEDULE | FEIN | UI # |
|---------|---------------------------|------|------|
| 0010 | ALTMAN SPECIALTY PLANTS, INC.<br>1516 MONTE VISTA DRIVE<br>VISTA, CA 92084-0000<br>BUSINESS TYPE: CORPORATION | 330494942 | |
| 0011 | ALTMAN SPECIALTY PLANTS, INC.<br>712 BUENA CREEK ROAD<br>SAN MARCOS, CA 92079-0000<br>BUSINESS TYPE: CORPORATION | 330494942 | |
| 0012 | ALTMAN SPECIALTY PLANTS, INC.<br>787 CASSOU ROAD<br>SAN MARCOS, CA 92069-0000<br>BUSINESS TYPE: CORPORATION | 330494942 | |
| 0013 | ALTMAN SPECIALTY PLANTS, INC.<br>517 CASSOU ROAD<br>SAN MARCOS, CA 92069-0000<br>BUSINESS TYPE: CORPORATION | 330494942 | |
| 0014 | ALTMAN SPECIALTY PLANTS, INC.<br>718 CASSOU ROAD<br>SAN MARCOS, CA 92079-0000<br>BUSINESS TYPE: CORPORATION | 330494942 | |
| 0015 | ALTMAN SPECIALTY PLANTS, INC.<br>3744 BLUEBIRD CANYON RD.<br>VISTA, CA 92084-0000<br>BUSINESS TYPE: CORPORATION | 330494942 | |
| 0016 | ALTMAN SPECIALTY PLANTS, INC.<br>2008 EDGEHILL ROAD<br>VISTA, CA 92084-0000<br>BUSINESS TYPE: CORPORATION | 330494942 | |
| 0017 | ALTMAN SPECIALTY PLANTS, INC.<br>2056 EDGEHILL ROAD<br>VISTA, CA 92084-0000<br>BUSINESS TYPE: CORPORATION | 330494942 | |
| 0018 | ALTMAN SPECIALTY PLANTS, INC.<br>1021 WEST MISSION AVENUE "C"<br>ESCONDIDO, CA 92029-0000<br>BUSINESS TYPE: CORPORATION | 330494942 | |

CONTINUED NEXT PAGE

Issue Date: 05/12/06

WC990610 (Ed. 1-97)

PAGE 3

## ENDORSEMENT

This endorsement, effective 12:01 AM 01/01/2006

Forms a part of policy no.: WC    124-14-96

Issued to: ALTMAN SPECIALTY PLANTS, INC.

By: AMERICAN HOME ASSURANCE COMPANY

| LOC NO. | NAME AND ADDRESS SCHEDULE | FEIN | UI # |
|---------|---------------------------|------|------|
| 0019 | ALTMAN SPECIALTY PLANTS, INC.<br>SKYLINE DR. AND RUDD RD.<br>VISTA, CA 92084-0000<br>BUSINESS TYPE: CORPORATION | 330494942 | |
| 0020 | ALTMAN SPECIALTY PLANTS, INC.<br>PARCEL 5 OF MAP 10950<br>PERRIS, CA 92570-0000<br>BUSINESS TYPE: CORPORATION | 330494942 | |
| 0021 | ALTMAN SPECIALTY PLANTS, INC.<br>PARCEL 7 OF MAP 16956<br>PERRIS, CA 92570-0000<br>BUSINESS TYPE: CORPORATION | 330494942 | |
| 0022 | ALTMAN SPECIALTY PLANTS, INC.<br>20140 SPENCE ROAD<br>SALINAS, CA 93908-0000<br>BUSINESS TYPE: CORPORATION | 330494942 | |
| 0023 | ALTMAN SPECIALTY PLANTS, INC.<br>20260 SPENCE ROAD<br>SALINAS, CA 93908-0000<br>BUSINESS TYPE: CORPORATION | 330494942 | |
| 0024 | ALTMAN SPECIALTY PLANTS, INC.<br>20200 SPENCE ROAD<br>SALINAS, CA 93908-0000<br>BUSINESS TYPE: CORPORATION | 330494942 | |
| 0025 | ALTMAN SPECIALTY PLANTS, INC.<br>20400 SPENCE ROAD<br>SALINAS, CA 93908-0000<br>BUSINESS TYPE: CORPORATION | 330494942 | |
| 0026 | ALTMAN SPECIALTY PLANTS, INC.<br>20500 SPENCE ROAD<br>SALINAS, CA 93908-0000<br>BUSINESS TYPE: CORPORATION | 330494942 | |
| 0027 | ALTMAN SPECIALTY PLANTS, INC.<br>20510 SPENCE ROAD<br>SALINAS, CA 93908-0000<br>BUSINESS TYPE: CORPORATION | 330494942 | |

CONTINUED NEXT PAGE

Issue Date: 05/12/06

WC990610 (Ed. 1-97)

PAGE 4

## ENDORSEMENT

This endorsement, effective 12:01 AM 01/01/2006

Forms a part of policy no.: WC    124-14-96

Issued to: ALTMAN SPECIALTY PLANTS, INC.

By: AMERICAN HOME ASSURANCE COMPANY

| LOC NO. | NAME AND ADDRESS SCHEDULE | FEIN | UI # |
|---------|---------------------------|------|------|
| 0028 | ALTMAN SPECIALTY PLANTS, INC.<br>2380 ALISAL ROAD<br>SALINAS, CA 93901-0000<br>BUSINESS TYPE: CORPORATION | 330494942 | |
| 0029 | ALTMAN SPECIALTY PLANTS, INC.<br>23940 POTTER ROAD<br>SALINAS, CA 93908-0000<br>BUSINESS TYPE: CORPORATION | 330494942 | |
| 0030 | ALTMAN SPECIALTY PLANTS, INC.<br>22750 FUJI LANE<br>SALINAS, CA 98908-0000<br>BUSINESS TYPE: CORPORATION | 330494942 | |
| 0031 | ALTMAN SPECIALTY PLANTS, INC.<br>2038 EDGEHILL ROAD<br>VISTA, CA 92084-0000<br>BUSINESS TYPE: CORPORATION | 330494942 | |

Issue Date: 05/12/06

WC990610 (Ed. 1-97)

Authorized Representative

## LARGE RISK RATING PLAN END ORSEMENT

### PLAN TYPE ONE YEAR

This endorsement changes the policy to which it is attached effective on th ) inception date of the policy unless a different date is indicated below.

*(The following "attaching clause" needs to be completed only when this endorsement is sued subsequent to the preparation of the policy.)*

This Endorsement, effective 12:01 AM 01/01/2006 forms a part of Policy lumber WC 1241496

Issued to **ALTMAN SPECIALTY PLANTS INC**

By **American Home Assurance Company**

### PART I. GENERAL TERMS and C IDITIONS

This endorsement determines the *Final Premium* for the Insurance pro ied during the Rating Period by this policy, any other policy described in this endorsement in Section 1 of PART II nd the renewals and replacements of each (the "policies"). The Rating Period begins and ends at 12:01 AM on the pective dates shown in Section 1 of PART II. If the Plan Type of this endorsement states Construction Project, this enc rsement applies only to, and for the duration of, the construction project described in Section 1 of PART II.

The rates and the basis types described in PART II will remain fixed for duration of the Rating Period, except (if applicable) Section 7 "Claims Service Charges on Fee Basis", Section 8 " xes, Assessments and Surcharges", and any applicable items set forth in Section 11 "Exceptions". These exceptions v be subject to change at each anniversary of the beginning of the Rating Period.

### Section 1. Premium Calculation

The *Final Premium* for the policies will be the sum of the total *Subject Premium* and the total *Non-Subject Premium*. The way that the total *Subject Premium* will be determined is described below and is shown in Section 9, Item A of PART II. The way that the total *Non-Subject Premium* will be determined is described below and is shown in Section 9, Item B of PART II.

A. **Total Subject Premium:** The total *Subject Premium* for the policies will be determined separately by state and kind of insurance. For each state and kind of insurance, the *Subject Premium* will be the sum of *Subject Losses* and the Charges for the Insurance Charge, Expenses and Profit divided by the Tax/Assessment Divisor as determined below.

1. *Subject Losses:* The first part of the *Subject Premium* will be the sum of all *Subject Losses* under any applicable terms of the policies described in Section 1 of PART II and as identified in Section 5, Item A of PART II.

2. *Charges for Insurance Charge, Expenses and Profit:* The second part of the *Subject Premium* will be the component parts of the *Subject Premium* other than *Subject Losses* that are identified as line items in Section 9, Item A of PART II.

   The entire estimated amount of each such charge can be found in Section 9, Item A of PART II subject to any applicable Minimum Premium shown for it.

   We will apportion the entire amount of each such charge to each kind of Insurance and state covered under the policies in proportion to the respective *Standard Premium* of each, except that:

   a. Charges for claims service expenses will be allocated in proportion to respective *Subject Losses*, and

   b. Charges for administrative expenses and profit for the kinds of insurance in the states described in Section 2 of PART II will be the difference between:

      i. the *Final Premium* for such kinds of Insurance and states determined as provided for in the policy other than by this Endorsement, and

      ii. the sum of *Subject Losses*, all other charges for the Insurance Charge, Expenses and Profit included in this Item 2, taxes and assessments determined through the application of the Tax/Assessment Divisor, and *Non-Subject Premiums* for such states.

3. *Tax/Assessment Divisor:* One (1.000) less the Tax/Assessment Rate as shown in Section 9 Item A of PART II. The rate is calculated as indicated in Section 8 of PART II.

B. **Total Non-Subject Premium:** The part of the *Final Premium* for the kinds or layers of insurance described in Section 9, Item B of PART II will be calculated as shown therein. If no *Basis* of premium determination for *Non-Subject Premium* is shown in Section 9, Item B of PART II, the *Non-Subject Premium* will be determined as set forth in the policy under which such insurance is provided.

---

Copyright 2004 American International Group, Inc.

CM-010

,TIO                                                                                          ᵋ 1.

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State bar number, and address)*: | FOR COURT USE ONLY |
|---|---|
| NICHOLAS P. ROXBOROUGH, ESQ. (SBN 113540<br>ERIN M. LaBRACHE, ESQ. (SBN 195655)<br>ROXBOROUGH, POMERANCE & NYE LLP<br>5820 Canoga Avenue, Suite 250<br>Woodland Hills, CA 91367<br>TELEPHONE NO.: (818) 992-9999  FAX NO.: (818) 992-9991<br>ATTORNEY FOR *(Name)*: Plaintiff ALTMAN SPECIALTY PLANTS, INC | **FILED**<br>SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF ORANGE<br>CENTRAL JUSTICE CENTER<br><br>FEB 14 2008<br><br>ALAN SLATER, Clerk of the Court<br><br>BY: D DUNNING , DEPUTY |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE
STREET ADDRESS: 700 Civic Center Drive West
MAILING ADDRESS: same as above
CITY AND ZIP CODE: Santa Ana, CA 92701
BRANCH NAME: CENTRAL JUSTICE CENTER

30-2008

| CASE NAME: Altman Specialty Plants, Inc. v. American Home Assurance Company | |
|---|---|

00102696

| CIVIL CASE COVER SHEET | | Complex Case Designation | CASE NUMBER: |
|---|---|---|---|
| [x] Unlimited<br>(Amount demanded exceeds $25,000) | [ ] Limited<br>(Amount demanded is $25,000 or less) | [ ] Counter  [ ] Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | JUDGE KIRK H. NAKAMURA<br>DEPT. C56 |

*Items 1-6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

| Auto Tort | Contract | Provisionally Complex Civil Litigation<br>(Cal. Rules of Court, rules 3.400-3.403) |
|---|---|---|
| [ ] Auto (22)<br>[ ] Uninsured motorist (46) | [x] Breach of contract/warranty (06)<br>[ ] Rule 3.740 collections (09) | [ ] Antitrust/Trade regulation (03)<br>[ ] Construction defect (10) |
| **Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort** | [ ] Other collections (09)<br>[ ] Insurance coverage (18) | [ ] Mass tort (40)<br>[ ] Securities litigation (28) |
| [ ] Asbestos (04)<br>[ ] Product liability (24) | [ ] Other contract (37)<br>**Real Property** | [ ] Environmental/Toxic tort (30)<br>[ ] Insurance coverage claims arising from the |
| [ ] Medical malpractice (45)<br>[ ] Other PI/PD/WD (23) | [ ] Eminent domain/Inverse condemnation (14) | above listed provisionally complex case types (41) |
| **Non-PI/PD/WD (Other) Tort** | [ ] Wrongful eviction (33)<br>[ ] Other real property (26) | **Enforcement of Judgment** |
| [ ] Business tort/unfair business practice (07)<br>[ ] Civil rights (08) | **Unlawful Detainer** | [ ] Enforcement of judgment (20)<br>**Miscellaneous Civil Complaint** |
| [ ] Defamation (13)<br>[ ] Fraud (16) | [ ] Commercial (31)<br>[ ] Residential (32) | [ ] RICO (27)<br>[ ] Other complaint *(not specified above)* (42) |
| [ ] Intellectual property (19)<br>[ ] Professional negligence (25) | [ ] Drugs (38)<br>**Judicial Review** | **Miscellaneous Civil Petition** |
| [ ] Other non-PI/PD/WD tort (35)<br>**Employment** | [ ] Asset forfeiture (05)<br>[ ] Petition re: arbitration award (11) | [ ] Partnership and corporate governance (21)<br>[ ] Other petition *(not specified above)* (43) |
| [ ] Wrongful termination (36)<br>[ ] Other employment (15) | [ ] Writ of mandate (02)<br>[ ] Other judicial review (39) | |

2. This case [x] is [ ] is not  complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties   d. [x] Large number of witnesses
   b. [x] Extensive motion practice raising difficult or novel   e. [ ] Coordination with related actions pending in one or more courts
      issues that will be time-consuming to resolve                in other counties, states, or countries, or in a federal court
   c. [x] Substantial amount of documentary evidence   f. [ ] Substantial postjudgment judicial supervision
3. Remedies sought *(check all that apply)*: a. [x] monetary b. [x] nonmonetary; declaratory or injunctive relief  c. [x] punitive
4. Number of causes of action *(specify)*:
5. This case [ ] is [x] is not  a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*
Date: February 13, 2008

ERIN M. LaBRACHE, ESQ.
(TYPE OR PRINT NAME)                                                         Erin LaBrache
                                                                   (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

### NOTICE
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 2 o

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

CIVIL CASE COVER SHEET

# SUPERIOR COURT OF CALIFORNIA
## ORANGE COUNTY – CENTRAL JUSTICE CENTER
## CIVIL DEPARTMENT CALENDAR SCHEDULING CHART
Ex Parte applications must comply with California Rules of Court, rules 3.1200 – 3.1207
Court Local Rules are located at www.occourts.org

| Dept. | Judicial Officer | Motion Days and Time | Ex Parte Days and Time | Notice to Courtroom the day before the hearing but no later than: | Application and Proposed Order presented to the court the day before the hearing but no later than: | Rulings posted on Internet? | Other Call for available dates. |
|---|---|---|---|---|---|---|---|
| C56 | NAKAMURA 714-834-4752 | Thursday 9:00 a.m. Effective 02/01/08: Motions will heard heard on Thur. at 2:00 p.m. | M, T, W, Th 1:30 p.m. | 24 hours, the day before the hearing | M, T, W, Th, 10:00 a.m. day of ex parte | Yes - by 4:00 p.m. the day before | Counsel must reserve a motion date with the courtroom, prior to setting the motion. |
| C32 | PERK 714-834-2351 | Friday 11:00 a.m. | M, T, W, Th 9:00 a.m. | 4:00 p.m. | 10:00 a.m. the day of hearing | Yes - by 3:00 p.m. the day before | Teleconference appearances are voluntary and do not require consent by court or other parties. However, the court reserves to right to reject any request. Teleconference appearances are conducted in conformity with the guidelines, which are available by calling CourtCall, LLC at (310)914-7884 or (888) 88-COURT    If there is no appearance for argument, the court will order the tentative ruling to become effective and final the date of the hearing |
| C27 | POLOS 714-834-2287 | Thursday 1:30 p.m. | Daily 9:00 a.m. | Not required | Noon | Yes | Counsel may submit on law and motion tentative without appearance if all parties agree to ruling. |
| W11 | SCHULTE 714-896-7161 | Friday 9:30 a.m. | None | None | None | Yes - by noon day before | Law and motion matters must be reserved with the court clerk. |
| C13 | SIEGEL 714-834-4592 | Monday 10:30 a.m. | Daily 8:30 a.m. | Notice to the Dept prior to noticing opposing parties pursuant to CRC Rule 3.1200-3.1207 | 11:00 a.m. | Yes, by 1:30 p.m. the day before | |
| C25 | WILKINSON 714-834-3720 | Wednesday 1:30 p.m. | M, T, Th 4:00 p.m. Wed. 3:30 p.m.   Friday 11:30 a.m. | 4:00 p.m. | 9:30 a.m. | No | The moving party shall submit on ex parte's moving papers, unless the Court invites oral argument. |

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE

## ALTERNATIVE DISPUTE RESOLUTION (ADR) INFORMATION PACKAGE

**NOTICE TO PLAINTIFF(S) AND/OR CROSS-COMPLAINANT(S):**

**Rule 3.221(c) of the California Rules of Court requires you to serve a copy of the ADR information package along with the complaint and/or cross-complaint.**

California Rules of Court - Rule 3.221
Information about ADR

(a)   Each court shall make available to the plaintiff, at the time of filing of the complaint, an ADR information package that includes, at a minimum, all of the following:

(1) General information about the potential advantages and disadvantages of ADR and descriptions of the principal ADR processes.

(2) Information about the ADR programs available in that court, including citations to any applicable local court rules and directions for contacting any court staff responsible for providing parties with assistance regarding ADR.

(3) In counties that are participating in the Dispute Resolution Programs Act (DRPA), information about the availability of local dispute resolution programs funded under the DRPA. This information may take the form of a list of the applicable programs or directions for contacting the county's DRPA coordinator.

(4) An ADR stipulation form that parties may use to stipulate to the use of an ADR process.

(b)   A court may make the ADR information package available on its Web site as long as paper copies are also made available in the clerk's office.

(c)   The plaintiff must serve a copy of the ADR information package on each defendant along with the complaint. Cross-complainants must serve a copy of the ADR information package on any new parties to the action along with the cross-complaint.

Form No. L1200 (Rev. January 1, 2007)                                                    Page 1 of 4

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE
## Did you know that most civil lawsuits settle without a trial?

### Introduction
And did you know that there are a number of ways to resolve civil disputes without having to sue somebody? These alternatives to a lawsuit are known as alternative dispute resolution (ADR). The most common forms of ADR are mediation, arbitration, and case evaluation. There are a number of other kinds of ADR as well.

In ADR, trained, impartial persons decide disputes or help parties decide disputes themselves. These persons are called neutrals. For example, in mediation, the neutral is the mediator. Neutrals normally are chosen by the disputing parties or by the court. Neutrals can help parties resolve disputes without having to go to court. ADR is not new. ADR is available in many communities, through dispute resolution programs and private neutrals.

### Advantages of ADR
ADR can have a number of advantages over a lawsuit. ADR can be speedier. A dispute often can be resolved in a matter of months, even weeks, through ADR, while a lawsuit can take years. ADR can save money. Court costs, attorney's fees, and expert fees can be saved. ADR can permit more participation. The parties may have more chances to tell their side of the story than in court and may have more control over the outcome. ADR can be flexible. The parties can choose the ADR process that is best for them. For example, in mediation the parties may decide how to resolve their dispute.

ADR can be cooperative. This means that the parties having a dispute may work together with the neutral to resolve the dispute and agree to a remedy that makes sense to them, rather than work against each other. ADR can reduce stress. There are fewer, if any, court appearances. And because ADR can be speedier, and save money, and because the parties are normally cooperative, ADR is easier on the nerves. The parties don't have a lawsuit hanging over their heads for years.

ADR can be more satisfying. For all the above reasons, many people have reported a high degree of satisfaction with ADR. Because of these advantages, many parties choose ADR to resolve a dispute, instead of filing a lawsuit. Even when a lawsuit has been filed, the court can refer the dispute to a neutral before the parties' positions harden and the lawsuit becomes costly. ADR has been used to resolve disputes even after a trial, when the result is appealed.

### Disadvantages of ADR
ADR may not be suitable for every dispute. If ADR is binding, the parties normally give up most court protections, including a decision by a judge or jury under formal rules of evidence and procedure, and review for legal error by an appellate court. There generally is less opportunity to find out about the other side's case with ADR than with litigation. ADR may not be effective if it takes place before the parties have sufficient information to resolve the dispute. The neutral may charge a fee for his or her services. If a dispute is not resolved through ADR, the parties may have to put time and money into both ADR and a lawsuit.

Lawsuits must be brought within specified periods of time, known as statutes of limitation. Parties must be careful not to let a statute of limitations run out while a dispute is in an ADR process.

### Three Common Types of ADR
This pamphlet describes the forms of ADR most often found in the California state courts and discusses when each may be right for a dispute.

### MEDIATION
In mediation, a neutral (the mediator) assists the parties in reaching a mutually acceptable resolution of their dispute. Unlike lawsuits or some other types of ADR, the mediator does not decide how the dispute is to be resolved. The parties do.

Mediation is a cooperative process, in which the parties work together toward a resolution that tries to meet everyone's interests, instead of working against each other, where at least one party loses. Mediation normally leads to better relations between the parties and to resolutions that hold up. For example, mediation has been very successful in family disputes, particularly with child custody and visitation.

Mediation is particularly effective when the parties have a continuing relationship, like neighbors or business people. Mediation also is very effective where personal feelings are getting in the way of a resolution. This is because mediation normally gives the parties a chance to let out their feelings and find out how each other sees things. Mediation may not be a good idea when one party is unwilling to discuss a resolution or when one party has been a victim of the other or cannot have enough bargaining power in the mediation. However, mediation can be successful for victims seeking restitution from offenders. A mediator can meet with the parties separately when there has been violence between them.

## ARBITRATION

In arbitration, a neutral (the arbitrator) reviews evidence, hears arguments, and makes a decision (award) to resolve the dispute. This is very different from mediation, where the mediator helps the parties reach their own resolution. Arbitration normally is more informal and much speedier and less expensive than a lawsuit. Because of the large number of cases awaiting trial in many courts, a dispute normally can be heard much more quickly by an arbitrator than by a judge.

Often a case that may take a week to try in court can be heard by an arbitrator in a matter of hours, because evidence can be submitted by documents (like medical reports and bills and business records), rather than by testimony.

There are two kinds of arbitration in California. Private arbitration, by agreement of the parties involved in the dispute, takes place outside of the courts and, normally, is binding. In most cases "binding" means that the arbitrator's decision (award) is final and there will not be a trial or an appeal of that decision. By contrast, a decision by an arbitrator in a case referred by the courts, known as "judicial arbitration," is not binding, unless the parties agree to be bound. A party who does not like the award may file a request for trial with the court within a specified time. However, if that party does not do better in the trial than in arbitration, he or she may have to pay a penalty.

Arbitration is best for cases where the parties want a decision without the expense of a trial. Arbitration may be better than mediation when the parties have no relationship except for the dispute.

Arbitration may not be a good idea when the parties want to resolve their dispute by themselves, or with the aid of a neutral.

## CASE EVALUATION

In case evaluation, a neutral (the evaluator) gives an opinion on the strengths and weaknesses of each party's evidence and arguments, and makes an evaluation of the case. Each party gets a chance to present the case and hear the other side. This may lead to a settlement, or at least help the parties prepare to resolve the dispute later on.

Case evaluation, like mediation, can come early in the dispute and save time and money.

Case evaluation is most effective when someone has an unrealistic view of the dispute or when the only real issue is what the case is worth, or when there are technical or scientific questions to be worked out.

Case evaluation may not be a good idea when it is too soon to tell what the case is worth or when the dispute is about something besides money, like a neighbor playing loud music late at night.

### Additional Information

There are several other types of ADR beside mediation, arbitration, and case evaluation. Some of these are conciliation, settlement conferences, fact finding, mini-trials, and summary jury trials. Sometimes parties will try a combination of ADR types. The important thing is to try to find the type or types of ADR that are most likely to resolve your dispute.

The selection of a neutral is an important decision. There is no legal requirement that the neutral be licensed or hold any particular certificate. However, some programs have established qualification requirements for neutrals. You may wish to inquire about the qualifications of any neutral you are considering. Agreements reached through ADR normally are put in writing by the neutral and, if the parties wish, may become binding contracts that can be enforced by a judge. You may wish to seek the advice of an attorney as to your legal rights and other matters relating to the dispute.

### Whom Do You Call?

To locate a dispute resolution program or neutral in your community:
Contact the California Department of Consumer Affairs, Consumer Information Center, toll free, 1-800-952-5210, or contact the local bar association, or look in the Yellow Pages under "Arbitrators" or "Mediators."

For more information on local Arbitration Programs, please phone 714/834-3774 (for court ordered arbitration only) or refer to Superior Court of California, County of Orange, Local Rules 360 and 446.

Free mediation services are provided under the Orange County Dispute Resolution Program Act (DRPA). For information regarding DRPA, phone: Institute for Conflict Management (714) 288-5600; Community Service Programs, Inc. (949) 851-3168; Orange County Human Relations (714) 834-7198; or Fair Housing Council of Orange County (714) 569-0827.

**There may be a charge for services provided by private arbitrators and mediators.**
*Presented by the Judicial Council of California and the State Bar of California - March 1998*

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE | FOR COURT USE ONLY |
|---|---|
| JUSTICE CENTER:<br>☐ Central - 700 Civic Center Dr. West, Santa Ana, CA 92701-4045<br>☐ Civil Complex Center - 751 W. Santa Ana Blvd., Santa Ana, CA 92701-4512<br>☐ Harbor-Laguna Hills Facility - 23141 Moulton Pkwy., Laguna Hills, CA 92653-1251<br>☐ Harbor-Newport Beach Facility - 4601 Jamboree Rd., Newport Beach, CA 92660-2595<br>☐ North - 1275 N. Berkeley Ave., P. O. Box 5000, Fullerton, CA 92838-0500<br>☐ West - 8141 13th Street, Westminster, CA 92683-4593 | |

| PLAINTIFF:<br><br>DEFENDANT: | |
|---|---|
| **ALTERNATIVE DISPUTE RESOLUTION (ADR) STIPULATION** | CASE NUMBER: |

Plaintiff(s), _____

_____

and defendant(s), _____

_____

agree to the following dispute resolution process:

☐ Mediation

☐ Arbitration (must specify code)
      ☐ Under Section 1141.11 of the Code of Civil Procedure
      ☐ Under Section 1280 of the Code of Civil Procedure

☐ Neutral Case Evaluation

☐ Other (specify): _____

☐ Plaintiff(s) and Defendant(s) further agree as follows:

_____
_____
_____
_____
_____
_____
_____
_____

We understand that there may be a charge for services provided by private arbitrators and mediators.

Date: _____
          (SIGNATURE OF PLAINTIFF OR ATTORNEY)         (SIGNATURE OF PLAINTIFF OR ATTORNEY)

Date: _____
          (SIGNATURE OF DEFENDANT OR ATTORNEY)       (SIGNATURE OF DEFENDANT OR ATTORNEY)

**ALTERNATIVE DISPUTE RESOLUTION (ADR) STIPULATION**

Approved for Optional Use
L1270 (Rev. January 1, 2007)         California Rules of Court, rule 3.221

1

# PROOF OF SERVICE

2

3

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

4
5

    I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action; my business address is: Barger & Wolen LLP, 633 West Fifth Street, 47th Floor, Los Angeles, California 90071-2043.

6
7
8

    On **August 28, 2008**, I served the foregoing document(s) described as **DEFENDANT AMERICAN HOME ASSURANCE COMPANY'S NOTICE OF REMOVAL** on the interested parties in this action by placing [ ] the original [X] a true copy thereof enclosed in sealed envelope addressed as stated below:

9
10
11
12
13

> **Nicholas P. Roxborough, Esq.**
> **Erin M. LaBrache, Esq.**
> **Anthony S. Khoury, Esq.**
> **Roxborough, Pomerance & Nye LLP**
> **5820 Canoga Avenue, Suite 250**
> **Woodland Hills, CA  91367**
> **Telephone:**    **(818) 992-9999**
> **Facsimile:**    **(818) 992-9991**
> *Attorneys for Plaintiff Altman*
> *Specialty Plants, Inc.*

14

## [X] BY MAIL

15
16
17
18

[X] I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with U.S. Postal Service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postage cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

19

## [ ] BY FACSIMILE

20

[ ] By transmitting an accurate copy via facsimile to the person and telephone number as follows:

21

## [ ] BY E-MAIL

22
23

[ ] By transmitting an accurate copy(ies) via e-mail to the person(s) and e-mail address(es) as follows:

24
25

**[X]**    **(STATE)**    I declare under penalty of perjury under the laws of the State of California that the above is true and correct.  Executed at Los Angeles, California on **August 28, 2008**.

26

NAME:  <u>Patricia Bronstrup</u>               <u>            </u>
                                           (Signature)

27

28

BARGER & WOLEN LLP
633 WEST FIFTH STREET
FORTY-SEVENTH FLOOR
LOS ANGELES, CA  90071
(213) 680-2800

j:\office2\29073\102\08pleadings\proof- federal.doc